# EXHIBIT A

**UNITED STATES POSTAL SERVICE**
**EQUAL EMPLOYMENT OPPORTUNITY CASE**
**IN THE MATTER OF:**

Svetlana M. Shkolnikova,
Complainant

Agency Case No. 4B-110-0083-16
EEOC Case No. 520-2017-00061X

v.

Megan J. Brennan,
Postmaster General,
c/o Northeast Area Operations
Respondent.

Formal Filed:  June 17, 2016

## FINAL AGENCY DECISION

### Introduction

Pursuant to Equal Employment Opportunity Commission (EEOC) regulations at 29 C.F.R. §1614.110, this is the final agency decision of the U.S. Postal Service regarding the complaint of discrimination identified above.

### Statement of Claim

The complainant alleged discrimination based on Sex (Female-pregnant) and Retaliation (Protected activity) when:

1. On February 23 and 29, 2016,[1] she was told that there was no work available within her restrictions and she was sent home;
2. On March 16, 2016, she was notified to report for "re-training" from March 17-19, 2016;
3. On May 22, 2016,[2] she was notified that the District Reasonable Accommodation Committee (DRAC) had denied her request for Light Duty work; and
4. On June 2, 2016, she was notified via letter that she had been terminated from her City Carrier Assistant (CCA) position.

### Chronology

This complaint was processed in accordance with the applicable Equal Employment Opportunity Commission (EEOC) regulations, 29 C.F.R. §1614.103 *et seq.*.

---

[1] The dates of this action were modified pursuant to the complainant's affidavit testimony. (Report of Investigation (ROI), Affidavit A, p. 3).

[2] The date of this action was modified pursuant to the complainant's affidavit testimony. (ROI, Affidavit A, p. 9).

An investigation was conducted, and a copy of the investigative report was transmitted to the complainant and her representative on September 8, 2016. Following the receipt of that report, the complainant had 30 days within which to request a hearing before an EEOC Administrative Judge (AJ) or a final agency decision without a hearing.

Although the complainant initially requested a hearing, on July 16, 2018, EEOC Administrative Judge William Macauley remanded the complaint to the Postal Service for the issuance of a final agency decision based on the complainant's withdrawal of her request for a hearing. Thus, this decision is being issued in compliance with the order of the Administrative Judge.

**Applicable Law**

**Disparate Treatment**

The United States Supreme Court established a burden-shifting framework for analyzing claims of discrimination in <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792 (1973), and subsequently refined that analysis in <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981). The <u>McDonnell Douglas</u> and <u>Burdine</u> approach involves a three-step process when a complainant alleges intentional discrimination based on a disparate treatment theory. The Equal Employment Opportunity Commission has adopted this approach in its decision making. <u>Downing v. U.S. Postal Service</u>, EEOC Appeal No. 01822326 (September 19, 1983); <u>Jennings v. U.S. Postal Service</u>, EEOC Appeal No. 01932793 (April 13, 1994); and <u>Saenz v. Department of the Navy</u>, EEOC Request No. 05950927 (January 9, 1998). A complainant alleging discrimination must first demonstrate that there is some substance to his or her claim. To satisfy this burden, the complainant must establish a *prima facie* case of discrimination for each of the bases of discrimination alleged by a preponderance of the evidence. <u>Furnco Construction Company v. Waters</u>, 438 U.S. 576 (1978).

Although a complainant may establish a *prima facie* case by presenting direct evidence of discrimination, the more frequent method of establishing a *prima facie* case is through circumstantial evidence by showing that he or she: (1) belongs to a protected group; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group. <u>Hill v. Department of Veterans Affairs</u>, EEOC Appeal No. 0120063979 (November 28, 2007); <u>Mayberry v. Vought Aircraft Company</u>, 55 F.3d 1086, 1090 (5th Cir. 1995); <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, 582-83 (6th Cir. 1992). The failure to establish a specific element of a *prima facie* case may be overcome by presenting evidence of agency actions from which an inference of discrimination could be drawn if they remained unexplained. <u>Day v. U.S. Postal Service</u>, EEOC Appeal No. 01996097 (September 18, 2000).

Final Agency Decision
Svetlana M. Shkolnikova
Agency Case Number 4B-110-0083-16
Page 3

## Pregnancy Discrimination

Congress passed the Pregnancy Discrimination Act of 1978 to amend Section 701 of Title VII of the Civil Rights Act of 1964 to indicate, "the terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions, and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment purposes, including the receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work...." 42 U.S.C. 2000e(k).

The Equal Employment Opportunity Commission's *Enforcement Guidance: Pregnancy Discrimination and Related Issues* (June 2015) states that also potentially covered is discrimination based on the capacity to become pregnant or the intention to become pregnant and such pregnancy-related needs as maternity leave and breast feeding. It should also be noted that certain pregnancy-related medical conditions could warrant Rehabilitation Act consideration. In Young v. United Parcel Service, 575 U.S. ___, 135 S. Ct. 1338 (2015), the Supreme Court held that a plaintiff can establish a *prima facie* case of pregnancy discrimination by showing that she is a member of that protected class, that she sought consideration for her condition but was denied, and that others similar in their ability or inability to work were treated more favorably. The Court went on to note that the employer would then have to articulate a legitimate reason for treating the pregnant worker differently than non-pregnant workers similar in their ability or inability to work. The complainant could then attempt to establish pretext. The EEOC's *Enforcement Guidance* notes that a complainant could establish pretext through proof of a significant burden on the pregnant worker and that the employer's reason is not sufficiently strong to justify the burden imposed. The Commission has for a number of years required agencies to treat employees who are temporarily unable to perform certain duties in the same manner as they treat other workers similarly unable to perform duties on a temporary basis. *See* Robertson v. U.S. Postal Service, EEOC Appeal No. 01956011 (January 5, 1998) and has promptly moved to apply the Young standards to current cases. *See* Mikerina v. U.S. Postal Service, EEOC Appeal No. 0120151750 (July 19, 2016) and Jefferson v. U.S. Postal Service, EEOC Appeal No. 0120152639 (July 19, 2016).

Once a *prima facie* case has been established, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Furnco, 438 U.S. at 578. *See also* St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). The employer need not persuade the trier of fact that the proffered reason was its actual motivation but merely needs to raise a genuine issue of fact as to whether it discriminated against the complainant. Burdine, 450 U.S. at 254; Keval v. Commodity Futures Trading Commission, EEOC Appeal No. 01832127 (November 2, 1984); Hollis v. Department of Veterans' Affairs, EEOC Appeal No. 01934600 (May 3, 1994). If the agency offers no adequate explanation for the discrepancy in treatment between the complainant and similarly situated employees, the agency does not carry its burden of production and the complainant prevails on the basis of the inference of discrimination

created by the *prima facie* case.  Frady v. U.S. Postal Service, EEOC Appeal No. 01A05317 (January 10, 2003); Houston v. Department of Veterans' Affairs, EEOC Appeal No. 01976054 (August 27, 1999); and Parker v. U.S. Postal Service, EEOC Request No. 05900110 (April 30, 1990).

If the employer meets this burden, any presumption of discrimination created by the *prima facie* case disappears; it simply "drops from the case."  Hicks, 509 U.S. at 507; U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715 (1983).  *See also* Hernandez v. Department of Transportation, EEOC Request No. 05900159 (June 28, 1990) and Peterson v. Department of Health and Human Services, EEOC Request No. 05900467 (June 8, 1990).  The complainant can then prevail only if he or she proves that the employer's reasons are not only pretext but are pretext for discrimination. Hicks, 509 U.S. at 507 and 516; Nichols v. Grocer, 138 F.3d 563, 566 (5th Cir. 1998); Swanson v. General Services Administration, 110 F.3d 1180, 1185 (5th Cir. 1997).  *See also* Papas v. U.S. Postal Service, EEOC Appeal No. 01923753 (March 17, 1994) and Bradford v. Department of Defense, EEOC Appeal No. 01940712 (September 20, 1994).  Thus, the complainant cannot create a factual issue of pretext based merely on personal speculation that there was discriminatory intent.  Southard v. Texas Board of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997); Lyles v. U.S. Postal Service, EEOC Appeal No. 01A11110 (May 22, 2002); and Nathan v. U.S. Postal Service, EEOC Appeal No. 01995788 (August 29, 2001).

Pretext involves more than a mistake.  It means that the reason offered by management is factually baseless, is not the actual motivation for the action, or is insufficient to motivate the action.  Tincher v. Wal-Mart Stores, Inc., 118 F.3d 1125, 1130 (7th Cir. 1997) and Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).  The complainant always carries the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination."  Burdine, 450 U.S. at 254 and Hicks, 509 U.S. at 511.

The ultimate burden of persuasion remains with the complainant.  Board of Trustees of Keene College v. Sweeney, 439 U.S. 24, 25 N.2 (1978).  This burden was reaffirmed and clarified in St. Mary's Honor Center v. Hicks, *supra.*, where the Court held that in order to impose liability upon an employer for discriminatory employment practices, an ultimate finding of unlawful discrimination is required whether or not the employer's explanation for its action was believable.  *See also* Brewer v. U.S. Postal Service, EEOC Appeal No. 01941786 (June 21, 1994) and Montoya v. Department of Housing and Urban Development, EEOC Appeal No. 01940999 (August 4, 1994).

## Similarly Situated Employees

One of the key elements of a *prima facie* case of disparate treatment based on an adverse employment action is proof that similarly situated comparison employees not in the complainant's protected group were treated more favorably.  This is so, in part, because agencies are not monolithic entities.  Turner v. Department of the Navy, EEOC

Request No. 05900445 (September 25, 1990). In general, in the absence of direct evidence of discrimination, if the complainant cannot identify any similarly situated comparison employees who were treated more favorably, he or she will not prevail. Aguilar v. U.S. Postal Service, EEOC Appeal No. 01944167 (August 8, 1995).

In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment, a complainant must show that all of the relevant aspects of his or her employment situation are virtually identical to those of the other employees who he or she alleges were treated more favorably. Smith v. Monsanto Chemical Company, 770 F.2d 719, 723 (8th Cir. 1985); Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 68 (6th Cir. 1985); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Mazzella v. RCA Global Communications, Inc., 642 F.Supp. 1531, 1547 (S.D. N.Y. 1986), aff'd. 814 F.2d 653 (2nd Cir. 1987). The Equal Employment Opportunity Commission has on numerous occasions ruled in similar fashion. See, for example, Tolar v. U.S. Postal Service, EEOC Appeal No. 01965330 (December 16, 1998), citing O'Neal v. U.S. Postal Service, EEOC Request No. 05910490 (July 23, 1991); and Knapp-Huffman v. Department of Justice (Bureau of Prisons), EEOC Appeal No. 01991026 (January 16, 2002).

If employees have different supervisors, perform different job functions, were subject to different job standards, engaged in different conduct, or worked during different time periods, they are not similarly situated. O'Neal, Id.; Allen v. Department of the Navy, EEOC Request No. 05900539 (June 15, 1990); Willis v. Department of the Treasury, EEOC Appeal No. 01A51459 (March 16, 2003); and Stewart v. Department of Defense, EEOC Appeal No. 01A02890 (June 27, 2001).

For employees to be considered similarly situated, their medical and physical restrictions must be the same as the complainant's. Curtin v. U.S. Postal Service, EEOC Appeal No. 01891910 (March 27, 1990); Briand v. U.S. Postal Service, EEOC Appeal No. 01932677 (February 2, 1994); Woody v. TVA, EEOC Appeal No. 0120063987 (December 17, 2007).

## Retaliation

To establish a *prima facie* case based on reprisal, a complainant must show that: (1) he or she engaged in prior protected activity; (2) the agency official who took the adverse employment action was aware of the protected activity; (3) he or she was subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between the protected activity and adverse action/treatment. Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F. Supp. 318, 324 (D. Mass 1976), aff'd 545 F.2d 222 (1st Cir. 1976); Manoharan v. Columbia University College of Physicians and Surgeons, 842 F.2d 590, 593 (2nd Cir. 1988); Coffman v. Department of Veterans' Affairs, EEOC Request No. 05960437 (November 20, 1997); and Whitmire v. Department of the Air Force, EEOC Appeal No. 01A00340 (September 25, 2000). A complainant may establish prior EEO activity by participating at any stage of the EEO

process or opposing unlawful discriminatory conduct.   See, generally, <u>Lewis v. Department of the Navy</u>, EEOC Appeal No. 01810158 (May 22, 1981) (counseling stage); <u>Ballard v. U.S. Postal Service</u>, EEOC Appeal No. 01923276 (August 17, 1992) (witness); and <u>Burrough v. U.S. Postal Service</u>, EEOC Appeal No. 01842417 (June 24, 1986) (representative).

A complainant may also establish a *prima facie* case by presenting evidence which, if it was not explained, would reasonably give rise to an inference of reprisal.  <u>Shapiro v. Social Security Administration</u>, EEOC Request No. 05960403 (December 6, 1996). Obviously, the complainant must offer evidence that the agency officials who took the action were aware of his or her prior participation or opposition activity (<u>Demeier v. Department of the Air Force</u>, EEOC Appeal No. 01A11166 (May 23, 2002)) but establishing that alone will not enable a complainant to establish the causal connection element of a *prima facie* case.  <u>Garcia-Gannon v. Department of the Air Force</u>, EEOC Appeal No. 01821195 (June 30, 1983).   Adverse actions need not be ultimate employment actions, just adverse treatment based on a retaliatory motive, which could deter a reasonable person from engaging in protected activity.  <u>Burlington Northern Santa Fe Railway Company v. White</u>, 548 U.S. 53 (2006); <u>Lindsey v. U.S. Postal Service</u>, EEOC Request No. 05980410 (November 4, 1999) and *EEOC Compliance Manual*, Section 8.D.3, Notice No. 915.003 (May 20, 1998).

The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action.  <u>Clark County School District v. Breeden</u>, 532 U.S. 286 (2001).  The Court in <u>Breeden</u> noted that where a complainant is relying on temporal proximity to establish a causal connection between prior protected activity and a current adverse employment action, that proximity must be "very close" and cited with approval Circuit Court of Appeals decisions holding that time gaps of three to four months between an individual's prior EEO activity and the current adverse employment action were too attenuated to suggest an inference of retaliation.  The Commission has followed suit and rendered decisions establishing much shorter time frames to establish the requisite temporal proximity.  See, for example, <u>Heads v. U.S. Postal Service</u>, EEOC Appeal No. 01A51547 (June 2, 2005); <u>Archibald v. Department of Housing and Urban Development</u>, EEOC Appeal No. 01A54280 (September 22, 2005); and <u>Lynch v. U.S. Postal Service</u>, EEOC Appeal No. 01A24705 (August 14, 2003).

## Background

At all times relevant to the issues in this complaint, the complainant was employed as a PSE (Postal Support Employee) City Carrier Assistant 2 at the Homecrest Carrier Annex in Brooklyn, New York. (ROI, Exhibit 1).   The complainant has alleged that Manager, Customer Service Operations Adela Livingston, Supervisor, Customer Services Steven Smerling, Supervisor, Customer Services Isaac Middleton, Manager, Labor Relations Te'Nagh Bryant, and Manager, Customer Services Timothy Lawson have intentionally discriminated against her because of her Sex (Female-pregnant) and Retaliation (Protected activity) when:  (1) on February 23 and 29, 2016, she was told

that there was no work available within her restrictions and she was sent home; (2) on March 16, 2016, she was notified to report for "re-training" from March 17-19, 2016; (3) on May 22, 2016, she was notified that the District Reasonable Accommodation Committee (DRAC) had denied her request for Light Duty work; and (4) on June 2, 2016, she was notified via letter that she had been terminated from her City Carrier Assistant (CCA) position.

The complainant testified that Mr. Smerling and Ms. Livingston sent her home saying that there was no work available on February 23 and 29, 2016, respectively. (ROI, Affidavit A, p. 3). She stated that, on February 22, 2016, she had informed Ms. Livingston of her pregnancy and presented her with a note from her OB/GYN which stated the same. She recalled that Ms. Livingston asked her how she had performed her route the previous day and then told her she would give her another route. (ROI, Affidavit A, p. 4). The complainant contended that she could only perform "very light duty." She added that she could not perform any duties that would put excessive strain on her body. (ROI, Affidavit A, pp. 4-5). The complainant declared that she provided Ms. Livingston with a second doctor's note on February 24, 2016. (ROI, Affidavit A, p. 5).

The complainant asserted that, on March 16, 2016, Mr. Lawson told her that she needed to undergo more training because, "that's what Adela wants." (ROI, Affidavit A, pp. 6-7). The complainant stated that she received the same training as her original CCA training from March 17-19, 2016. (ROI, Affidavit A, p. 7).

The complainant declared that, on May 22, 2016, Ms. Bryant sent her a letter, denying her request for reasonable accommodation. (ROI, Affidavit A, pp. 8-9). She stated that she had been requesting a light duty assignment, such as an office job, truck driving duty, a lighter mail bag, or short-term leave, for three months until the end of her pregnancy. (ROI, Affidavit A, p. 9).

The complainant stated that Mr. Middleton sent her a termination letter on June 2, 2016. (ROI, Affidavit A, p. 11). She added that, at the time of her termination, she was within her 90-day probationary period. (ROI, Affidavit A, p. 12).

The record included a letter from Saul Stromer, M.D., dated February 24, 2016, which indicated that the complainant is currently pregnant and has the following restrictions: (1) lift up to 10 pounds; (2) push/pull up to 30 pounds; and (3) limited stair usage and bending. (ROI, Affidavit A, p. 18).

The record included a letter from Saul Stromer, M.D., dated February 29, 2016, which indicated that the complainant has the following restrictions: (1) lifting up to 10 pounds; (2) walking up to 2 hours; (3) climbing up to 1 hour; and (4) pulling/pushing up to 10 pounds. (ROI, Affidavit A, p. 19).

The record included a letter from Semyon Elyash, RPA-C, dated March 7, 2016, which indicated that the complainant is pregnant with an expected due date of May 31, 2016 and has the following restrictions:  (1) lifting up to 10 pounds; (2) walking up to 2 hours; (3) climbing one flight of stairs in building only; (4) no twisting; and (5) pulling/pushing up to 10 pounds. (ROI, Affidavit A, p. 20).

*Equal Employment Opportunity is the Law Poster* provides, "Federal law requires the Postal Service' to afford equal employment opportunity to employees and applicants for employment regardless of race, color, religion, genetic information, national origin, sex, age (40+), or physical or mental disability. Employment discrimination or retaliation for engaging in an EEO-protected activity is prohibited." (ROI, Exhibit 18).

The *Equal Employment Opportunity Policy Statement* provides, "It is the policy of the Postal Service that all employees and applicants for employment be afforded equal opportunities in employment without regard to race, color, sex (including pregnancy, sexual orientation, and gender identity including transgender status), national origin, religion, age (40 or over), genetic information, disability, or retaliation for engaging in an EEO-protected activity." (ROI, Exhibit 19).

Article 2.1 of the *National Agreement between the National Association of Letter Carriers and the U.S. Postal Service* provides, "The Employer and the Union agree that there shall be no discrimination by the Employer or the Union against employees because of race, color, creed, religion, national origin, sex, age, or marital status." (ROI, Exhibit 21, p. 3).

Article 13.2.A of the *National Agreement between the National Association of Letter Carriers and the U.S. Postal Service* provides, "Any full-time regular or part-time flexible employee recuperating from a serious illness or injury and temporarily unable to perform the assigned duties may voluntarily submit a written request to the installation head for temporary assignment to a light duty or other assignment." (ROI, Exhibit 21, pp. 9-10).

The following sections of the *Employee and Labor Relations Manual* apply:

- Section 311.12 provides, "It is the policy of the Postal Service that all employees and applicants for employment be afforded equal opportunities in employment without regard to race, color, sex (including gender identity and gender stereotypes), national origin, religion, disability, or service in the uniformed services." (ROI, Exhibit 23, p. 2).
- 'Section 665.23 provides, "Employees acting in an official capacity must not directly or indirectly authorize, permit, or participate in any action, event, or course of conduct that subjects any person to discrimination, or results in any person being discriminated against on the basis of race, color, religion, sex, national origin, age (40+), physical or mental disability, marital or parental status, sexual orientation, or any other nonmerit factor, or that subjects any person to reprisal for prior involvement in EEO activity." (ROI, Exhibit 23, p. 6).

Final Agency Decision
Svetlana M. Shkolnikova
Agency Case Number 4B-110-0083-16
Page 9

## *Prima Facie* Analysis

### Retaliation

In order for the complainant to establish a *prima facie* case based on reprisal, she must show that: (1) she engaged in prior protected activity; (2) the agency official who took the adverse employment action was aware of the protected activity; (3) she was subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between the protected activity and adverse action/treatment. <u>Hochstadt v. Worcester Foundation for Experimental Biology, Inc.</u>, 425 F. Supp. 318, 324 (D. Mass 1976), *aff'd* 545 F.2d 222 (1st Cir. 1976).

The complainant testified that her prior protected activity was participating in the informal complaint process and filing a complaint of discrimination. (ROI, Affidavit A, p. 2). The record indicated that the complainant has no prior EEO activity. (ROI, Exhibit 2). Therefore, the complainant has established the first element of a *prima facie* case of discrimination based on reprisal in that she has engaged in protected activity when she filed the instant complaint.

Ms. Livingston stated that she became aware of the complainant's EEO activity on July 25, 2016. (ROI, Affidavit B, p. 2).

Mr. Smerling declared that he became aware of the complainant's EEO activity on April 4, 2016. (ROI, Affidavit C, p. 2).

Mr. Middleton asserted that he became aware of the complainant's EEO activity when he received an email request to provide an EEO affidavit.[3] (ROI, Affidavit D, p. 2).

Ms. Bryant testified that she became aware of the complainant's EEO activity on March 30, 2016. (ROI, Affidavit E, p. 2).

The record indicated that the complainant made initial EEO contact regarding the instant complaint on March 10, 2016 and that Mr. Smerling and Ms. Livingston were contacted by an EEO Dispute Resolution Specialist on April 5 and 6, 2016, respectively. (ROI, Counselor's Report, pp. 1, 4).

The record established that the earliest management was made aware of the complainant's current EEO activity was March 30, 2016. The actions alleged in Claims 1 and 2 predate March 30, 2016. Therefore, the complainant has failed to establish the second element of a *prima facie* case of discrimination based on reprisal with respect to Claims 1 and 2 because she has not established that management was aware of her protected activity at the time of those actions. However, the complainant has

---

[3] The record established that Mr. Middleton's affidavit is dated August 6, 2016. (ROI, Affidavit D).

established the second element of a *prima facie* case of discrimination based on reprisal with respect to Claims 3 and 4 because management was aware of her current EEO activity at the time those actions occurred.

It will be assumed for sake of this argument only that the complainant established the third element of a *prima facie* case in that she was subsequently disadvantaged by the adverse employment actions or adverse treatment alleged.

Consequently, the fourth element of a *prima facie* case cannot be established with respect to Claims 1 and 2. It is axiomatic that there can be no causal connection between the complainant's protected activity and any decision made by management in those claims because there is no evidence in the record that management had knowledge of the complainant's protected activity at the time of those actions.

The complainant has established the fourth element of a *prima facie* case with respect to Claims 3 and 4, however, due to the short time period that elapsed between her EEO contact regarding the instant complaint and the adverse actions alleged in those claims. See Breeden, 532 U.S. 286 (a causal connection may be inferred where the protected conduct was closely followed by the adverse action, but the proximity must be less than three to four months).

For the reasons just described, the complainant has not established a *prima facie* case of discrimination based on reprisal with respect to Claims 1 and 2, but she has established a *prima facie* case with respect to Claims 3 and 4. However, having made the determination that Complainant has satisfied the essential requirements of a *prima facie* case with respect to Claims 3 and 4, it is noted that such a finding is not the equivalent of a finding of discrimination. It is simply proof that, without more, the circumstances involving management's actions may give rise to an inference that discrimination did occur. At this point, the burden shifts to management to establish that its actions were taken for legitimate, non-discriminatory reasons.

Disparate Treatment

A plaintiff can establish a *prima facie* case of pregnancy discrimination by showing that she is a member of that protected class, that she sought consideration for her condition but was denied, and that other non-pregnant workers who required similar considerations were treated more favorably.

The record conclusively established that the complainant is Female and that she was pregnant with pregnancy-related restrictions during the relevant time period. Accordingly, she has satisfied the first element of a *prima facie* case of sex/pregnancy discrimination. (ROI, Affidavit A, pp. 2, 18-20).

It will be presumed, without deciding, that the complainant has satisfied the second element of a *prima facie* case of sex/pregnancy discrimination in that she was subjected to the adverse actions alleged.

However, the complainant has not proven the third required element of a *prima facie* case of sex/pregnancy discrimination.  Proof of this element requires a complainant to prove that other, non-pregnant workers who required similar considerations were treated more favorably.

The complainant testified that Vanessa West was accommodated during her pregnancy and was not terminated. (ROI, Affidavit A, pp. 5, 13).

Ms. Livingston stated that she does not know Vanessa West or whether she was accommodated during her pregnancy. (ROI, Affidavit B, p. 7).  Ms. Livingston declared that Omar Khan, Richard Starks, Liquey King, and Ousseynou Faye, all of whom are Male, were also terminated during their probationary periods.  She added that she is not aware of any of them having prior EEO activity. (ROI, Affidavit B, p. 14).

Mr. Middleton testified that Liquey King and Charlton Blackshaw, who are both Male with no known EEO activity, have also been terminated during their probationary periods. (ROI, Affidavit D, p. 8).

Ms. Bryant declared that she has no record of a DRAC referral for Vanessa West and has no knowledge of whether or not she was provided with light duty.  She added that the DRAC was also unable to provide an accommodation to Brenda Brown at the James E. Davis Station on April 4, 2016. (ROI, Affidavit E, p. 10).  She stated that Ms. Brown is Female with prior EEO activity. (ROI, Affidavit E, p. 11).

The record indicated that Vanessa West is a City Carrier Assistant at the Mariners Harbor Carrier Annex in Staten Island, New York who has no prior EEO activity. (ROI, Exhibit 10).

The record indicated that Omar Khan is a former City Carrier Assistant at the Homecrest Carrier Annex with no prior EEO activity who was separated effective January 15, 2016 for failure to meet the requirements of his position. (ROI, Exhibit 11).

The record indicated that Richard Starks is a former City Carrier Assistant at the Homecrest Carrier Annex with no prior EEO activity who was separated effective February 19, 2016 for failure to be regular in attendance. (ROI, Exhibit 12).

The record indicated that Liquey King is a former City Carrier Assistant at the Homecrest Carrier Annex with no prior EEO activity who was separated effective May 12, 2016 for falsification of a delivery. (ROI, Exhibit 13).

The record indicated that Ousseynou Faye is a former City Carrier Assistant at the Homecrest Carrier Annex with no prior EEO activity who was separated effective May 16, 2016 for failure to qualify on a 2-ton road test. (ROI, Exhibit 14).

The record indicated that Charlton Blackshaw is a City Carrier Assistant at the Homecrest Carrier Annex who has no prior EEO activity. (ROI, Exhibit 15).

The record indicated that Brenda Brown is a City Carrier at the Blythbourne Station in Brooklyn, New York who has prior EEO activity. (ROI, Exhibit 15, pp. 1-2). The record included a DRAC decision letter dated April 4, 2016, which indicated that Ms. Brown had temporary restrictions due to pregnancy and that it was determined that she was unable to perform the essential duties of her position and no traditional office work was available. (ROI, Exhibit 15, pp. 4-5).

The complainant must show that all of the relevant aspects of his or her employment situation are virtually identical to those of the other employees who he or she alleges were treated more favorably. Smith v. Monsanto Chemical Company, 770 F.2d 719, 723 (8th Cir. 1985); Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 68 (6th Cir. 1985); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Mazzella v. RCA Global Communications, Inc., 642 F.Supp. 1531, 1547 (S.D. N.Y. 1986), aff'd. 814 F.2d 653 (2nd Cir. 1987). If employees have different supervisors, perform different job functions, were subject to different job standards, engaged in different conduct, or worked during different time periods, they are not similarly situated. O'Neal, Id.; Allen v. Department of the Navy, EEOC Request No. 05900539 (June 15, 1990); Willis v. Department of the Treasury, EEOC Appeal No. 01A51459 (March 16, 2003); and Stewart v. Department of Defense, EEOC Appeal No. 01A02890 (June 27, 2001).

The complainant identified Vanessa West as another pregnant employee whom she alleged was accommodated during her pregnancy. However, the record established that Ms. Livingston and Ms. Bryant were not involved in Ms. West's request for light duty and that Ms. West's personnel record indicated that she was employed at a different work location. In addition, Ms. West is in the same protected group as the complainant with respect to sex/pregnancy. The complainant has the sole burden of identifying other, non-pregnant employees who were treated more favorably when they required similar considerations. She has failed to do that. Although Ms. Bryant identified Brenda Brown as another pregnant employee who was not able to be accommodated through the DRAC process, Ms. Brown, too, is in the same protected group as the complainant with respect to sex/pregnancy. Therefore, Vanessa West and Brenda Brown are not effective comparators with respect to Claims 1 and 3.

The complainant failed to meet her burden with respect to Claims 2 and 4, as she identified no comparators whom she alleged were treated more favorably. Although management has no obligation to provide comparator data, Ms. Livingston and Mr. Middleton presented evidence of four Male employees, Omar Khan, Richard Starks,

Liquey King, and Ousseynou Faye, all of whom were terminated during their probationary period.  The record established that Mr. Khan was terminated for a reason similar to the reason the complainant was terminated, *i.e.*, failure to meet the specific requirements of his position.

In general, in the absence of direct evidence of discrimination, if the complainant cannot identify any similarly situated comparison employees who were treated more favorably, he or she will not prevail.  <u>Aguilar v. U.S. Postal Service</u>, EEOC Appeal No. 01944167 (August 8, 1995).

While the complainant is not limited to presenting comparative evidence to establish a *prima facie* case of disparate treatment discrimination (*See* <u>Lipcsey v. U.S. Postal Service</u>, EEOC Appeal No. 01981884 (January 6, 2000)), she has not presented any other evidence that affords a sufficient basis from which to draw an inference of discrimination.

Based on the above, the complainant failed to establish a *prima facie* case of sex/pregnancy discrimination.

## Management's Non-Discriminatory Reason

Assuming, but only for the sake of argument, that the complainant has established a *prima facie* case of discrimination based on sex/pregnancy or reprisal, management has articulated a legitimate, non-discriminatory explanation for their actions.

Ms. Livingston (Female), Manager, Customer Services at the Homecrest Carrier Annex at the time of the alleged actions, testified that the complainant first reported to work at the Homecrest Carrier Annex on February 16, 2016, and that she only worked on February 15, 20, 22, and 29, 2016.  She stated that the complainant did not perform her carrier duties long enough to be able to evaluate her performance. (ROI, Affidavit B, pp. 1-3).  Ms. Livingston declared that she submitted the complainant's request for light duty to Human Resources, which is proper procedure as she is not in a position to approve or disapprove light duty requests.  She added that the DRAC determined the complainant, who was not a career employee, did not meet the core requirements of her position and was terminated while on probation. (ROI, Affidavit B, pp. 4, 6).  Ms. Livingston contended that the complainant was not scheduled for retraining but, rather, that she went there on her own and claimed that Mr. Lawson told her to report there. (ROI, Affidavit B, p. 8).  Ms. Livingston testified that she concurred with the decision to terminate the complainant's employment because she did not meet the core requirements of her position. (ROI, Affidavit B, p. 13).  She added that the complainant's performance was not evaluated at 30, 60, or 80-day intervals because the complainant did not work during her probationary period. (ROI, Affidavit B, p. 14).

Mr. Smerling (Male), Supervisor, Customer Services at the Homecrest Carrier Annex, declared that, to the best of his recollection, the complainant never worked in their unit,

but that she arrived with restrictions due to her pregnancy.   He added that the complainant did not perform her carrier duties long enough to be able to evaluate her performance.   He added that all of her interactions were with Ms. Livingston. (ROI, Affidavit C, pp. 1-3).  Mr. Smerling stated that he is not aware of the complainant being scheduled for retraining. (ROI, Affidavit C, p. 5).  He added that he has no knowledge concerning the DRAC decision. (ROI, Affidavit C, p. 6).  Mr. Smerling stated that he does not know if the complainant was terminated. (ROI, Affidavit C, p. 7).

Mr. Middleton (Male), Supervisor, Customer Services at the Homecrest Carrier Annex, asserted that he did not make the decision to send the complainant home on February 23, 2016. (ROI, Affidavit D, pp. 1-3).  He stated that he does not know if complainant was scheduled for retraining. (ROI, Affidavit D, p. 5).  Mr. Middleton declared that he had no involvement in the DRAC decision.   Mr. Middleton testified that he was instructed by Ms. Livingston to sign the complainant's termination paper, but that the reason was unknown. (ROI, Affidavit D, p. 7).

Ms. Bryant (Female), Manager, Labor Relations for the Triboro District, testified that she was the DRAC Chairperson and that Ms. Livingston referred the complainant to the DRAC based on the complainant's request for accommodation or modification to her job duties as a CCA (City Carrier Assistant). (ROI, Affidavit E, pp. 1-2, 6).  She stated that the DRAC meeting was conducted on March 28, 2016 and that the complainant presented medical documentation dated March 7, 2016, which listed the following restrictions:  (1) no lifting more than 10 pounds; (2) walking up to 2 hours (continuous); (3) climbing 1 flight of stairs only in buildings; (4) no twisting; and (5) no pulling/pushing over 10 pounds.  Ms. Bryant indicated that, based on her restrictions, the Postal Service was not able to provide any accommodation that would enable her to perform the essential functions of her CCA position, and there was no quasi-sedentary work available.  She added that the complainant's job duties require that she be able to lift and carry more than 10 pounds throughout the workday. (ROI, Affidavit E, p. 7).  Ms. Bryant recalled that the complainant requested to move the relay boxes or to split her mail into 2 parts, but that it was not possible to relocate relay boxes on a daily basis depending on which route the complainant was assigned to and it would be an unreasonable, fundamental alteration of the operation.  She added that delivery of mail and parcels for 8-12 hours per day is one of the essential functions of the CCA position and the DRAC could not identify any accommodation that would enable the complainant to perform that function. (ROI, Affidavit E, p. 9).

Ms. Bryant asserted that all employees undergo a probationary period during which they are evaluated on Work Quantity, Work Quality, Dependability, Work Relations, Word Methods, and Personal Conduct within 90 days of appointment or 120 days of employment with the Postal Service, whichever comes first.  She added that, because the complainant was unable to work during her probationary period, management was unable to perform the necessary performance evaluations and the complainant's temporary appointment as a CCA was terminated accordingly.  Ms. Bryant declared that

her role in this process was to provide assistance to management in drafting the termination letter. (ROI, Affidavit E, p. 12).

Mr. Lawson (Male) testified that, since November 2011, he has been on a detail assignment and has not had any managerial involvement in the daily operations for Brooklyn stations since that time. He added that he has never met the complainant and has made no employment decisions concerning her employment. (ROI, Affidavit F, pp. 1, 3).

The record included the Qualification Standards for the position of City Carrier Assistant 2, which indicated that, "Applicants must be physically able to efficiently perform the duties of the position with or without reasonable accommodation. CCA duties require arduous exertion involving prolonged standing, walking, bending and reaching, and may involve handling heavy containers of mail weighing up to the allowable maximum mailing weight." (ROI, Exhibit 4, p. 3).

The record included a Certificate of Completion for the complainant, which indicated that her on-the-job training began on February 16, 2016 and ended on February 19, 2016. (ROI, Exhibit 6, p. 5).

The record included a letter dated April 14, 2016 from Ms. Bryant to the complainant, which indicated that the complainant was hired as a non-career CCA on February 6, 2016 and that, at the time of hiring, she was informed of the duties and responsibilities of the position. Letter indicated that, based on the complainant's medical restrictions, which included a 10-pound lifting restriction, the Postal Service could not provide any accommodation that would enable her to perform the essential functions of her position and that quasi-sedentary work was not available. (ROI, Exhibit 8).

The record included a letter entitled *Termination of City Carrier Assistant Appointment During Probation* dated June 2, 2016, issued by Mr. Middleton to the complainant, which indicated that she was hired on February 6, 2016 and that the probationary period must be completed within 90 days of appointment or 120 days of employment with the Postal Service, whichever comes first. Letter indicated that the complainant was in an off-duty status and that the DRAC determined that she was unable to perform the essential duties of her position. Letter indicated that her temporary CCA appointment with the Postal Service was being terminated because she was unable to complete her probationary period, including the necessary performance evaluations. (ROI, Exhibit 9).

The following provisions of the *National Agreement between the National Association of Letter Carriers and the U.S. Postal Service* apply:

- Article 3.B provides, "The Employer shall have the exclusive right, subject to the provisions of this Agreement and consistent with applicable laws and regulations...To hire, promote, transfer, assign, and retain employees in

positions within the Postal Service and to suspend, demote, discharge, or take other disciplinary action against such employees...." (ROI, Exhibit 21, p. 2).

- Article 12.1.A provides, "The probationary period for a new employee shall be ninety (90) calendar days. The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto." (ROI, Exhibit 21, p. 8).

The following sections of the *Employee and Labor Relations Manual* apply:

- Section 365.221 provides, "Separation-transfer is an action by which career employees are taken off the rolls of a postal installation to permit their appointments to positions in other federal agencies without a break in service." (ROI, Exhibit 23, p. 3).
- Section 365.322 provides, "Separation-disqualification is an action that results from the failure to meet conditions specified at the time of appointment (such as failure to qualify by conduct or capacity during the probationary period). It may also result from information that, if known at the time of appointment, would have disqualified the employee for the appointment." (ROI, Exhibit 23, p. 4).
- Section 365.323 provides, "Separation-disqualification must be effected during the probationary period. Action is initiated at any time in the probationary period when it becomes apparent that the employee lacks capacity for efficient service." (ROI, Exhibit 23, p. 4).

Based on the evidence in the record, management has established their non-discriminatory reason(s) for their actions. This analysis will now address whether there is evidence of pretext.

## Pretext

At this point, the complainant has the burden of proving that management's stated reason is not only pretext, but is pretext for intentional discrimination. Tincher v. Wal-Mart Stores, Inc., 118 F.3d 1125, 1129 (7th Cir. 1997).

The complainant believed that the action Claim 1 was based on her sex/pregnancy because she had been working up until that day with no issues but that, once she gave them the letter, she was told there was no work and sent home. She believed that the action alleged in Claim 1 was based on her protected activity because she was retaliated against after she requested accommodation on February 22, 2016. (ROI, Affidavit A, p. 6). The complainant believed that the action alleged in Claim 2 was based on her sex/pregnancy because she had asked to be accommodated due to her pregnancy. She believed that the action alleged in Claim 2 was based on protected activity because it was shortly after she asked to be accommodated. (ROI, Affidavit A, p. 8). The complainant believed that the action alleged in Claim 3 was based on her sex/pregnancy because the Postal Service has accommodated other workers with

various disabilities. She believed that the action alleged in Claim 3 was based on protected activity because she was terminated shortly after the DRAC meeting. (ROI, Affidavit A, p. 10). The complainant believed that the action alleged in Claim 4 was based on her sex/pregnancy because she was terminated based on her pregnancy and pregnancy is a solely female issue. She believed that the action alleged in Claim 4 was based on protected activity because she engaged in protected activity when she asked for reasonable accommodation for her pregnancy. (ROI, Affidavit A, p. 13).

Ms. Livingston declared that the complainant's sex/pregnancy and protected activity were not considered as factors regarding the issues in this complaint. (ROI, Affidavit B, pp. 7, 9-10, 13, 15).

Mr. Middleton testified that it is unknown if the complainant's sex/pregnancy and protected activity were considered as factors when she was terminated. (ROI, Affidavit D, p. 8).

Ms. Bryant declared that the complainant's sex/pregnancy was not the determining factor when the DRAC denied her request for accommodation but, rather, the determining factor was whether or not the complainant could perform the essential functions of her position, with or without reasonable accommodation. Ms. Bryant stated that the complainant's protected activity was not considered as a factor and indicated that she was not aware any protected activity at that time. (ROI, Affidavit E, p. 11). Ms. Bryant testified that the complainant's sex/pregnancy and protected activity were not considered as factors when she was terminated. (ROI, Affidavit E, pp. 12-13).

Pretext could be demonstrated by showing, "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc. 108, F.3d 1319, 1323, (10th Cir. 1997). To do this, the complainant must have shown that, in spite of the articulated non-discriminatory explanation, an overall inference of discrimination could be discerned by a preponderance of the evidence. U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 714-17 (1983). In other words, the complainant must have shown "that a discriminatory reason more likely motivated the employer" [Citation omitted] than not. Hill v. Social Security Administration, EEOC Appeal No. 01970512 (June 8, 2000). Or, the complainant must have shown that the Agency's proffered explanation is unworthy of credence. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). Essentially, the record must have shown that the Agency articulated a false reason and that its real reason was discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

The complainant failed to establish that the action alleged in Claim 2 occurred as she claimed. The record does not support her contention that management instructed her to attend retraining.

The complainant believed that management's actions were based on her sex/pregnancy and protected activity because the actions occurred after she presented restrictions and requested accommodation. Ms. Livingston and Ms. Bryant both indicated that the complainant's sex/pregnancy and protected activity were not factors but, rather, that the actions in Claims 1, 3, and 4 were based on her inability to perform the essential functions of her position.

The complainant has failed to adduce sufficient evidence to show that management's reasons for the actions alleged in Claims 1, 3, and 4 were pretextual. The record established that the complainant was pregnant at the time she was hired and was informed about the duties and responsibilities of the CCA position both at that time and during her 3 days of on-the-job training. The record further established that, within a very short time of completing her training, the complainant presented medical documentation that contained severe restrictions on lifting and walking. Since the complainant's pregnancy was not considered a physical disability, management reacted reasonably by treating it as a light duty request and even took the extra step of having the DRAC consider whether or not the complainant could be accommodated. The record established that the DRAC determined that no accommodation could be provided that would enable the complainant to the perform the essential functions of her position. Since the complainant only worked for a few days, management was unable to evaluate her performance. Based on the fact that the complainant could not complete her probationary period within the relevant time frame, her temporary CCA appointment was terminated. Finally, the complainant provided no evidence of other, non-pregnant employees who were treated more favorably when they required similar considerations. There is no evidence of discriminatory animus. The complainant has failed to provide any evidence to indicate that the legitimate, non-discriminatory reasons given by management for their actions in relation to Claims 1, 3, and 4 were not the real reasons, and that the real motivation for their decisions and actions related instead to the complainant's sex/pregnancy or current EEO activity.

The complainant's allegations are not supported by the totality of the record and she has failed to present any plausible evidence that would demonstrate that management's reasons for its actions were factually baseless or not its actual motivation. Tincher v. Wal-Mart Stores, Inc. and Morgan v. Hilti, Inc., *Id*. A complainant's subjective beliefs cannot be probative evidence of pretext and, therefore, cannot be the basis of judicial relief. Elliot v. Group Medical & Surgical Service, 714 F.2d 556, 557 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215, (1984); *see also*, Billet v. CIGNA Corp., 940 F.2d 812, 816 (3rd Cir. 1991). The complainant cannot second-guess the wisdom of the agency's business decisions. Thus, agencies are free to discharge, promote, demote, or transfer individuals for any reason, fair or unfair, so long as the decision is not a pretext for discrimination. Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984). Employers generally have broad discretion to set policies and carry out personnel decisions and should not be second-guessed by the reviewing authority,

absent evidence of unlawful discriminatory motivation.  <u>Burdine</u>, 450 U.S. at 248; <u>Schnake v. Department of Agriculture</u>, EEOC Appeal No. 01965915 (1998).

In other words, there was nothing that showed by a preponderance of the evidence that the legitimate explanations given by the agency were pretext for discrimination. <u>Hammons v. HUD</u>, EEOC Request No. 05971093 (March 5, 1999).  Hence, the complainant has not shown that the agency's explanation for its action is a pretext for discrimination.

<u>Conclusion</u>

After carefully considering the entire record, and applying the legal standards outlined in <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792 (1973) and <u>Burlington Northern Santa Fe Railway Company v. White</u>, 548 U.S. 53 (2006) (applying to reprisal cases), the evidence does not support a finding that the complainant was subjected to discrimination as alleged.  Consequently, this complaint is now closed with a finding of no discrimination.

<u>Appeal Rights</u>

**APPEAL TO EEOC**

The complainant has the right to appeal the Postal Service's final decision to the:

**Director,**
**Office of Federal Operations**
**Equal Employment Opportunity Commission (EEOC)**
**P.O. Box 77960**
**Washington, DC 20013-8960**

**within 30 calendar days of receipt of this decision**.  The complainant must use EEOC Appeal Form 573, a copy of which is enclosed, in connection with the appeal. The complainant may also deliver the appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length.  Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal.  Along with the appeal, the complainant must submit proof to the EEOC that a copy of the appeal and any supporting documentation and/or brief were also submitted to the:

**NEEOISO – FAD**
**National EEO Investigative Services Office**
**USPS**
**P. O. Box 21979**
**Tampa, FL 33622-1979**

Final Agency Decision
Svetlana M. Shkolnikova
Agency Case Number 4B-110-0083-16
Page 20

The complainant is advised that if the complainant files an appeal beyond the 30-day period set forth in the Commission's regulations, the complainant should provide an explanation as to why the appeal should be accepted despite its untimeliness.  If the complainant cannot explain why the untimeliness should be excused in accordance with EEOC Regulation 29 C.F.R. §1614.604, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

Alternatively, if the complainant is dissatisfied with the Postal Service's decision in this case, the complainant may file a civil action in an appropriate U.S. District Court within 90 calendar days of receipt of the Postal Service's final decision, within 90 calendar days of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered.   If the complainant chooses to file a civil action, that action should be styled **Svetlana M. Shkolnikova v. Megan J. Brennan, Postmaster General**.  The complainant may also request the court to appoint an attorney for the complainant and to authorize the commencement of that action without the payment of fees, costs, or security.  Whether these requests are granted or denied is within the sole discretion of the District Judge.  The application must be filed within the same 90-day time period for filing the civil action.


*Stephanie D. Johnson*

Stephanie D. Johnson
EEO Services Analyst                                         Date: August 14, 2018
NEEOISO
P. O. Box 21979
Tampa, FL 33622-1979


**Enclosure:** EEOC Appeal Form 573


cc:
Complainant
Svetlana Shkolnikova
275 Bay 37th St., Apt. 5G
Brooklyn NY 11214-6545
**USPS Tracking No. 9114 9014 9645 1642 7826 83**


Representative
David Schwartz, Esq.
45 Broadway, Ste. 620
New York NY 10006-4010
**USPS Tracking No. 9114 9014 9645 1642 7826 90**

Final Agency Decision
Svetlana M. Shkolnikova
Agency Case Number 4B-110-0083-16
Page 21


USPS Law Department Attorney
Donald Spector
Northeast / New York USPS Law Department
90 Church Street, Ste 3300
New York NY 10007-2993

Compliance Officer
via FedSEP