**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SVETLANA SHKOLNIKOVA,

                           Plaintiff,

       v.

LOUIS DEJOY, POSTMASTER GENERAL,

                       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.
18-CV-6400

**(Brodie, J.)**
**(Tiscione, M.J.)**

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS & PLAINTIFF'S COUNTERSTATEMENT OF <u>UNDISPUTED FACTS</u>

       Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiff hereby submits this Statement of Material Facts of Dispute in Opposition to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts.

       Plaintiff has also supplied the Court with Plaintiff's Counterstatement of Material Facts below as Defendant's Rule 56.1 Statement did not address all the relevant material facts at issue in this Action.

### <u>AS FOR DEFENDANT'S PURPORTED UNDISPUTED MATERIAL FACTS</u>

**I. THE PARTIES**

**A.   Plaintiff Svetlana Shkolnikova**

      1.  Plaintiff Svetlana Shkolnikova is a married woman born on ███████████, who has three children with her husband, Hart Nguyen. *See* Declaration of Paulina Stamatelos ("Stamatelos Decl."), Ex. 1, Plaintiff's Deposition Transcript ("Pl. Tr.") at 13-14.

**Plaintiff's Response**: **Undisputed** as to Plaintiff's testimony. *However, for purposes of clarity, it is worth noting that Defendant's Exhibit 1 is an excerpted portion of the Plaintiff's Deposition Transcript.*

2.   In this action, Plaintiff asserts one claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *See* Civil Docket for Case No. 18-cv-6400, Docket Entry No. 1, Complaint ("Compl."). Plaintiff alleges that USPS violated Title VII by "discriminating and retaliating against [her] because of [Plaintiff's] pregnancy and gender (female), as well as her request for reasonable accommodation of her pregnant condition." Compl. ¶60. In her Complaint, Plaintiff alleges USPS denied her request for "a reasonable accommodation in the form of a short-term transfer to a job that did not require her to lift, push, and pull excessive weight until after she gave birth." Compl. ¶ 42.

**Plaintiff's Response**: **Disputed in part.** It is **undisputed** that Plaintiff alleges that USPS violated Title VII by "discriminating and retaliating against [her] because of [Plaintiff's] pregnancy and gender (female), as well as her request for reasonable accommodation of her pregnant condition." Compl. ¶ 60. However, Plaintiff **disputes** that she *exclusively* requested the accommodation of a short-term transfer. Through her numerous requests for accommodation both to her direct supervisors at the USPS Homecrest Station where she worked ("Homecrest") and to the USPS's District Reasonable Accommodation Committee ("DRAC"), Plaintiff suggested multiple potential accommodations that would have allowed her to maintain her position as a City Carrier Assistant 2, such as: 1) temporary [3 month] light duty assignment; 2) assignment to a temporary light duty position such as an office job; 3) assignment to truck driving duty; 4) to have a lighter mail bag; or 5) short term leave. Cela Decl. at Ex. 3, Svetlana Shkolnikova EEO Investigative Affidavit ("Pl. Affidavit") at USPS 0090.

2

**B.  Defendant Louis DeJoy, United States Postmaster General**

3.   Defendant Louis DeJoy ("Defendant") is the Postmaster General of the United States. *See* https://about.usps.com/who/leadership/officers/pmg-ceo.htm.

> **Plaintiff's Response**: **Undisputed.**

## II.  BACKGROUND

**A.     Procedural Background**

4.   Plaintiff's Complaint initially raised five causes of action, but only her first claim for gender discrimination and retaliation under Title VII (Count I) remains. *See* Compl. Count I, ¶¶ 58-60.

> **Plaintiff's Response**: **Undisputed.**

5.   Plaintiff had asserted four other causes of action for discrimination, retaliation, and aiding and abetting unlawful discriminatory practices, under New York State law and the New York City Administrative Code, against defendants Louis DeJoy, the USPS Postmaster General, and Adela Livingston ("Ms. Livingston") whom Plaintiff alleged served as her supervisor during her brief employment with the USPS.  *See* Compl. Counts II-IV.

> **Plaintiff's Response**: **Undisputed.**

6.   By Stipulation and Order entered August 7, 2020, the Court dismissed Plaintiff's claims at Count II for Discrimination and Retaliation under New York State law, and at Count IV for Discrimination and Retaliation under the New York City Administrative Code, with prejudiceupon consent of the parties.  *See* Dkt. No. 34, Stipulation and Order.

> **Plaintiff's Response**: **Undisputed.**

7.   In his pre-motion conference letter filed on March 19, 2021, Defendant argued that Plaintiff's Counts III and V of her Complaint, which include claims for aiding and abetting

3

unlawful discriminatory practices under New York State law and the New York City Administrative Code, respectively, *see* Compl. ¶¶ 64-66; 70-72, should be dismissed as preempted by Title VII because that statute provides the exclusive remedy available to federal employees for allegations of discrimination and retaliation. *See* Dkt. No. 46, Defendant's Pre-Motion Conference Letter.

<u>**Plaintiff's Response**</u>: **Undisputed.**

8.   In her March 26, 2021 response to Defendant's request for a pre-motion conference in anticipation of his motion for summary judgment, Plaintiff responded that she "agrees to dismiss [Counts III and V] against Defendant Livingston as preempted by Title VII." *See* Dkt. No. 47, Plaintiff's Response to Defendant's Pre-Motion Conference Letter. Accordingly, the only cognizable claim before this Court, which Plaintiff did not dispute in her response to Defendant's request for a pre-motion conference, is Plaintiff's Count I for Defendant Louis DeJoy's alleged violation of Title VII (gender discrimination and retaliation).[1]

<u>**Plaintiff's Response**</u>: **Undisputed.**

**B.    USPS Hires Plaintiff To Serve As A City Carrier Assistant 2**

i.    **Plaintiff's Application Process**

9.   On or about December 12, 2015, Plaintiff's husband Hart Nguyen completed and submitted Plaintiff's online application for a CCA position with the USPS. Ex. 1, Pl. Tr. at 43; *see* Stamatelos Decl. at Ex. 2, Plaintiff's Completed Online Application for Employment, PS Form 2591, USPS 0389-0401. The application form requests information about an applicant's education and work history, and also includes miscellaneous questions relating to, for example, an

---

[1] In advance of Defendant's service of its motion for summary judgment, the parties agreed to submit a proposed stipulation and order dismissing Adela Livingston as a defendant and dismissing Plaintiff's Counts III and V with prejudice.

applicant's criminal history or prior service as a U.S. veteran. At that time, Plaintiff knew she was pregnant with her second child.

   **Plaintiff's Response**: **Disputed in part.** Plaintiff **disputes** the characterization that her husband, Hart Nguyen, was solely responsible for the completion and submission of Plaintiff's online application for a CCA position. Plaintiff's husband filled out the initial information in the application, but Plaintiff checked the information he provided to ensure its accuracy prior to submission. *See* Cela Declaration ("Cela Decl.") at Ex. 1, Excerpted Deposition of Svetlana Shkolnilova ("Pl. Tr.") at 45-46. The nature of the questions on the application is **undisputed**. It is further **undisputed** that Plaintiff knew she was pregnant with her second child at the time of her application.

   10. Plaintiff then completed an online exam consisting of multiple questions, the substance of which she does not recall. Pl. Tr. at 48-49; *see* Stamatelos Decl. at Ex. 3, Plaintiff's USPS Personnel Folder, USPS0390 ("Pl. Personnel Folder").

   **Plaintiff's Response**: **Undisputed.**

   11. Plaintiff appeared for an in-person interview on January 7, 2016. Pl. Tr. at 57; 49;*see* Stamatelos Decl. at Ex. 4, Plaintiff's Hiring Folder, USPS 0600-0608. On January 7, 2016, Plaintiff also signed two forms titled; (1) *Your Role in Protecting the Security of the U.S. Mail*; and (2) *Outside Employment and Activities: What You Should Know About Working Outside of the Postal Service*. *Id.* USPS 0607-0608.

   **Plaintiff's Response**: **Undisputed.**

   12. Plaintiff testified that, during her in-person interview, the USPS interviewer did not ask Plaintiff if she was pregnant and did not comment on her physical appearance. Pl. Tr. at 69. After completion of the online form and multiple-choice examination, and the interview, Plaintiff was

hired to serve as a non-career City Carrier Assistant 2 ("CCA") with the USPS. Plaintiff's official date of hire was February 6, 2016. Ex. 3, Pl. Personnel Folder, USPS Notice of Personnel Action, Svetlana Shkolnikova, at USPS 0386.

<u>**Plaintiff's Response**</u>: **Undisputed.**

13. CCAs "must be physically able to efficiently perform the duties of the position with or without reasonable accommodation." *See* Stamatelos Decl. at Ex. 5, City Carrier Assistant 2 Job Description, USPS 0200-0202. "CCA duties require arduous exertion involving prolonged standing, walking, bending and reaching, and may involve handling heavy containers of mail weighing up to the allowable maximum mailing weight." *Id.*, USPS 0202.

<u>**Plaintiff's Response**</u>: **Undisputed.**

14. Specifically, CCAs' duties include: carrying mail weighing up to 35 pounds in shoulder satchels or other equipment; loading and unloading containers of mail weighing up to 70 pounds; and other tasks which require arduous exertion, involving prolonged standing, walking, bending, climbing, working in excessive heat, cold, humidity, dampness or chill, and handling heavy containers of mail. *See* Stamatelos Decl. at Ex. 6, USPS District Reasonable Accommodation Committee's decision denying Plaintiff's request for an accommodation dated April 14, 2016, ("April 14 DRAC Letter"), USPS 0312-USPS 0314; *see* Stamatelos Decl. at Ex. 7, USPS employee Adela Livingston's deposition transcript ("Livingston Tr.") at 27-28; *see* Stamatelos Decl. at Ex. 8; USPS's Federal Rule of Civil Procedure 30(b)(6) witness Tenagh Bryant's deposition transcript ("Bryant Tr.") at 135-139; *see* Stamatelos Decl. Ex.9, Functional Requirements and Environmental Factors for S. Shkolnikova, USPS 0412.

<u>**Plaintiff's Response**</u>: **Disputed in part.** According to Defendant's own ¶ 15 below, the duties of the CCA job *include* "deliver[ing] mail along a prescribed route, *on foot or by*

*vehicle,*" meaning that carrying a satchel up to 35 pounds is not an overarching job duty for all CCA employees. Cela Decl. at Ex. 2, City Carrier Assistant 2 Job Description ("CCA Job Description") at USPS 0200-0202. Moreover, the CCA Job Description indicates only that "applicants must be physically able to efficiently perform the duties of the position *with or without reasonable accommodation*" and does not indicate a specific pound carrying limit. *Id.*

*Additionally, for purposes of clarity, it is worth noting that Defendant's Exhibits 7 and 8 are excerpted portions of Ms. Livingston's and Ms. Bryant's depositions, respectively. Furthermore, a portion of Defendant's Exhibit 34 has been included in Exhibit 7.*

15. The essential functions of the CCA job include, but are not limited to, the following: case all classes of mail in sequence of delivery along an established route; withdraw mail from the distribution case and prepare it in sequence for efficient delivery along an established route; prepare and separate all classes of mail to be carried by truck to relay boxes along a route for subsequent delivery; handle undeliverable mail in accordance with established procedures; deliver mail along a prescribed route, on foot or by vehicle, on a regular schedule, picking up additional mail from relay boxes as needed; collect mail from street letter boxes and accept letters for mailing from customers; on certain routes, deliver mail that consists exclusively of parcel post. Ex. 5, USPS 0200-0202.

**Plaintiff's Response**: **Disputed.** The document referenced does not describe the above as the "essential functions" of the CCA job. The document cites the categories above as "duties and responsibilities" of a CCA. There is nothing in this document, a general job description, that indicates that all or even some of these job duties constitute "essential functions" of the job. Ex. 2. CCA Job Description.

16. The probationary period for CCAs, like Plaintiff, is ninety calendar days from "entry

on duty" -- which for Plaintiff was February 6, 2016. USPS may terminate a probationary employee at any time during the probationary period "and these probationary employees shall not be permitted access to the grievance procedure." *See* Stamatelos Decl. at Ex. 10, 2011-2016 National Agreement, National Association of Letter Carriers, at USPS 0256-USPS 0281; 0262-0265; Ex. 4, Plaintiff's Hiring Folder, 0603. For CCAs, like Plaintiff, the probationary period is 90 workdays or 120 days of employment, whichever comes first. Ex. 8, Bryant Tr. at 79-84.

**Plaintiff's Response**: **Undisputed.** However, Plaintiff **disputes** the characterization of Defendant's Exhibit 10 as "2011-2016 National Agreement, National Association of Letter Carriers." The exhibit contains five separate USPS policy documents.

17. The purpose of a probationary period is to evaluate employees on the following factors: work quantity, work quality, dependability, work relations, work methods, and personal conduct. During this period, the employee has frequent contact with supervisors and managers, who observe these six factors in order to evaluate the employee's performance and provide feedback to develop specific plans to enhance performance and determine whether the employee should be retained or rehired at the conclusion of her or his temporary appointment. Ex. 8, Bryant Tr. at 161-163.

**Plaintiff's Response**: **Undisputed.**

ii.    **Plaintiff's Employment History As a CCA With the USPS**

18. Plaintiff was assigned to the Homecrest Carrier Annex located at 2370 E 19th St, Brooklyn, NY 11229, Brooklyn, New York ("Homecrest Station"). Pl. Tr. at 57; Ex. 4, Hiring Folder, USPS 0610.

**Plaintiff's Response**: **Undisputed.**

19. Plaintiff's base salary was $16.06 an hour.  Ex 3, Pl. Personnel File, USPS 0402.

**Plaintiff's Response**: **Undisputed.**

20. On February 8, 2016, Plaintiff commenced the training program for new USPS employees. Pl. Tr. at 61-62; Ex. 4, Plaintiff's Hiring Folder, USPS 0610.

**Plaintiff's Response**: **Undisputed.**

21. From February 11 to February 12, 2016, Plaintiff attended the Carrier Academy which provided Plaintiff with an overview of the duties and responsibilities of a CCA, including learning how to scan mail and deliver it safely.  Ex. 6, April, 2016 DRAC Letter; *see* Stamatelos Decl. at Ex. 10, Plaintiff's Individual Training Progress Report, USPS 0345.

**Plaintiff's Response**: **Undisputed.** However, Plaintiff **disputes** that Defendant's Exhibit 10 contains Plaintiff's Individual Training Progress Report.

22. During her deposition, Plaintiff could not recall any of the specific details of her training but recalled that USPS representatives explained "how to deliver the mail, like what to do, what not to do."  Pl. Tr. at 64:15-18.

**Plaintiff's Response**: **Undisputed.**

23. Plaintiff began her employment at Homecrest Station as a CCA on February 16, 2016. Pl. Tr. at 69. Plaintiff entered Homecrest Station "through the back" and could not recall if the building was comprised of one or two floors.  Pl. Tr. at 71.

**Plaintiff's Response**: **Disputed in part.** It is **undisputed** that Plaintiff began her employment as a CCA at Homecrest Station on February 16, 2016. It is **undisputed** that Plaintiff entered Homecrest through the back, as she was instructed to do. Ex.1, Pl. Tr. at 71. Plaintiff **disputes** that she could not recall if the building was comprised of one or two floors. After initially indicating that the facility was one floor, Plaintiff corrected herself and stated that she recalled the facility was two floors because the first floor was for packages and the second floor was for mail. *Id at 71,145.*

9

24. By February 16, 2016, Plaintiff was approximately twenty-five weeks pregnant. See Stamatelos Decl. at Ex. 11, Plaintiff's ACOG Report by Saul Stromer, M.D. ("ACOG Report").

**Plaintiff's Response**: **Undisputed.** However, Plaintiff **disputes** that Defendant's Exhibit 11 contains Plaintiff's ACOG Report by Saul Stromer, M.D.

25. On February 16, 2016, Plaintiff first met with Steven Smerling, her supervisor. See Stamatelos Decl. at Ex. 11, Plaintiff's ACOG Report by Saul Stromer, M.D. ("ACOG Report").

**Plaintiff's Response**: **Undisputed.** However, Plaintiff **disputes** that Defendant's Exhibit 11 contains Plaintiff's ACOG Report by Saul Stromer, M.D or any record of Plaintiff meeting with Steven Smerling on February 16, 2016.

26. On February 16, 2016, Plaintiff also met with Adela Livingston to review the duties and responsibilities of a CCA. Ex. 7, Livingston Tr. at 38; Ex. 1, Pl. Tr. at 74-75. Ms. Livingston currently serves as the Postmaster General for Staten Island, New York. Ex. 7, Livingston Tr. at 10. At the time of Plaintiff's employment with the USPS, Ms. Livingston served as Area Manager for Customer Service covering nine USPS locations in Brooklyn, New York. *Id.* at 11. In that capacity, Ms. Livingston supervised and assisted the station managers at those facilities to perform the USPS's functions. *Id.* at 15-17.

**Plaintiff's Response**: **Disputed in part.** It is **undisputed** that Plaintiff met with Adela Livingston on February 16, 2016. Plaintiff **disputes** that she discussed the "duties and responsibilities of a CCA" with Ms. Livingston on February 16, 2016. Plaintiff recalls that Ms. Livingston only gave Plaintiff the address of the location where Plaintiff was to have her three-day training and asked Plaintiff directly if she was pregnant. Pl. Tr. at 75. Ms. Livingston's job title at the time of Plaintiff's employment and the description of Ms. Livingston's job duties are **undisputed**.

27. On February 16, 2016, Plaintiff did not deliver any mail.  Ex. 1, Pl. Tr. at 81-82.

      **Plaintiff's Response**: **Undisputed.**

28. On February 17, 2016, Plaintiff reported to Bay Station for three days of on-the-job training. Ex., Pl. Tr. at 78. On that day she accompanied another CCA for an approximately eight-hour shift to deliver mail. Pl. Tr. at 82; Ex. 6, April 2016 DRAC Letter; Ex. 7, Livingston Dep. Tr. at 37-28.

      **Plaintiff's Response**: **Undisputed.**

29. On February 18, 2016, Plaintiff again accompanied another CCA for an approximately eight-hour shift to deliver mail. Ex. 1, Pl. Tr. at 83; Ex. 6, April 2016 DRAC Letter. She reported to Bay Station again and worked between 8:00 a.m. and 4:30-5:00p.m. Pl. Tr. at 79.; Ex. 6, April 2016 DRAC Letter.

      **Plaintiff's Response**: **Undisputed.**

30. On February 19, 2016, Plaintiff completed her on-the-job training at Bay Station, in Brooklyn, New York. Ex. 11, USPS 0346.

      **Plaintiff's Response**: **Disputed.** Despite completing this particular training session at Bay Station on February 19, 2016, on March 16, 2016, Plaintiff was told by manager Timothy Lawson to report for re-training at the Midwood Station from March 17-19, 2016. Ex. 3, Pl. Affidavit at USPS 0087. Plaintiff recalls that Mr. Lawson told her that the re-training was at the request of Ms. Livingston. *See Id.*

C. **Plaintiff Requests "Restrictive Duty, Very Light Work" After Completing Two Routes With the USPS**

31. Immediately following her on-the-job training at Bay Station, Plaintiff requested that she be placed on "restrictive duty, very light work." Specifically, on February 18, 2016, Plaintiff had visited her obstetrician-gynecologist, Saul Stromer, M.D. Pl. Tr. at 77; Ex. 12, ACOG

Report.  On February 18, 2016, Dr. Stromer completed a letter ("February 18, 2016 Stromer Letter") stating "To Whom It May Concern: Please be informed that my patient, Mrs. Svetlana Shkolnikova is currently pregnant and her expected date of delivery is 5/31/2016.  I have advised her to be placed on restricted duty, very light work." Pl. Tr. at 84; *see* Stamatelos Decl. at Ex. 13, February 18, 2016 Stromer Letter, USPS 0410.

**Plaintiff's Response**: **Undisputed.**

32. Plaintiff claims Dr. Stromer advised her to be placed on "restricted duty, very light work" because during Plaintiff's previous (first) pregnancy she experienced ████████████ and "nearly died." Pl. Tr. at 85.

**Plaintiff's Response**: **Undisputed.**

33. Plaintiff stated that during her appointment on February 18, 2016, Dr. Stromer told her to "take it easy" but did not explain to her what he meant by "restricted duty, very light work." Pl. Tr. at 87.

**Plaintiff's Response**: **Undisputed.**

34. On February 20, 2016, Plaintiff reported to Homecrest Station and was assigned a route without another CCA.  Pl. Tr. at 95.

**Plaintiff's Response**: **Undisputed.**

35. On February 22, 2016, Plaintiff returned to Homecrest Station and was assigned a route to complete on her own.  Pl. Tr. at 88; 97.

**Plaintiff's Response**: **Undisputed.**

36. On February 22, 2016, Plaintiff did not provide Mr. Smerling with a copy of the February 18, 2016 Stromer Letter but instead gave it to Ms. Livingston who informed Plaintiff that the February 18, 2016 Stromer Letter was vague since it included no description of what job duties

Plaintiff was able to perform given her pregnancy. Ex. 7, Livingston Tr. at 42, 43; *see* Stamatelos Decl. at Ex. 14, Adela Livingston EEO Investigative Affidavit (Witness), dated August 8, 2016, at USPS 0115 ("Livingston EEO Affidavit").

> **Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that she gave the February 18, 2016 Stromer Letter to Ms. Livingston on February 22, 2016. Plaintiff **does not dispute** that the February 18, 2016 Stromer Letter did not cite specific job duties Plaintiff could and could not do. However, Plaintiff **disputes** that the letter was insufficient to begin the interactive process by which USPS could determine with Plaintiff whether her temporary pregnancy-related condition could be accommodated. Ms. Livingston testified that she understood this February 18, 2016 letter to be a request for light duty. Cela Decl. at Ex. 4, Excerpted Deposition of Adela Livingston ("Livingston Tr.") at 41-42. USPS's Reasonable Accommodation Handbook indicates that any employee who receives a reasonable accommodation request "must process the request promptly" and must engage in "informal dialogue with the individual seeking accommodation" to determine together what the requesting employee's needs are and what kinds of accommodations may be available. Cela Decl. at Ex. 5, USPS Handbook EL-307, "Reasonable Accommodation, an Interactive Process" ("Reasonable Accommodation Handbook") at USPS 0290-0294.

37. On February 23, 2016, Ms. Livingston reached out to USPS human resources employees regarding Plaintiff's request for restricted, light duty.  Ex. 7, Livingston Tr. at 79-80.

> **Plaintiff's Response**: **Disputed in part.** It is **undisputed** that Ms. Livingston reached out to USPS employees regarding Plaintiff's request for restricted, light duty. Plaintiff **disputes** that the email was only sent to "human resources employees." The email was also sent to Anthony Impronto, who was a Postmaster in Brooklyn at the relevant time, and Te'Nagh Bryant,

who was the Manager of Labor Relations and the Chairperson for the District Reasonable Accommodation Committee at the relevant time. Cela Decl. at Ex. 6, Excerpted Deposition of Te'Nagh Bryant ("Bryant Tr.") at 19, 23; Ex. 7, February 23, 2016 Email from Adela Livingston to Antony Impronto, Matthew Doxsey, Te'Nagh Bryant, and David Rudy ("February 23 Email").

38. On February 24, 2016, Dr. Stromer provided Plaintiff with another letter stating that Plaintiff could "only lift up to 10 pounds and only push and pull up to 30" and "can only do limited stairs usage and limited bending." *See* Stamatelos Decl. at Ex. 15, Saul Stromer, M.D. letter, dated February 24, 2016, USPS 0408 ("February 24, 2016 Stromer Letter"). The February 24, 2016 Stromer Letter also insufficiently described Plaintiff's limitations. Ex. 7, Livingston Tr. at 45.

**Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that this is the content of the February 24, 2016 letter. Plaintiff **does not dispute** that Ms. Livingston said this letter was not specific enough. Livingston Tr. at 45. Plaintiff **disputes**, for the same reasons contained herein as her response *supra* to ¶ 36, that this letter insufficiently described Plaintiff's limitations for the purpose of beginning the interactive reasonable accommodation process.

39. Plaintiff testified that Dr. Stromer drafted the February 24, 2016 Stromer Letter because Plaintiff's "boss" was "looking for a specific amount of weight that I can lift or push or pull, what can I do or cannot do." Ex. 1, Pl. Tr. at 99.

**Plaintiff's Response**: **Undisputed.**

40. Dr. Stromer did not give Plaintiff any instructions on what "limited stairs usage and limited bending" specifically meant. Ex. 1, Pl. Tr. at 100; Ex. 7, Livingston Dep. Tr. at 61.

**Plaintiff's Response**: **Undisputed.**

41. The February 24, 2016 Stromer Letter did not discuss any limitations on Plaintiff's ability to walk for extended periods of time. Ex. 1, Pl. Tr. at 101; Ex. 15, February 24, 2016

Stromer Letter.

    **Plaintiff's Response**: **Undisputed.**

42. Dr. Stromer drafted a second letter on February 24, 2016 which provided that Plaintiff's work duties should be modified and that she could "only lift up to ten pounds and no using stairs." *See* Stamatelos Decl. at Ex. 16, February 24, 2016 Saul Stromer Letter, M.D. ("Second February 24 Stromer Letter"), USPS 0409.  The Second February 24 Stromer Letter also was vague; it did not discuss Plaintiff's limitations with respect to walking and, in general, insufficiently described her limitations.  Ex. 1, Pl. Tr. at 104;  Ex. 7, Livingston Dep. Tr. at 65.

    **Plaintiff's Response**: **Disputed in part. Plaintiff does not dispute** the contents of the Second February 24 Stromer Letter. Plaintff **disputes** that she testified that this letter was vague or that it "insufficiently described her limitations." Ex.1, Pl. Tr. at 104. Plaintiff also **disputes** that Ms. Livingston testified that the note "insufficiently described her limitations," as Ms. Livingston stated with respect to this note "that is not within the scope of my position to determine whether or not it was sufficient." Ex.4, Livingston Tr. at 65.

43. Plaintiff does not recall if she gave the Second February 24 Stromer Letter to any USPS employee.  Pl. Tr. at 105.

    **Plaintiff's Response**: **Disputed.** Plaintiff recalls that she may have shown this letter to Ms. Livingston. Ex. 1, Pl. Tr. at 105.

44. Ms. Livingston provided Plaintiff with a template letter dated February 29, 2016 and addressed "To Whom It May Concern" ("February 29, 2016 Template Letter") listing the basic requirements of a CCA because Plaintiff had previously submitted documentation that did not provide specific information as to Plaintiff's limitations despite Ms. Livingston's having explained to her "numerous times" what information Plaintiff's physician needed to supply regarding

Plaintiff's limitations due to her pregnancy. *See* Stamatelos Decl. at Ex. 17, February 29, 2016 Template Letter; Ex. 7, Livingston Dep. Tr. at 67.

> **Plaintiff's Response**: **Disputed in part.** It is **undisputed** that Ms. Livingston provided Plaintiff with the February 29, 2016 Template Letter. It is **disputed** that Ms. Livingston explained to Plaintiff "numerous times" the nature of the information she felt was required for Defendant to accept the letter. In fact, Ms. Livingston herself testified that it was "not within the scope of [her] position" to determine whether or not the letters from Plaintiff's doctors were sufficient and that she only described what she believed to be the job's requirements to Plaintiff so that "she could do as she chose with it." Ex. 4, Livingston Tr. at 46, 65.

45. In the February 29, 2016 Template Letter, Ms. Livingston listed the basic requirements of the duties a CCA needs to perform for up to 8-12 hours six to seven days a week. The purpose of the February 29, 2016 Template Letter was for Dr. Stromer to indicate what Plaintiff could do and to provide the specific limitations as to the following activities based on Plaintiff's pregnancy: (i) lifting up to 70 lbs.; (ii) sitting; (iii) standing; (iv) walking; (v) climbing; (vi) kneeling; (vii) bending; (viii) stooping; (ix) twisting; (x) pulling; (xi) pushing; (xii) driving a 2-ton postal truck (including climbing in/out to deliver parcels throughout a given time-frame/day). Ex. 7, Livingston Dep. Tr. at 67; Ex. 17, February 29, 2016 Template Letter.

> **Plaintiff's Response**: **Undisputed.**

46. Dr. Stromer helped complete another letter, this time on February 29, 2016. *See* Stamatelos Decl. at Ex. 18, February 29, 2016 Stromer Letter Response, USPS 0100. Ms. Livingston had previously "typed up" this letter in Plaintiff's presence and Dr. Stromer later completed it by adding handwritten notes to it. Ex. 1, Pl. Tr. at 107; Ex.7, Livingston Tr. at 67.

> **Plaintiff's Response**: **Undisputed.**

47. Dr. Stromer's notations indicated that Plaintiff could only: lift ten pounds; walk upto two hours (but did not indicate if she could walk up to two hours continuously); climb one flight of stairs; push and pull up to ten pounds; and drive a Postal Truck.  Ex.18, February 29, 2016 Stromer Letter Response. Dr. Stromer indicated Plaintiff could not twist at all, and, although he placed check marks next to the following categories of activities—sit, stand, kneel, bend or stoop— he did not indicate the duration Plaintiff would be able to perform those duties in a working day.  Ex. 7, Livingston Tr. at 69-70; Ex. 18, February 29, 2016 Stromer Letter Response.

**Plaintiff's Response**: **Disputed.** Since the introductory paragraph in the letter indicates that Plaintiff would need to do the activities described therein for up to 8-12 hours and Dr. Stromer indicated on the "walking" category that Plaintiff was able to walk for up to two hours, the check marks within the letter that do not contain any additional notes can reasonably be read to state that Plaintiff is capable of sitting, standing, kneeling, bending, stooping, pushing and pulling up to 10 pounds, and driving a 2-ton postal truck for up to 8-12 hours. Cela Decl. at Ex. 8, Dr. Stromer February 29, 2016 Note ("February 29 Note").

48. Following her receipt of the February 29, 2016 Stromer Letter Response, Ms. Livingston again explained to Plaintiff that her doctor's notes were not specific enough with respect to describing Plaintiff's limitations during a workday. Ex. 7, Livingston Tr. at 70-71. Plaintiff's failure to have her physician detail Plaintiff's specific limitations as to working as a CCA during a full-day's route delayed USPS's efforts to consider Plaintiff's request for light duty. Ex. 7, Livingston Tr. at 72.

**Plaintiff's Response**: **Disputed in part**. It is **undisputed** that Ms. Livingston did not accept the February 29 Note. Plaintiff **disputes** that the February 29 Note was not specific enough and that Plaintiff failed to provide the USPS with sufficient information to consider

Plaintiff's request for reasonable accommodation. *See supra*, Plaintiff's response to ¶ 47.

49. Plaintiff then provided USPS with a letter dated March 7, 2016, which was prepared by Plaintiff's primary doctor's (not Dr. Stromer) physician assistant ("PA") Semyon Elyash, USPS 0101. Pl. Tr. 110-111; *See* Stamatelos Decl. at Ex. 19, March 7, 2016 Letter by PA Semyon Elyash ("Plaintiff's March 7, 2016 Letter"). Plaintiff's primary care doctor, Dr. Fayngerish, did not examine her prior to PA Elyash drafting the March 7, 2016 Letter. *Id.* These medical providers are not Plaintiff's obstetrician and gynecologist, and instead practice at Ocean Medical Diagnostics, P.C., in Brooklyn, New York. *Id.*

**Plaintiff's Response**: **Disputed in part.** It is **undisputed** that Semyon Elyash was a physician's assistant at Plaintiff's primary care doctor's office who drafted the letter, which was then signed by Dr. Fayngersh. Plaintiff **disputes** this paragraph as incomplete, as Semyon Elyash examined Plaintiff for approximately 20-30 minutes prior to typing the letter on her behalf. *See* Pl. Tr. at 111. Further, Plaintiff went to her primary care doctor for additional examination to receive another reasonable accommodation letter at the direction of Dr. Stormer. *See* Ex.1, Pl. Tr. at 110-11.

50. Plaintiff's March 7, 2016 Letter included the categories in the February 29, 2016 Letter. Plaintiff's March 7, 2016 Letter, USPS 0101. With respect to sitting, standing, kneeling, bending, and stooping, Plaintiff could perform these tasks in a "continuous" manner between "8 hrs. to 12 hrs." *Id.*

**Plaintiff's Response**: **Undisputed.**

51. Ms. Livingston received Plaintiff's March 7, 2016 Letter from another USPS employee, not from Plaintiff directly. Ex. 7, Livingston Tr. at 76-77. Ms. Livingston submitted the March 7, 2016 Letter to the manager of USPS human resources, David Rudy. *Id.* at 77.

**Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that she had to give the March 7, 2016 Letter to another employee as she could not reach Ms. Livingston despite repeated attempts to find her. Ex.1, Pl. Tr. at 114. Plaintiff **disputes** that Ms. Livingston submitted the letter to David Rudy. The record indicates that Ms. Livingston emailed Postmaster Anthony Impronto regarding Plaintiff's March 7, 2016 letter on March 17, 2016. Mr. Impronto then forwarded Ms. Livingston's email to Mr. Rudy and asked for Plaintiff's requests to be sent to the DRAC. Cela Decl. at Ex. 9, March 17, 2016 Email Chain between Adela Livingston, Anthony Impronto, David Rudy, and Te'Nagh Bryant ("March 17 Emails").

52. Ms. Livingston construed Plaintiff's requests, as described by the medical documentation she provided, as a request for a reasonable accommodation. Ms. Livingston communicated with Plaintiff regarding her limitations, requested and obtained documentation from Plaintiff relating to her limitations, and notified USPS's human resources department, including the District Reasonable Accommodation Committee ("DRAC") of Plaintiff's request and limitations.  Ex. 7, Livingston Tr. at 19; 22-23; Ex. 14, Livingston EEO Aff., USPS 0123.

**Plaintiff's Response**: **Disputed in part.** Plaintiff **disputes** that Ms. Livingston requested documentation from Plaintiff regarding her limitations. Ms. Livingston testified that she did not at any time request documentation from Plaintiff relating to her limitations. Ex. 4, Livingston Tr. at 46. Ms. Livingston described her communication with Plaintiff regarding her limitations as describing the physical requirements of the CCA job to Plaintiff "so that she could do as she chose with it." *Id.* Plaintiff **does not dispute** that Ms. Livingston notified USPS's human resources department and the DRAC of Plaintiff's request.

53. Plaintiff was not assigned any routes after she began presenting the letters from Dr. Stromer and PA Elyash to USPS. Ex. 7, Livingston Tr. at 122-125. Ms. Livingston explained that

given Plaintiff's physical limitations, there was no work assignments that Plaintiff could perform and Ms. Livingston expressed a concern for any potential consequences to Plaintiff's health should she be placed on the schedule and suffer injuries as a result of her physical limitations. *Id.*; Ex. 14, Livingston EEO Aff., USPS 0123.

        **<u>Plaintiff's Response</u>**: **Disputed in part**. Plaintiff **does not dispute** that she was not assigned any routes after she began presenting the letters from Dr. Stromer and PA Elyash to USPS. Plaintiff **disputes** that her exclusion from the work schedule was due to any genuine concern over Plaintiff's physical condition or any desire to reasonably accommodate Plaintiff's temporary pregnancy-related condition. Despite allegedly expressing concern for Plaintiff's health since she was presented with the very first Dr. Stormer letter on February 22, 2016, Ms. Livingston contends she was entirely uninvolved in the decisions to keep or remove Plaintiff from the Homecrest schedule until February 29, 2016. Cela Decl. at Ex. 10, Adela Livingston EEO Investigative Affidavit ("Livingston Affidavit") at USPS 0115. Interestingly, Plaintiff's direct supervisor, Mr. Smerling, also denies any responsibility for the decisions to send Plaintiff home between February 23, 2016 and February 29, 2016 and maintains that Ms. Livingston instructed him to send Plaintiff home on February 23. Cela Decl. at Ex. 11, Steven Smerling EEO Investigative Affidavit ("Smerling Affidavit") at USPS 0134, USPS 0136, USPS 0137. At the same time, Ms. Livingston testified that she, in fact, instructed Mr. Smerling to allow Plaintiff to work for "minimum, a minimum of an hour" on February 22, 2016 after receiving the first reasonable accommodation letter from Plaintiff, so Mr. Smerling could assess Plaintiff's proficiency in the tasks she had learned through training. Ex.4, Livingston Tr. at 43-44.

        54. Plaintiff testified during her deposition that she viewed USPS taking "away her hours" because of her "doctor's notes" as discrimination.  Ex 1, Pl. Tr. at 116.

**Plaintiff's Response**: **Undisputed.**

**D.      Plaintiff Files an Informal Complaint on March 10, 2016 Requesting to Be Transferred to Another USPS Station**

55. On March 10, 2016, Plaintiff filed an Information for Pre-Complaint Counseling, asking for a reasonable accommodation, specifically: "To be given work hours and only accommodate me on the limitations my doctor advised in concerns [sic] of my pregnancy" and "also to transfer me to another station or district that doesn't have any issues handling me." *See* Stamatelos Decl., at Ex. 20, March 10, 2016 Information for Pre-Complaint Counseling, USPS 0036-0037 ("Plaintiff's March 2016 Informal Complaint"); Pl. Tr. at 117. Plaintiff complained that she had "not been given any work hours" after presenting Dr. Stromer's letters to Ms. Livingston.

**Plaintiff's Response**: **Undisputed**.

56. On March 22, 2016, USPS referred Plaintiff's request for an accommodation of her pregnancy to the DRAC to conduct a DRAC meeting. *See* Stamatelos Decl. Ex. 21, March 22, 2016 email from Ms. Bryant to USPS personnel, USPS 0917; Ex. 22, USPS March 22, 2016 Letter to Plaintiff from the District Reasonable Accommodation Committee ("DRAC"), USPS 0403-0404.

**Plaintiff's Response**: **Undisputed.**

**E.      The USPS Reasonable Accommodation Process**

57. Handbook EL-307, Reasonable Accommodation, An Interactive Process ("Reasonable Accommodation Handbook"), provides managers and supervisors with procedures, guidance, and instructions on matters of reasonable accommodation that involve applicants and employees with disabilities. *See* Stamatelos Decl. Ex. 23, USPS Handbook EL-307, Reasonable Accommodation, An Interactive Process ("Reasonable Accommodation Handbook"), USPS 0282-USPS 0303.

**Plaintiff's Response**: **Undisputed.** However, Plaintiff **disputes** Defendant's characterization of Defendant's Exhibit 23 as the Reasonable Accommodation Handbook. The exhibit contains three separate USPS documents including the above-referenced handbook.

58. The goal of reasonable accommodation is to enable qualified individuals with disabilities to perform the essential functions of the job and enjoy equal benefits and privileges of employment as employees without disabilities enjoy. Ex. 23, Reasonable Accommodation Handbook, USPS 0286.

**Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that this is the USPS Reasonable Accommodation Handbook's stated goal. Plaintiff **disputes** that this statement accurately represents the entire purpose of the reasonable accommodation process. Both Ms. Livingston and Ms. Bryant have acknowledged that short term leave could be a potential accommodation. Ex. 7, February 23 Email; Ex. 6, Bryant Tr. at 159, 161.

59. When the reasonable accommodation process is activated, USPS goes through the following five-step process to determine whether to provide an accommodation to the employee: (1) determine whether an individual has a disability; (2) determine the essential functions of the job; (3) identify the abilities and limitations of the individual; (4) identify potential accommodations; and (5) determine the reasonableness of the accommodations and select options. Ex. 23, Reasonable Accommodation Handbook, USPS 0290-0297.

**Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that the USPS Reasonable Accommodation Handbook outlines these steps for its reasonable accommodation process, but **disputes** that this is the procedure that was followed when USPS managerial employees interacted with her request, especially with respect to identifying potential accommodations and determining the reasonableness of those accommodations. Despite Ms.

Livingston identifying short-term leave as a potential option in her February 23 Email and Plaintiff requesting short-term leave through the DRAC proceeding, in making its decision, the DRAC failed to even acknowledge short-term leave as a potential reasonable accommodation. Ex. 7, February 23 Email; Ex. 3, Pl. Affidavit at 0090; Cela Decl. at Ex. 12, April 14, 2016 DRAC Decision Letter ("DRAC Decision"). Ms. Bryant, Chair of the DRAC, also acknowledged in testimony that short-term, unpaid leave, was a viable accommodation option under the law and that Plaintiff was already on short-term, unpaid leave due to the ongoing DRAC and EEO processes. Ex. 6, Bryant Tr. at 159-60.

60. Each area and district is required to have a Reasonable Accommodation Committee ("RAC" or "DRAC"). The district RACs are frequently referred to as DRACs. The RAC or DRAC holds an interactive meeting with the employee, preferably in person, or by telephone, to discuss the accommodation request. Before the meeting, the DRAC must obtain medical documentation from the employee. Ex. 23, Reasonable Accommodation Handbook, USPS 0296.

**Plaintiff's Response**: **Undisputed.**

61. The DRAC meets with the individual to: (a) review medical information; (b) discuss and evaluate limitations to major life activities; (c) discuss essential functions of the position in question and explore whether and how the individual can perform those functions without posing a direct threat to themselves or others; and (d) elicit input regarding potential accommodations, including alternatives such as reassignment (where necessary and available andappropriate). Ex. 23, Reasonable Accommodation Handbook, USPS 0296.

**Plaintiff's Response**: **Undisputed.**

62. A requested accommodation is not considered/deemed reasonable when it would entail any of the following: (i)  elimination of legitimate selection criteria; (ii) lowering standards of

performance; (iii) creation of a job where none exists; (iv) violating the seniority provisions of a collective bargaining agreement, reallocating or eliminating essential job functions, or otherwise substantially changing the fundamental nature of the job. *Id.* USPS 0286-0287.

      <u>**Plaintiff's Response**</u>: **Undisputed.**

63. Specifically, the Reasonable Accommodation Handbook advises USPS employees that, consistent with the law, USPS is not required "to change or alter the essential functions of a job" and USPS if also "not required to reallocate the essential functions of the job to another individual." *Id.*, USPS 0295.

      <u>**Plaintiff's Response**</u>: **Undisputed.**

64. Once a determination is made that there is no reasonable accommodation that would enable the employee to perform the essential functions of her job, and that no equivalent, vacant position exists, the employee would remain off the work schedule and would not be paid.

      <u>**Plaintiff's Response**</u>: Plaintiff is unable to respond, as the statement does not reference the record.

**F.   The USPS District Reasonable Accommodation Committee Denies Plaintiff's Request for a Reasonable Accommodation**

65. On March 28, 2016, the DRAC interactive process meeting took place ("DRAC Interactive Meeting").  In addition to the Chairperson for the DRAC, Tenagh Bryant, the following USPS employees were present: Pamela Harris, A/HR Generalist Principal; Irene Fanelli, A/District Manager Safety; Matt Doxsey, Manager Health and Resource management; Joy Zerna, Occupational Health Nurse Administrator; Jeannette Brooks, Manager, Learning Diversity & Development; Adela Livingston, Manager Customer Service Operations; USPS attorney Donald Spector; and Ewin Sanchez, Disability Compliance Specialist. Ex. 6, April 2016 DRAC Letter, USPS 0312-USPS 0314.

**Plaintiff's Response**: **Undisputed.**

66. Ms. Bryant testified that not all pregnant employees request light duty or reasonable accommodations. In other words, pregnancy is not considered a "disability" and does not mean that a USPS employee will have a mental or physical impairment that will prevent that employee from being able to perform the core essential functions of their employment with USPS. Ex. 8. Bryant Tr. at 38-39.

**Plaintiff's Response**: **Undisputed.** However, Plaintiff **disputes** the relevancy of this statement as it does not apply to her, since she was an employee who was pregnant and requested reasonable accommodation due to her temporary pregnancy-related condition on multiple occasions. *See* Plaintiff's Counterstatement ("Counterstatement") at ¶¶ 32, 47-48, 51, 60.

67. Plaintiff appeared at the DRAC Interactive Meeting, represented by her attorney, David Schwartz, of Phillips & Associates, PLLC.  During the DRAC Interactive Meeting, Plaintiff presented the letters from Dr. Stromer and PA Elyash. *See* Stamatelos Decl. at Ex. 24, USPS DRAC Committee Information Evaluation Form, USPS 0424-0435. The March 7, 2016 Letter listed her limitations in the following physical requirements of her job: lifting only up to 10 lbs.; walking up to 2 hours; climbing only one flight of stairs; no twisting; pulling up to 10 lbs.; pushing up to 10 lbs.; and driving a 2-ton Postal truck.  Ex. 6, April  2016 DRAC Letter.

**Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that she appeared at the DRAC meeting with her attorney, David Schwartz, of Phillips & Associates PLLC. Plaintiff **does not dispute** that she presented the letters from Dr. Stromer and PA Elyash at the meeting. Plaintiff **disputes** the characterization of some of the limitations contained in the March 7, 2016 letter. The letter states that Plaintiff could not walk for more than two *continuous* hours and could only walk up one flight of stairs *when the stairs are in a building*. Cela Decl. at Ex. 13,

March 7, 2016 Dr. Fayngersh and Semyon Elyash Note ("March 7 Note"). The only activity that was completely barred by Plaintiff's doctors was twisting. *Id.*

68. The reasonable accommodation Essential Functions Review Worksheet, Part B, Job Duties, has boxes across the top in which to list the five main functional requirements to perform the duties in the standard position description. Items a-i in the left column ask specific questions about the duties of the job. Manager Livingston completed the responses in Worksheet Part 1 and listed the following functional requirements of the CCA job and the percentage of time spent performing that duty in the job: (1) Walking and climbing stairs (90%); (2) Lifting/Carrying up to 70 lbs. (40%); (3) Extended standing/walking (96%); (4) Casing mail/fine manipulation (35%); and (5) Bending/Pulling/Stooping/Pushing/Twisting (45%). *See* Stamatelos Decl. at Ex. 25, Adela Livingston Responses on Essential Functions Review Worksheet, USPS 0342-USPS 0343.

**Plaintiff's Response**: **Undisputed**

69. Part 2 of the Essential Functions Review Worksheet lists Functional Requirements and Environmental Factors of various Postal Service jobs. The Functional Requirements of the CCA job are checked off in the left column of the worksheet and include, but are not limited to: lifting up to 70 lbs.; carrying 45 lbs. and over; straight pulling; walking 5-7 hours; standing 8-12 hours; repeated bending 5-7 hours; and climbing 5-7 hours. The Environmental Factors of the CCA job include, but are not limited to: working outside and inside, in excessive heat and cold, in excessive humidity, on slippery or uneven walking surfaces, and working alone. *Id.*

**Plaintiff's Response**: **Undisputed.**

70. At the DRAC interactive meeting, the accommodations requested by Plaintiff were that USPS  move the relay boxes or lighten the load Plaintiff would have to deliver by splitting the mail into two parts. Ex. 6, April 2016 DRAC Letter; Ex. 24, USPS DRAC Committee Information

Evaluation Form, USPS 0424-0435. DRAC determined that it was not possible for USPS to relocate relay boxes on a daily basis depending on the route to which Plaintiff would be assigned as such an accommodation would be an unreasonable fundamental alteration of the nature or operation of USPS's business and an undue hardship. *Id.* DRAC also determined that "the combination of mail and parcels that [Plaintiff would] deliver on [her] route each day will exceed [Plaintiff's] lifting restrictions." Ex. 6, April 2016 DRAC Letter, USPS 0313.

**Plaintiff's Response**: **Disputed in part.** In addition to the accommodations cited above, Plaintiff requested multiple potential accommodations that the DRAC failed to address, including: 1) temporary [3 month] Light Duty position; 2) assignment to a temporary light duty position such as an office job; 3) assignment to truck driving duty; 4) to have a lighter mail bag; or 5) short term leave. Ex. 3, Pl. Affidavit at USPS 0090. Moreover, the option of short-term leave was brought up independently by Ms. Livingston to Ms. Bryant, Anthony Impronto, Matthew Doxsey, and David Rudy in an email from February 23, 2016. Ex. 7, February 23 Email. Further, Ms. Bryant, who was Chair of the DRAC committee, acknowledged in testimony that short-term leave was a viable accommodation option under the law and that Plaintiff was already on short-term unpaid leave throughout the entirety of the DRAC process. Ex.6, Bryant Tr. at 159-60.

71. At no point during or prior to the DRAC Interactive Meeting did Plaintiff request that DRAC consider offering her an unpaid or short-term leave of absence. *Id.*

**Plaintiff's Response**: **Disputed.** Plaintiff requested that the DRAC consider, among other potential accommodations, granting Plaintiff short-term leave at the DRAC Interactive Meeting. Ex.3, Pl. Affidavit at USPS 0090.

72. The purpose of the DRAC Interactive Meeting was to determine whether Plaintiff was a qualified individual with a disability who has a condition that would warrant a reasonable

accommodation and to determine whether a modification can be made to her position that would allow her to perform the essential functions of the position. Ex. 6, April 2016 DRAC Letter.

**Plaintiff's Response**: **Undisputed.**

73. During the DRAC Interactive Meeting, Plaintiff confirmed that she was unable to perform the essential functions of the job. Ex. 6; April 2016 DRAC Decision. Based on her medical restrictions, the DRAC concluded that the USPS was not able to provide any accommodation that would enable Plaintiff to perform the essential functions of a CCA. In addition, there is no quasi-sedentary work available at her grade and pay or at a lower level. *Id.* The DRAC concluded that USPS was not required to eliminate the essential functions of a CCA position and create a job for the Plaintiff that did not exist within the Postal Service. *See* Stamatelos Decl. at Ex. 26, Tenagh Bryant EEO Investigative Affidavit (Witness), dated August 1, 2016, USPS 0162-0181.

**Plaintiff's Response**: **Disputed in part.** It is **undisputed** that this is what the DRAC stated in its April 2016 letter. Plaintiff **disputes** the allegation above that she at any time during the DRAC meeting "confirmed that she was unable to perform the essential functions of the job" and further **disputes** that the USPS would have to eliminate the essential functions of a CCA position or create a job for Plaintiff that did not exist within the USPS in order to reasonably accommodate her temporary pregnancy-related condition. In addition to the accommodations cited in the DRAC report, Plaintiff also requested multiple potential accommodations that the DRAC failed to address, including: 1) temporary (3 month) Light Duty position; 2) assignment to a temporary light duty position such as an office job; 3) assignment to truck driving duty; 4) to have a lighter mail bag; or 5) short term leave. Pl. Affidavit at USPS 0090. Moreover, the potential accommodation of short-term leave was brought up independently by Ms. Livingston to Ms. Bryant, Anthony Impronto, Matthew Doxsey, and David Rudy in an email from February 23, 2016.

February 23 Email. Further, Ms. Bryant, who was chair of the DRAC committee, acknowledged in testimony that short-term leave was a viable accommodation option under the law and that Plaintiff was already on short-term unpaid leave throughout the entirety of the DRAC process. Ex.6, Bryant Tr. at 159-60.

74. The DRAC determined that with Plaintiff's limitations, she "would not be able to perform the continuous walking duties on [Plaintiff's] assigned route to deliver the mail/parcels … which are essential functions of the carrier position." Ex. 6, April 2016 DRAC Letter. The DRAC explained that it had determined that it could not identify an accommodation that would enable Plaintiff to perform pushing/pulling a carrier cart that would weigh ten pounds or less. *Id.* Ms. Bryant testified that, based on Plaintiff's physical restrictions, USPS was not able to provide any accommodation that would enable Plaintiff to perform the essential functions of the CCA position. Ex. 26, Bryant EEO Investigative Affidavit (Witness), USPS 0162-0181.

**Plaintiff's Response**: **Disputed in part.** It is **undisputed** that this is what the DRAC stated in its April 2016 letter, but Plaintiff **disputes** the DRAC's assertion that the USPS was not able to provide any accommodation that would enable Plaintiff to perform the essential functions of the CCA position. Plaintiff requested multiple potential accommodations prior to and during the DRAC process that were not addressed by the DRAC, including short-term leave. *Compare* Ex. 3, Pl. Affidavit at 0090 *with* Ex. 12, DRAC Decision.

75. The DRAC's main consideration was whether there was "anything the Postal Service can do to accommodate this employee to be able to perform the core essential functions of their job," and Plaintiff's request that she only needed the accommodation for a few "months" was not relevant. Ex. 8, Bryant Tr. at 141.

**Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that this was

the DRAC's main stated consideration, but **disputes** that the DRAC actually operated based on this statement. The DRAC failed to consider most of the potential accommodations that Plaintiff had requested, including short-term leave, and instead improperly limited its analysis to whether it could "move the relay boxes, "lighten Plaintiff's load by "splitting the mail into two parts," or give Plaintiff "quasi-sedentary work." *Compare* Ex. 3, Pl. Affidavit at 0090 *with* Ex. 12, DRAC Decision.

76. By letter dated April 14, 2016, USPS informed Plaintiff that it had denied her request for a reasonable accommodation.  Ex. 6, April 2016  DRAC Letter.

   **Plaintiff's Response**: **Undisputed.**

77. The DRAC concluded that there were "no reasonable accommodation which could be afforded to [Plaintiff] which would enable you to perform the essential functions of your City Carrier Assistant position given your present medical restrictions."  *Id*.

   **Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that this was DRAC's conclusion, but Plaintiff **disputes** the factual accuracy of this statement. Plaintiff requested multiple potential accommodations that the DRAC failed to address, including: 1) temporary (3 month) Light Duty position; 2) assignment to a temporary light duty position such as an office job; 3) assignment to truck driving duty; 4) to have a lighter mail bag; or 5) short term leave. Ex. 3, Pl. Affidavit at USPS 0090. Moreover, the potential accommodation of short-term leave was brought up independently by Ms. Livingston to Ms. Bryant, Anthony Impronto, Matthew Doxsey, and David Rudy in an email from February 23, 2016. Ex. 7, February 23 Email. Further, Ms. Bryant, who was the DRAC Chair, acknowledged in testimony that short-term leave was a viable accommodation option under the law and that Plaintiff was already on short-term unpaid leave throughout the entirety of the DRAC process. Ex. 6, Bryant Tr. at 159-60.

78. The DRAC advised Plaintiff that, "[i]n the event that your medical condition changes and you believe that you can perform the duties of your position, please submit a new request for accommodation." *Id.*

**Plaintiff's Response**: **Undisputed.**

79. The DRAC further advised Plaintiff that she had the option "to resign and reapply for the CCA position when" she believed that she could perform the duties of the position, and that she could appeal the denial within 10 business days and provide additional information in support of any request for reconsideration. *Id*. The DRAC Letter also informed Plaintiff that she had the option of filing an EEO complaint with the Postal Service within 45 days of the receipt of the letter. Ms. Bryan also provided her contact information to answer any questions Plaintiff may have had with respect to the DRAC Interactive Meeting and process. *Id.*

**Plaintiff's Response**: **Undisputed.**

**G.    USPS Terminates Plaintiff's Employment**

80. By letter dated June 2, 2016, USPS informed Plaintiff that her employment as a probationary CCA was terminated ("Termination Letter"). Pl. Tr. at 127; *see* Stamatelos Decl. at Ex. 27, June 2, 2016 Termination Letter, USPS 0352.  The Termination Letter was signed by Isaac Middleton, Supervisor, Customer Service, at Homecrest Station. *See* Stamatelos Decl. at Ex. 28, Isaac, Middleton EEO Investigative Affidavit (Witness), USPS 0148-0161.

**Plaintiff's Response**: **Undisputed.**

81. The Termination Letter explained that Plaintiff's probationary period evaluation began with her date of appointment, here February 6, 2016, and had to be completed within 90 work days or 120 days of employment with the USPS, whichever came first. Ex. 27, Termination Letter, USPS 0352.

**Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that this is the reasoning provided in the Termination Letter. Plaintiff **disputes** that this probationary employee restriction was concrete. Ms. Livingston inquired as early as February 23, 2016 as to whether Plaintiff's probationary period could be extended. Ex. 7, February 23 Email. Additionally, upon Plaintiff's first discussions with Mr. Smerling and Ms. Livingston, it was clear that Plaintiff's maternity leave *could* begin without Plaintiff's completion of her probationary period. Ex. 1, Pl. Tr. at 75; Ex. 11, Smerling Affidavit at USPS 0135. Finally, despite Plaintiff working multiple days within her probationary period, Defendants readily admit that Plaintiff was never evaluated in any way. *See* Def.'s ¶ 99, *infra*.

82. The Termination Letter noted that, beginning on March 19, 2016, Plaintiff was on off-duty status (referred to as "last day in pay status" by USPS) due to the physical limitations caused by her pregnancy as described in the medical correspondence Plaintiff presented in support of her request for light duty, or an accommodation. *See* Stamatelos Decl. at Ex. 29, USPS Notice of Personnel Action, Svetlana Shkolnikova, USPS 0386; Ex. 30, Shkolnikova Non Career Separation/Termination Require Break in Service Request, USPS 0217-0218. The letter further explained that because the DRAC could not accommodate Plaintiff's request, Plaintiff did not work sufficient hours during her probationary period for USPS to perform necessary performance evaluations during Plaintiff's probationary status. These circumstances warranted termination of her employment with the USPS. Ex. 27, Termination Letter, USPS 0352.

**Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that the Termination Letter makes these statements. Plaintiff **disputes** that she was in "off-duty status" beginning only on March 19. Ms. Livingston testified that she took Plaintiff off the work schedule entirely on February 29, 2016, and Plaintiff was sent home every day she showed up to work

between February 23, 2016 and February 29, 2016. *See* Ex. 10, Livingston Affidavit at USPS 0115; Ex. 11, Smerling Affidavit at USPS 0134-USPS 0136. Next, Plaintiff **disputes** that the DRAC could not reasonably accommodate Plaintiff's request. Instead, the DRAC improperly failed to consider all of Plaintiff's requested accommodations, including short-term leave. Ex. 3, Pl. Affidavit at USPS 0090. Finally, Plaintiff **disputes** that USPS was unable to evaluate Plaintiff at work due to the DRAC determination. Plaintiff was sent home without working on February 23, 2016, long before her reasonable accommodation requests were sent to the DRAC. *Id.* at USPS 0084. Plaintiff was not able to work between the period of February 23, 2016 and March 19, 2016, when the USPS finally acknowledged she was on "off-duty" status, solely because of her pregnancy and not because of any genuine attempt to accommodate Plaintiff's needs. *See* Ex. 3, Pl. Affidavit at USPS 0084; Cela Decl. at Ex. 14, June 2, 2016 "Termination of City Carrier Assistant Appointment During Probation" Letter ("Termination Letter").

83. Plaintiff had worked only two days on her own delivering mail, before she requested light duty. She was not on the work schedule from February 23 to March 19, 2016. She was in an off-duty status beginning March 19, 2016, and met (represented by her attorney) with the DRAC on March 28, 2016. During her probationary period, USPS was unable to perform the necessary evaluations of Plaintiff's work performance. Accordingly, her temporary appointment as a CCA was terminated. Although Plaintiff was advised that the termination was "not a reflectionon [her] capabilities and/or possible capabilities to perform the position," and she was "encourage[d]" to apply for USPS positions in the future. *Id.*, USPS 0216.  Plaintiff has not appliedto USPS since the termination of her employment as a CCA. Pl. Tr. 128-129.

        **Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that she was only scheduled to work twice delivering mail on her own, on February 20 and 22, 2016. Plaintiff

**disputes** the connection between the DRAC finding and the USPS's inability to evaluate Plaintiff during her probationary period. First, Plaintiff had multiple shifts under the supervision of Mr. Smerling and other USPS supervisors where she was able to display her proficiency in the skills required for the job. Ex.1, Pl. Tr. at 71-73, 80-82. One such shift was the "one hour" evaluation that Mr. Smerling administered after a conversation with Ms. Livingston regarding Plaintiff's reasonable accommodation request. Livingston Tr. at 43-44. After that day, however, Plaintiff was never again put on the Homecrest schedule. Notably, neither Mr. Smerling nor Ms. Livingston claim responsibility for removing Plaintiff from the work schedule between February 23, 2016 and February 29, 2016. *See* Ex. 10, Livingston Affidavit at USPS 0115; Ex.11, Smerling Affidavit at USPS 0134-USPS 0136. The USPS was "unable to perform the necessary evaluations of Plaintiff's work performance" solely because she was pregnant and not due to any legitimate effort to try and accommodate her temporary pregnancy-related condition. Plaintiff **does not dispute** that she has not applied to the USPS since the termination of her employment as a CCA.

**H.     Plaintiff Files an EEOC Complaint Following Her Termination**

84.     On June 17, 2016 Plaintiff filed a Formal Complaint with the USPS Equal Opportunity Commission ("June 2016 EEOC Complaint") through her attorney who previously worked at the same law firm which represents Plaintiff in the district court action. Pl. Tr. at 126; *See* Stamatelos Decl. at Ex. 31, June 2016 EEOC Complaint, USPS 0014-0019.

<u>**Plaintiff's Response**</u>: **Undisputed.**

85.     Plaintiff's June 2016 EEOC Complaint acknowledges that, to the DRAC, Plaintiff had only "requested a reasonable accommodation in the form of a short-term transfer to a job that did not require her to lift, push, and pull excessive weight until after she gave birth." Ex. 31, June 2016 EEOC Complaint, USPS 0017.  Plaintiff also claimed that USPS terminated her employment

"solely because of her gender-specific disability (pregnancy)." *Id.* In addition, Plaintiff alleged her three-day "retraining" at Bay Station constituted "retaliation" for her request for an accommodation. *Id.* In the June 2016 EEOC Complaint, for the first time, Plaintiff faulted USPS for failing to "retain" her and "give her hours beginning after she gave birth." *Id.* at USPS 0018.

   <u>**Plaintiff's Response**</u>: **Disputed in part.** Plaintiff **disputes** that these are the only accommodations she requested prior to the June 2016 EEO complaint. The USPS EEO Final Agency Decision acknowledges Plaintiff's testimony that she requested multiple potential accommodations, such as "a light duty assignment, such as an office job, truck driving duty, a lighter mail bag, or short-term leave, for three months until the end of her pregnancy." Cela Decl. at Ex. 15, USPS EEO Final Agency Decision ("EEO Final Agency Decision") at USPS 0324. Plaintiff **does not dispute** that, in her June 16 EEO Complaint, she asserted that "USPS terminated her employment solely because of her gender-specific disability (pregnancy)." Plaintiff **disputes** that the June 2016 EEO Complaint is the first time that Plaintiff "faulted" USPS for failing to retain Plaintiff until after her pregnancy, as she had requested, prior to the June 2016 EEO Complaint, that she be accommodated with short-term leave. Ex. 3, Pl. Affidavit at 0090.

## I.  USPS EEOC Investigates and Dismisses Plaintiff's EEOC Complaint

  86. On June 23, 2016, EEO Dispute Resolution Specialist Darrell K. Ahmed completed an EEO Dispute Resolution Specialist's (DRS) Inquiry Report. *See* Stamatelos Decl. at Ex. 32, USPS 0032-0039.

   <u>**Plaintiff's Response**</u>: **Undisputed.**

  87. Mr. Ahmed had conducted a telephonic interview on April 5, 2016, with Mr. Smerling, who denied Plaintiff's allegations of discrimination and stated that Plaintiff had provided medical documentation that she was unable to perform essential portions of her job without compromising

35

her health, which was the sole reason why Plaintiff was not provided with any work to perform. Ex. 32, USPS 0035.

**Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that this is what Mr. Smerling stated in his telephonic interview on April 5, 2016. However, Plaintiff **disputes** that Mr. Smerling's April 5, 2016 interview was an accurate representation of the facts, as it *directly contradicts Mr. Smerling's own testimony regarding his knowledge of Plaintiff's requests for reasonable accommodation*. In an affidavit submitted to the USPS EEO Investigative Unit dated August 1, 2016, Mr. Smerling states that his only interaction whatsoever with Plaintiff's request was that he knew Plaintiff "informed management that she was pregnant and had restrictions." Ex. 11, Smerling Affidavit at USPS 0134. Thereafter, Mr. Smerling states that Ms. Livingston was responsible for all communications and interactions with Plaintiff, that he was unaware that Plaintiff had made any reasonable accommodation request, that he had no knowledge of any subsequent discussions regarding attempts to accommodate Plaintiff or her abilities to perform the functions of the job, that Ms. Livingston made the decision to send Plaintiff home on February 23, 2016, and that Plaintiff was "never on the work schedule" for Homecrest. *Id.* at 0134-0137. Notably, *Ms. Livingston contradicted Mr. Smerling's testimony* by stating that she did not make the decision to send Plaintiff home on February 23, 2016 and that Plaintiff was initially on the work schedule for Homecrest that week, but that she made the decision to take Plaintiff off the work schedule starting on February 29, 2016. Ex. 10, Livingston Affidavit at 0115.

88. Mr. Ahmed had conducted a telephonic interview on April 6, 2016 with Ms. Livingston, who also denied Plaintiff's allegations of discrimination and explained that Plaintiff was unable to perform the essential functions of her position as a CCA, based on her limitations as presented in medical documentation provided by Plaintiff. Ex. 32, USPS 0035.

**Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that Ms. Livingston made this statement to Mr. Ahmed on April 6, 2016. Plaintiff **disputes** Ms. Livingston's characterization that she understood on April 6, 2016 that Plaintiff was unable to perform the essential functions of her position as a CCA based on her medical documentation. Despite making this statement to Mr. Ahmed on April 6, 2016, Ms. Livingston *contradicts herself by* repeatedly stating in an affidavit for the USPS EEO Investigative Unit prepared on August 8, 2016 that Ms. Livingston was in no way involved with making this determination as to whether Plaintiff was unable to perform the essential functions of her position as a CCA based on the medical documentation she provided beyond submitting the request to the DRAC. Ex. 10, Livingston Affidavit at USPS 0116-USPS 0118. Ms. Livingston further testified that she was not a "subject matter expert" on accommodation and did not have any input into any USPS decisions regarding whether or not Plaintiff was able to perform the essential functions of her position as a CCA. Ex. 4, Livingston Tr. at 119-21. Moreover, Ms. Livingston said she did not even have an opinion as to whether Plaintiff could or could not "do the job." *Id.* at 121-22.

89. On June 30, 2016, the USPS National EEO Investigative Services Office issued an Acceptance For Investigation of Plaintiff's June 2016 EEOC Complaint. *See* Stamatelos Ex. 33, Acceptance for Investigation, USPS 0050-0053.  The specific issues for investigation included the following: (1) "[o]n February 23, 2016, and continuing dates, you were told that there was no work available within your restrictions and you were sent home"; (2) "[o]n March 16, 2016, you were notified to report for 're-training' from March 17-19, 2016"; (3) "[i]n April 2016, you were notified that the District Reasonable Accommodation Committee (DRAC) had denied your request for Light Duty work, and; (4) "[o]n or about June 2, 2016, you were notified via letter that you had been terminated from your City Carrier Assistant (CCA) position." Ex. 33, USPS 0050.

**Plaintiff's Response**: **Undisputed.**

90. On August 31, 2016, EEO investigator Linda Ruggiero completed the EEO Investigation Report. Ex. 34, USPS EEO Investigative Summary, USPS 0057-0081.  In connection with her investigation, Ms. Ruggiero collected affidavits from Plaintiff; Ms. Livingston; Mr. Smerling; Isaac Middleton; Ms. Bryant; and Timothy Lawson. Ex. 34, USPS 0059-0060. She also collected twenty-eight exhibits.  Ex. 34, USPS 0061-0062.

**Plaintiff's Response**: **Undisputed.**

91. In Plaintiff's EEO Investigative Affidavit (Complainant), dated July 20, 2016, and submitted by her attorney, Plaintiff alleged USPS discriminated against her based on her gender (female), and retaliated against her by terminating her employment with the USPS, because Plaintiff filed "a complaint of discrimination" and participated "in the informal complaint process." *See* Stamatelos Decl. at Ex. 35, Plaintiff's  EEO Investigative Affidavit, USPS 0082-USPS 0111.

**Plaintiff's Response**: **Undisputed.**

92. In her EEO Investigative Affidavit, Plaintiff further complained that Ms. Livingston and Mr. Smerling told Plaintiff that there was "no work" for her on February 23 and 29, 2016, and both "made no attempts to engage in the interactive process with me in an attempt to find a reasonable accommodation."  Ex. 35, USPS 0086.

**Plaintiff's Response**: **Undisputed.**

93. Plaintiff claimed that ▓▓▓▓▓▓, a "CCA in Staten Island" was "accommodated for pregnancy." Ex. 35, USPS 0086.  During Plaintiff's deposition, she testified that she knew Ms. ▓▓ through one of her friends. Ex. 1, Pl. Tr. at 129-131.  During her deposition, Plaintiff testified that Ms. ▓▓▓ "was given an accommodation by driving a truck and delivering light packages." *Id.* at 132.

**Plaintiff's Response**: **Undisputed.**

94. Plaintiff alleged that she "engaged in protected activity when [she] asked for a reasonable accommodation on February 22, 2016 and because of this I was retaliated against by Livingston who took away my hours and did not attempt to accommodate me." Ex. 35, USPS 0087.

**Plaintiff's Response**: **Undisputed.**

95. In her EEO Investigative Affidavit, Plaintiff incorrectly claims that she requested "Short term leave" from the DRAC. Ex. 35, USPS 0090. The first time Plaintiff complained that USPS could have, but did not, offer short term leave was in her June 2016 EEOC Complaint. Compare Ex. 20, March 2016 Informal Complaint with Ex. 6, April 2016 DRAC Letter, and Ex. 31, June 2016 EEOC Complaint. Such an allegation does not appear in her district court Complaint. *See* Dkt. No. 1, Complaint, ¶¶ 42, 60.

**Plaintiff's Response**: **Disputed.** Plaintiff requested short term leave through the DRAC process before and/or during the meeting. Ex. 3, Pl. Affidavit at 0090. Moreover, from the very outset of Plaintiff's request for reasonable accommodation, a USPS managerial employee, Ms. Livingston, acknowledged the possibility of short-term leave as an option. Ms. Livingston explicitly asks in a February 23, 2016 email to Ms. Bryant, Mr. Doxsey, Mr. Rudy, and Postmaster Impronto if Plaintiff can "be left home till after her maternity leave." Ex. 7, February 23 Email. It is also Ms. Bryant's testimony that unpaid leave was viable accommodation option under the law and that Plaintiff was already on unpaid leave while the USPS considered her reasonable accommodation request. Ex. 6, Bryant Tr. at 159-61.

96. Plaintiff also complained that she was "notified" for "re-training" between March 17 and March 19, 2016 by Timothy Lawson, a manager at Midwood Station in Brooklyn, New York,

which Plaintiff alleged was "discriminatory" because "there was no reason for me to undergo training again." Ex. 35, USPS 0087. Plaintiff was paid during these three days of training. *Id.*, USPS 0088.

**Plaintiff's Response**: **Undisputed.**

97. In her EEO Investigative Affidavit (Witness), dated August 8, 2016, Ms. Livingston testified that she sent Plaintiff's medical documentation to the Manager of Human Resources, David Rudy and Ms. Bryant, for review and to determine if USPS could accommodate Plaintiff's request for light duty. Ex. 14, Livingston EEO Investigative Affidavit, USPS 0112- 0133. Ms. Livingston testified that there were no other carrier employees under her direction, with medical restrictions similar to Plaintiff, who were provided with light duty work. *Id.* at 0117.

**Plaintiff's Response**: **Disputed in part.** In the email, Ms. Livingston does not only reference light duty; instead, she specifically inquires as to whether Plaintiff's probationary period can be extended or if Plaintiff "can be left home" until after her maternity leave. Ex. 7, February 23 Email. Her February 23 Email was sent to Te'Nagh Bryant, Matthew Doxsey, Anthony Impronto, and David Rudy. *Id.*. Ms. Livingston's March 17 Email was sent only to Anthony Impronto, and it is Mr. Impronto who forwarded the email to David Rudy, who then forwarded the email to Ms. Bryant. *See* Ex. 9, March 17 Emails.

98. With respect to Plaintiff's allegation that she was forced to "re-train" between March 17-19, 2016, Ms. Livingston testified that Plaintiff "[w]as not scheduled for retraining" and that she "reported" to her purported "retraining" "without authorization. *Id.* USPS 0119. Mr. Smerling similarly testified that he was not aware of Plaintiff being scheduled for retraining. *See* Stamatelos Decl. at Ex. 36, Smerling EEO Investigative Affidavit (Witness), dated August 1, 2016, USPS 0134-0147. And Mr. Lawson testified that since November 2011, he had no managerial

involvement in daily operations for Brooklyn USPS stations, had never met Plaintiff and did not make any managerial decisions regarding her employment with USPS. *See* Stamatelos Decl. at Ex. 37, Timothy Lawson EEO Investigative Affidavit (Witness), dated July 25, 2016, USPS 0181-0195.

      <u>**Plaintiff's Response**</u>: **Disputed in part.** Plaintiff **does not dispute** that Ms. Livingston testified that Plaintiff was not scheduled for retraining and that Mr. Smerling testified that he was not aware of Plaintiff being scheduled for retraining. Plaintiff does **dispute** the assertions made by Ms. Livingston, Mr. Smerling, and Mr. Lawson, as Plaintiff has repeatedly testified that Mr. Lawson called Plaintiff soon after Plaintiff made her March 10 complaint with the USPS EEO and instructed her that Ms. Livingston requested that she report for retraining at Bay Station. *See* Ex.1, Pl. Tr. at 120-21; Ex.3, Plaintiff Affidavit at USPS 0087- 0088.

      99. Ms. Livingston and Mr. Smerling both testified that Plaintiff's performance was not evaluated at 30, 60, or 80-day intervals because Plaintiff did not work during her probationary period. Ex. 14, USPS 0125; Ex. 36, USPS 0134-0147.

      <u>**Plaintiff's Response**</u>: **Disputed.** Plaintiff *did* work during her probationary period. Plaintiff's probationary period began on February 6, 2016, Plaintiff's official date of hire. *See* Ex. 14, Termination Letter. On February 16, Plaintiff reported to Homecrest Station, where her supervisor Mr. Smerling "put [her] to work" helping out with sorting out mail for four hours. Ex.1, Pl. Tr. at 72, 145. Mr. Smerling supervised Plaintiff's work and Ms. Livingston met Plaintiff on that day. *Id.* at 72-73, 75. Plaintiff was then directed by Ms. Livingston to report to Bay Station between February 17-19, 2016. *Id.* at 78. Between February 17-19, Plaintiff reported to Bay Station, where she spent February 17, 2016 learning how to properly prepare mail for delivery and February 18-19, 2016 going on two mail routes to deliver mail accompanied by one other CCA.

*Id.* at 80-81. On February 20, 2016, Plaintiff reported back to Homecrest, as instructed, where she was assigned to prepare and complete a mail route. *Id.* at 95. Plaintiff clocked in at Homecrest at 8:30 AM and clocked out at 6 PM on February 20, 2016. Cela Decl. at Ex. 16, Svetlana Shkolnikova Time Sheets ("Pl. Time Sheets") at USPS 0369. On February 22, 2016, Mr. Smerling again assigned Plaintiff a full mail route to prepare and complete. Ex.1, Pl. Tr. at 96-97. Plaintiff clocked at 7:30 AM and clocked out after 6:00 PM on February 22, 2016. Ex. 16, Pl. Time Sheets at USPS 0369. The day that Plaintiff first presented a letter requesting reasonable accommodation, February 22, 2016, Ms. Livingston testified that she spoke with Mr. Smerling and instructed him to give Plaintiff "minimum, a minimum of an hour" of work specifically to test Plaintiff's proficiency in the tasks she had learned through training. Ex. 4, Livingston Tr. at 43-44. Ms. Livingston stated that Plaintiff, as a probationary employee, would be evaluated on her "attendance," "attitude, her ability to get along with others, follow instructions, her ability to understand and perform tasks that were shown and taught to her" as well as "her ability to case, pull down and timely deliver" and her ability to "show improvement" and "follow rules and regulations." *Id.* at 39. Despite completing many tasks over multiple days that, by Ms. Livingston's definition, were pertinent for evaluation purposes, Defendant chose not to evaluate the Plaintiff for purposes of keeping her employed.

100.     Ms. Bryant testified that she served as the DRAC Chairperson and that Ms. Livingston had referred Plaintiff to the DRAC because of Plaintiff's request for a modification of her job duties as a CCA.  Ex. 26, Bryant EEO Investigative Affidavit (Witness), USPS 0162-0181. Ms. Bryant first became aware of Plaintiff's sex and pregnancy on March 17, 2016, when she was referred to the DRAC.  *Id.*

**Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that Ms. Bryant

served as the DRAC Chairperson, nor does Plaintiff dispute that Ms. Livingston had referred Plaintiff to the DRAC. Plaintiff **disputes** that Ms. Bryant first became aware of Plaintiff's sex and pregnancy on March 17, 2016, as it is evident from the record that Ms. Livingston had emailed Ms. Bryant regarding Plaintiff's first pregnancy-related accommodation request on February 23, 2016. *See* Ex. 7, February 23 Email.

101.    On September 8, 2016, a copy of the EEO Investigative Report was sent to Plaintiff and, although Plaintiff initially requested a hearing, Plaintiff withdrew her request, and EEOC Administrative Judge William Macauley remanded Plaintiff's June 2016 Complaint to USPS for the issuance of a final agency decision due to Plaintiff's withdrawal of her request for a hearing. *See* Stamatelos Decl. at Ex. 37, EEOC Order of Dismissal, USPS 0316-0317.

**Plaintiff's Response**: **Undisputed.**

102.    At the relevant time, ████████████ served as a City Carrier Assistant at the Mariners Harbor Carrier annex in Staten Island, New York, and had no prior EEO activity. *See* Stamatelos Decl. at Ex. 38, ██████████, Notification of Personnel Action, USPS 0219-0220. Ms. ███ resigned from USPS on or about September 14, 2015 for unspecified personal reasons. *Id.* Ms. ███ did not work under Ms. Livingston's direction. Ex. 14, Livingston EEO Investigative Affidavit, USPS 0118. Ms. Bryant testified that there was no record of a DRAC referral being requested for Ms. ███ and Ms. Bryant had no knowledge as to whether a light duty accommodation was provided for Ms. ███. Ex. 26, Bryant EEO Investigative Affidavit (Witness), USPS 0171.

**Plaintiff's Response**: **Undisputed.**

103.    The USPS EEOC Final Agency Decision, dated August 14, 2018, summarized Plaintiff's allegations of discrimination based on sex (female-pregnant) and retaliation (protected

activity) as follows: (1) "[o]n February 23 and 29, 2016, [Plaintiff] was told that there was no work available within her restrictions and she was sent home"; (2) "[o]n March 16, 2016, [Plaintiff] was notified to report for 're-training' from March 17-19, 2016"; (3) "[o]n May 22, 2016, [corrected to April 14, 2016], she was notified that the District Reasonable Accommodation Committee (DRAC) had denied her request for Light Duty work"; and (4) "[o]n June 2, 2016, [Plaintiff] was notified via letter that she had been terminated from her City Carrier Assistant (CCA) position." *See* Stamatelos Decl. at Ex. 40, Final Agency Decision, USPS 0318-USPS 0338.

<u>**Plaintiff's Response**</u>: **Undisputed.**

104.    By Final Agency Decision dated August 14, 2018, and pursuant to Equal Opportunity Commission regulations at 29 C.F.R. § 1614.110, USPS EEOC concluded in a twenty-page decision that the evidence did not support a finding that the Plaintiff was subjected to the discrimination she alleged in her Formal Complaint. Ex. 40, Final Agency Decision, USPS 0318-0341. Specifically, the agency found that Plaintiff failed to establish a *prima facie* case of sex/pregnancy discrimination because she could not identify any similarly situated USPS employees who were treated more favorably. With respect to Plaintiff's allegations regarding Ms. ██████, the Final Agency Decision noted that none of Plaintiff's supervisors, or Ms. Bryant, were involved in Ms. ████'s request for light duty, and Ms. ████ worked at another location. *Id.*, USPS 0329.

<u>**Plaintiff's Response**</u>: Undisputed only as to the above being the assertions of the Final Agency Decision.

105.    The Final Agency Decision also concluded that, assuming *arguendo* Plaintiff had established a *prima facie* case of discrimination based on sex/pregnancy or retaliation, USPS had articulated a legitimate, non-discriminatory reason for both denying Plaintiff's request for a

44

reasonable accommodation and terminating her employment during her probationary period of employment. *Id.*, USPS 0330-00336.

> <u>**Plaintiff's Response**</u>: **Disputed in part.** Plaintiff **does not dispute** that the Final Agency Decision made these conclusions. Plaintiff **disputes** that the Agency's conclusions are supported by the record in this case. First, Plaintiff **disputes** that USPS articulated a legitimate, non-discriminatory reason for denying Plaintiff's request for reasonable accommodation. USPS, at best, has articulated legitimate, non-discriminatory reasons for its inability to provide one specific accommodation requested by Plaintiff. *See* Ex. 12, DRAC Decision. However, despite the Final Agency Decision acknowledging Plaintiff's testimony that she made multiple requests for accommodation including "a light duty assignment, such as an office job, truck driving duty, a lighter mail bag, or short-term leave, for three months until the end of her pregnancy," the Agency only analyzes USPS's consideration of light duty as a potential accommodation. *See* Ex. 15, Final Agency Decision. USPS has not articulated a single valid justification for its inability to provide Plaintiff any of the other suggestions made by Plaintiff throughout the DRAC process. Similarly, Plaintiff **disputes** that USPS has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment during her probationary period of employment. USPS has not justified either its failure to evaluate Plaintiff based on the work she had completed during her probationary period or its impermissible removal of Plaintiff from the Homecrest work schedule beginning on February 23, 2016, even though it did not officially consider her in "off-duty status" until March 19, 2016. *See* Counterstatement at ¶ 47; Ex. 14, Termination Letter. Both of these decisions by USPS effectively ended Plaintiff's ability to act as a probationary employee, despite her repeated attempts to continue working at Homecrest. Plaintiff would not have been subject to these discriminatory and retaliatory actions if she were not pregnant during her employment with

USPS.

106.    The Final Agency Decision noted that Plaintiff produced medical documentation dated March 7, 2016, which listed the following restrictions: (1) no lifting more than 10 pounds; walking only up to two hours continuous; (3) climbing one flight of stairs only in buildings; (3) no twisting; and (5) no pulling/pushing over 10 pounds.  *Id.* USPS 0331.

**Plaintiff's Response**: **Undisputed.**

107.    The Final Agency Decision noted that Ms. Bryant testified that, based on Plaintiff's restrictions, USPS was not able to provide any accommodation that would enable her to perform the essential functions of her CCA position and there was no quasi-sedentary work available. *Id.* USPS 0331.

**Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that the Final Agency Decision noted this testimony from Ms. Bryant. Plaintiff **disputes** that this assertion from Ms. Bryant is a complete and accurate description of the potential accommodations available to Plaintiff. In addition to "quasi-sedentary work," Plaintiff made numerous other reasonable accommodation requests including short-term leave. *See* Ex. 3, Pl. Affidavit at 0090. Ms. Bryant herself even conceded in testimony that unpaid leave was a viable accommodation option under the law and pointed out that Plaintiff was already on short-term leave while the DRAC process was ongoing. Ex. 6, Bryant Tr. at 159-60.

108.    The Final Agency Decision noted that all CCA employees undergo a probationary period during which they are evaluated on "Work Quantity, Work Quality, Dependability, Work Relations, Word Methods, and Personal Conduct within 90 days of appointment or 120 days of employment with [USPS], whichever comes first," and because management was unable to perform the necessary performance evaluations, Plaintiff's temporary appointment as a CCA was

terminated.  *Id.* USPS 0331; Ex. 8, Bryant Dep. Tr. at 80-83.

        **Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that the Final Agency Decision noted this. Plaintiff **disputes** that the reason cited for Plaintiff's termination is anything more than mere pretext for USPS's discriminatory and retaliatory acts. Plaintiff completed on-the-job training between February 16, 2016 and February 19, 2016, where she was able to demonstrate her proficiency in the job duties, her attitude on the job, and her ability to learn and correct based on management feedback. This training included completing two mail routes, each with one other CCA in the truck. Ex.1, Pl. Tr. at 82-83. Further, Plaintiff completed two individual mail routes at Homecrest on February 20, 2016 and February 22, 2016. *Id.* at 95-97. Despite performing her job duties at two different facilities for multiple USPS supervisors, Defendant chose not to evaluate her. *See* Ex. 10, Livingston Affidavit at USPS 0125. Instead, she was sent home from work the day after she presented Ms. Livingston with a doctor's note requesting a reasonable accommodation. *See* Ex. 3, Pl. Affidavit at USPS 0084; Ex. 11, Smerling Affidavit at USPS 0137. From that point forward, Plaintiff made multiple attempts to work, so she could be evaluated further during her probationary period, but she was sent home each time. *See* Ex. 3, Pl. Affidavit at 0084.

        109.    Accordingly, the Final Agency Decision concluded that, even if, arguendo, Plaintiff had established her prima facie case, USPS had articulated legitimate, non-discriminatory reasons for its inability to accommodate Plaintiff and its decision to terminate her employment during her probationary period.  Ex. 40, USPS 0333.

        **Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that the Final Agency Decision made these conclusions. Plaintiff **disputes** that the conclusions are supported by the record in this case. First, Plaintiff **disputes** that USPS articulated a legitimate, non-

discriminatory reason for denying Plaintiff's request for reasonable accommodation. USPS, at best, has articulated legitimate, non-discriminatory reasons for its inability to provide one specific accommodation requested by Plaintiff. *See* Ex. 12, DRAC Decision. However, despite the Final Agency Decision acknowledging Plaintiff's testimony that she made multiple requests for accommodation including "a light duty assignment, such as an office job, truck driving duty, a lighter mail bag, or short-term leave, for three months until the end of her pregnancy," the Agency only analyzes USPS's consideration of light duty as a potential accommodation. *See* Ex. 15, Final Agency Decision. USPS has not articulated a single valid justification for its inability to provide Plaintiff any of the other accommodations requested by Plaintiff throughout the DRAC process. Similarly, Plaintiff **disputes** that USPS has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment during her probationary period of employment. USPS has not justified either its failure to evaluate Plaintiff based on the work she had completed during her probationary period or its impermissible removal of Plaintiff from the Homecrest Station work schedule beginning on February 23, 2016, even though it did not officially consider her "off-duty status" until March 19, 2016. *See* Counterstatement at ¶ 47; Ex. 14, Termination Letter. Both of these decisions by USPS effectively ended Plaintiff's ability to act as a probationary employee, despite her repeated attempts to continue working at Homecrest. Plaintiff would not have been subject to either of these discriminatory and retaliatory actions if she were not pregnant during her employment with USPS.

110.    Lastly, the Final Agency Decision concluded that Plaintiff cannot show that USPS's stated reasons not accommodating Plaintiff's requests and terminating Plaintiff's employment were "pretext for intentional discrimination." Ex. 40, USPS 0333. First, the Final Agency Decision noted that there was no evidentiary support for Plaintiff's contention that

management instructed her to attend retraining in March 2016. *Id.* USPS 0334. Second, the record established that Plaintiff was pregnant at the time she was hired and was informed about the duties and responsibilities of the CCA position both at that time and during her three days of on-the-job training. *Id.* USPS 0335. The record further established that within a very short time of completing her training, Plaintiff presented medical documentation that contained severe restrictions on lifting and walking. *Id*.

      **Plaintiff's Response**: **Disputed in part.** Plaintiff **does not dispute** that this is what the Final Agency Decision stated, but Plaintiff disputes the justifications cited in this Decision. Plaintiff **does not dispute** that she was pregnant at the time she was hired, **nor does she dispute** that she completed on-the-job training where she was informed about the duties and responsibilities of the CCA decision. Plaintiff further **does not dispute** the temporal proximity between the completion of her training and her reasonable accommodation request. However, Plaintiff **disputes** that there was "no evidentiary support" for her assertion that Mr. Lawson told her to go in for re-training. Plaintiff testified under oath that Mr. Lawson did so, and the only contrary evidence is corresponding testimony from USPS employees. *See* Ex. 3, Pl. Affidavit at USPS 0087-0088.

111.    The Final Agency Decision concluded that no accommodation could be provided that would enable Plaintiff to perform the essential functions of her position and thus management was unable to evaluate her performance during the probationary period. Nor could Plaintiff provide any evidence of other non-pregnant employees who were treated more favorably when they required similar requests for light duty during their probationary period.  *Id.*

      **Plaintiff's Response**: **Disputed in part.** It is **undisputed** that the Final Agency Decision parrots the USPS DRAC findings outlined above. Plaintiff **disputes** that the assertions

in these decisions are factually accurate based upon the record. The Final Agency decision notes specifically that Plaintiff testified to making many different potential accommodation requests including "a light duty assignment, such as an office job, truck driving duty, a lighter mail bag, or short-term leave, for three months until the end of her pregnancy," and yet it makes no mention of the fact that the DRAC did not at all analyze the possibility of all but one of these potential accommodations. *See* Ex. 15, Final Agency Decision. Moreover, Plaintiff brought forward evidence of another pregnant employee, Ms. ███, who was a CCA accommodated with light duty while pregnant at a different USPS facility, thus showing that pregnancy accommodations were possible at other facilities. Ex.1, Pl. Tr. at 129-32.

**J.     Rather than Reapply for a Position with USPS Following the Birth of Her Second Child in mid-2016, Plaintiff Returned to School and Secured Work as a Teacher**

112. In late 2016, after giving birth to her second child, Plaintiff worked for Gregory Shifrin, M.D., as a full-time employee earning $13.00 an hour until approximately August 2017. Pl. Tr. at 34-35. Plaintiff estimated that she started working for Dr. Shifrin "a couple of days before Christmas" although her tax records indicate that she earned $854.00 from her employment with Dr. Shifrin. Ex. 1, Pl. Tr. at 37.

**Plaintiff's Response**: **Undisputed.**

113. In 2017, Plaintiff graduated from LaGuardia Community College in Queens, New York, where she was a full-time student in Fall 2016, and during all of 2015. Pl. Tr. at 17. Plaintiff began her education at LaGuardia Community College in 2013. Pl. Tr. at 17; 9.

**Plaintiff's Response**: **Undisputed.**

114. From LaGuardia Community College, Plaintiff earned a Childhood Education Associate Degree. Pl. Tr. at 19; 24.

**Plaintiff's Response**: **Undisputed.**

115. In 2018 through February 2019, Plaintiff worked part-time for an after-school program for at least four hours a day earning approximately $15.00 an hour. Pl. Tr. at 23; 25. Beginning in approximately March 2019, Plaintiff worked as a full-time substitute teacher in a private school earning approximately $18.00 dollars an hour. Pl. Tr. at 21; 22.

**Plaintiff's Response**: **Undisputed.**

116. Plaintiff is currently a full-time student at Queens College, New York, pursuing her Bachelor's of Arts Degree. Pl. Tr. at 15. She first enrolled at Queens College in spring 2019 as a part-time student and expects to complete her Bachelor's of Arts Degree by December 2021. *Id.* at 16; 19. Plaintiff is pursuing a degree in childhood education.

**Plaintiff's Response**: **Undisputed** as to the this being Plaintiff's testimony at the time of her deposition.

**End.**

---

## PLAINTIFF'S RULE 56.1 COUNTERSTATEMENT OF MATERIAL FACTS

### I. PLAINTIFF'S BACKGROUND INFORMATION

1. Plaintiff and her husband have three children. Ex. 1, Pl. Tr. at 13-14.

2. Plaintiff received an Associate's Degree in childhood education from LaGuardia Community College in 2017. *Id.* at 19.

3. At the time of her deposition, Plaintiff was a full-time student at Queens College pursuing a Bachelor's Degree in childhood education. *Id.* at 19-20.

### II. PLAINTIFF'S HIRING AND TRAINING AS A CITY CARRIER ASSISTANT

4. In or around early 2016, Plaintiff submitted an online application for a City Carrier Assistant (hereinafter "CCA") position with the United States Postal Service (hereinafter "USPS")

with the assistance of her husband. *Id.* at 45-46.

5. Plaintiff knew she was pregnant when she submitted her CCA application. *Id.* at 65.

6. After taking an online exam forwarded to her when she submitted the application, Plaintiff attended an in-person interview on or about January 7, 2016 for the CCA position. *Id.* at 49, 51, 57.

7. Plaintiff was approximately twenty weeks pregnant, and her pregnancy was visible, during her in-person interview. *Id.* at 68; Ex.3, Pl. Affidavit at USPS 0084.

8. Plaintiff's first day of employment as a CCA for USPS was February 6, 2016. *See* Ex. 14, Termination Letter.

9. February 6, 2016 was also the day that Plaintiff's probationary period as an employee officially began. *Id*.

10. Plaintiff attended a full-day orientation on February 8, 2016. Ex. 1, Pl. Tr. at 61.

11. Beginning with the February 8, 2016 orientation, Plaintiff attended a full week of group training where she watched videos and listened to lectures regarding CCA job responsibilities. *Id.* at 63-64.

12. After completing her initial training, Plaintiff was assigned to report to Homecrest starting February 16, 2016. *Id.* at 70.

13. On February 16, 2016, Plaintiff met her supervisor, Mr. Smerling. *Id.* at 71.

14. That day, Mr. Smerling assigned Plaintiff to help with sorting out mail for approximately 4 hours from 8:00 AM until 12:00 PM. *Id.* at 72, 145.

15. Plaintiff was approximately twenty-five weeks pregnant and her pregnancy was visible when she had her first shift at Homecrest Station on February 16, 2016. Homecrest Station supervisor Isaac Middleton testified that he was aware of Plaintiff's pregnancy because "she had

a big belly." Ex.1, Pl. Tr. at 75; Cela Decl. at Ex. 17, Isaac Middleton EEO Investigative Affidavit ("Middleton Affidavit") at USPS 0149.

16. Plaintiff also met Adele Livingston, Area Manager, on February 16, 2016. Ms. Livingston gave Plaintiff the address of the three-day training location and asked Plaintiff outright if she was pregnant. Ex.1, Pl. Tr. at 75.

17. Plaintiff had to go to Bay Station for her three-day training because Homecrest was insufficiently staffed to accommodate the training of new employees. See Ex. 4, Livingston Tr. at 37; Ex.11, Smerling Affidavit at USPS 0138.

18. Plaintiff went to Bay Station as instructed by Ms. Livingston and completed her three-day training from February 17 to19, 2016. Ex.1, Pl. Tr. at 78-80.

19. On February 18, 2016 and February 19, 2016, Plaintiff worked full days and successfully delivered mail on a full route accompanied by one other CCA each day. *Id.* at 81-83.

20. After Plaintiff's training at Bay Station was complete, she returned to Homecrest to continue her employment as a CCA. *Id.* at 69.

21. On February 20, 2016 and February 22, 2016, Plaintiff went to Homecrest, as scheduled, and worked full days where she was able to prepare and complete full mail routes on her own. Ex. 1, Pl. Tr. at 93-96; Ex. 16, Pl. Time Sheets.

22. On at least one of the occasions when Plaintiff completed her own mail route, Mr. Smerling was the manager who was supervising her. Exhibit1, Pl. Tr. at 96.

### III. Plaintiff's Multiple Requests for Accommodation of Her Temporary Pregnancy-Related Condition and Defendant's Retaliatory Responses to Plaintiff's Protected Activity

#### A. USPS's Reasonable Accommodation Policies

23. USPS's Reasonable Accommodation Handbook indicates that an employee is permitted to make a request for accommodation "to his or her supervisor or manager or the

Manager, Human Resources (District)." Ex. 5, Reasonable Accommodation Handbook at USPS 0288. The Reasonable Accommodation Handbook was in use while Plaintiff was employed by USPS. *See* Ex. 6, Bryant Tr. at 92-93.

24. USPS's Reasonable Accommodation Handbook also indicates that, once a USPS employee receives a reasonable accommodation request, the employee "must process the request promptly" and "engage the requestor in an informal dialogue" regarding the details surrounding the accommodation. Ex.5, Reasonable Accommodation Handbook at USPS 0288.

25. It is the responsibility of the proper recipient of a reasonable accommodation request to engage in an "informal dialogue with the individual seeking accommodation" throughout the process of determining whether reasonable accommodation is possible. *Id.* at USPS 0290.

26. The USPS reasonable accommodation handbook instructs the recipient of a reasonable accommodation request to be an active participant in identifying potential accommodations for the requestor. *Id.* at USPS 0294. It recommends consulting "a number of people" including the requestor, "operations, safety, and/or medical personnel, as appropriate" to formulate a list of potential accommodations. *Id.* It goes on to state, "you may offer alternative suggestions for reasonable accommodations and discuss their effectiveness in removing the workplace barrier that is impeding the individual." *Id.*

27. An employee who receives a request for reasonable accommodation can refer the request to DRAC when "one or more of the following is true: you are not certain if the impairment rises to the level of a disability under the Rehabilitation Act; you have questions concerning the reasonableness of the accommodation requested and whether it poses an undue hardship; you need help finding a way to accommodate the individual; you believe the request for accommodation should be denied; you are considering separating the employee for inability to perform the

functions of his or her position." *Id.* at 289.

28. Ms. Bryant, chairperson of the DRAC, testified that the appropriate time for a manager to refer a light duty accommodation request to DRAC is after the manager determines he or she is unable to grant the request. *Id.*; Ex. 6, Bryant Tr. at 52.67

**B. Plaintiff's Initial Reasonable Accommodation Request and the Inadequate USPS Management Response**

29. Plaintiff attended a regularly scheduled doctor's appointment with her OB-GYN, Dr. Stromer, on February 18, 2016. Ex.1, Pl. Tr. at 83.

30. After examining Plaintiff and discussing her new CCA role with her, Dr. Stromer provided Plaintiff with a note requesting reasonable accommodation of "restricted duty, very light work" ("February 18 Note") for temporary, pregnancy-related condition to be presented to Plaintiff's USPS supervisors. *Id.* at 85; Cela Decl. at Ex. 18, February 18 Note.

31. It is Plaintiff's understanding that Dr. Stromer made this recommendation in an abundance of caution due to serious, life-threatening complications Plaintiff had in her first pregnancy. Ex.1, Pl. Tr. at 85.

32. On February 22, 2016, Plaintiff presented the February 18 Note to Ms. Livingston, who rejected the note as "vague." Ex. 4, Livingston Tr. at 42.

33. Ms. Livingston understood the February 18 Note to be a request for light duty. *Id.* at 41-42.

34. Ms. Livingston testified that she did not at any time ask Plaintiff to get another doctor's note after rejecting a doctor's note for being insufficient. *Id.* at 46. Instead, Ms. Livingston testified that she used her meetings regarding the doctor's notes with Plaintiff to give Plaintiff an overview of the physical requirements of the CCA job "so that she could do as she chose with it." *Id.*

35. Ms. Livingston testified that it was not "within [her] right" to request an additional

doctor's note from Plaintiff. *Id.* at 71.

36. Ms. Livingston stated that she did not have the authority to grant or deny a request for reasonable accommodation due to "postal rules and regulations" and that she was trained to forward all requests to the human resources manager "for them to do whatever it is that they do." *Id.* at 21-22.

37. After receiving Plaintiff's February 18 Note on February 22, 2016, Ms. Livingston instructed Mr. Smerling to give Plaintiff "minimum, a minimum of an hour" of work according to protocol so that he could evaluate her proficiency in CCA duties and responsibilities. *Id.* at 43.

38. On February 22, 2016, Plaintiff completed a full route on her own and was clocked in at Homecrest from 7:30 AM until after 6:00 PM on that day. Ex.1, Pl. Tr. at 97; Ex. 16, Pl. Time Sheets at USPS 0369.

39. On February 23, 2016, Ms. Livingston emailed the February 18 Note to Te'Nagh Bryant, USPS's Head of Labor Relations and Chair of its District Reasonable Accommodation Committee; Anthony Impronto, the Postmaster of Brooklyn; Matthew Doxsey, Manager of Health and Resource Management; and David Rudy, Human Resources Manager. Ex. 7, February 23 Email.

40. In the email, Ms. Livingston indicated that she felt the note was "not satisfactory," asked what her "recourse" was with regards to the requesting employee because she "was told before the rules are different for pregnant employees," and finally asked if it was possible for Plaintiff's probationary period to be extended and if she could be placed on short-term leave until after her maternity leave. *Id*.

### C. Immediate Retaliation by USPS Management Employees Against Plaintiff for Engaging in Protected Activity

41. The day after presenting Ms. Livingston her February 18 Note requesting a reasonable

accommodation for her temporary, pregnancy-related condition, Plaintiff went to Homecrest as scheduled for work but was told by Mr. Smerling to go home because there was "no work" for her. Ex. 3, Pl. Affidavit at USPS 0084.

42. Neither Mr. Smerling nor Ms. Livingston admit to making the decision to send Plaintiff home on February 23, 2016, nor do they admit to keeping her off the schedule between February 23, 2016 and February 29, 2016. *Compare* Ex. 4, Livingston Tr. at 125-27 *with* Ex. 11, Smerling Affidavit at USPS 0134.

43. Ms. Livingston specifically stated that she did not direct anyone at Homecrest to take Plaintiff off the schedule until February 29, 2016 and that only Mr. Smerling and Mr. Middleton were responsible for scheduling at the Homecrest Station. Ex. 4, Livingston Tr. at 48, 125-27.

44. Ms. Livingston recalled that Plaintiff was on the Homecrest work schedule for around thirty days prior to Plaintiff's removal from the schedule despite her acknowledgement that she met Plaintiff on her first day working at Homecrest, which was February 16, 2016, and admission that she removed Plaintiff from the work schedule on February 29, 2016. *See* Ex. 4, Livingston Tr. at 38, 128; Ex. 10, Livingston Affidavit at USPS 0115.

45. Mr. Smerling indicates that Ms. Livingston instructed him to send Plaintiff home on February 23, 2016 and that Ms. Livingston was responsible for all interactions with Plaintiff after that day. Ex. 11, Smerling Affidavit at USPS 0134.

46. Additionally, Mr. Smerling did not believe Plaintiff was ever on the work schedule at Homecrest. *Id.* at USPS 0136.

47. Plaintiff was not allowed to work at Homecrest from February 23, 2016 until her termination on June 2, 2016. *See* Ex. 3, Pl. Affidavit at 0084; Ex. 14, Termination Letter.

### D.  Plaintiff's Subsequent Requests for Reasonable Accommodation

48. On February 24, 2016, Plaintiff received a second note from Dr. Stromer stating that Plaintiff could "only lift up to 10 pounds and only push and pull up to 30. She can only do limited stairs usage and limited bending" ("February 24 Note"). Cela Decl. at Ex. 19, February 24 Note.

49. After receiving the February 24 Note, Plaintiff brought it to Homecrest and presented it to Ms. Livingston. Ex.1, Pl. Tr. at 101.

50. Ms. Livingston again rejected the note and told Plaintiff that it was "not specific enough." Ex. 4, Livingston Tr. at 45.

51. Ms. Livingston then typed up a letter in Plaintiff's presence containing a list of activities including lifting, sitting, standing, walking, climbing, kneeling, bending, stooping, twisting, pulling, pushing, and driving a 2-ton postal truck to present to Plaintiff's doctor for his consideration. Ex.1, Pl. Tr. at 106-07; Cela Decl. at Ex. 8, February 29 Note.

52. On February 29, 2016, Plaintiff presented Dr. Stromer with the list typed by Ms. Livingston and he indicated whether and to what extent Plaintiff could participate in each activity by marking the letter accordingly. Ex.1, Pl. Tr. at 107; Ex. 8, February 29 Note.

53. The February 29 Note indicated that Plaintiff could lift, push, and pull up to ten pounds; walk for up to two hours; climb up one flight of stairs; and drive a two-ton postal truck, kneel, bend, stoop, sit, and stand without restriction. The February 29 Note only outright removes twisting from Plaintiff's capabilities. Ex. 8, February 29 Note.

54. After receiving the February 29 Note, Ms. Livingston made the decision to remove Plaintiff from the Homecrest work schedule without discussing her reasoning with Plaintiff. Ex.1, Pl. Tr. 109-10; Ex. 10, Livingston Affidavit at USPS 0115.

55. Despite Dr. Stromer responding to each activity listed by Ms. Livingston, Ms.

Livingston again declared the letter was insufficient because it was not "descriptive enough." Ex. 10, Livingston Tr. at 68.

56. Plaintiff went back to Dr. Stromer yet again to request a more detailed letter, but Dr. Stromer instructed Plaintiff to go to her primary care physician instead. Ex.1, Pl. Tr. at 110-11.

57. Plaintiff visited her primary physician's office on March 7, 2016. *Id.* at 111.

58. The physician's assistant at Plaintiff's primary care office, Semyon Elyash, examined Plaintiff for approximately 20-30 minutes and then typed up a letter describing Plaintiff's restrictions that was signed by Plaintiff's primary care physician, Dr. Fayngersh. ("March 7 Note"). *Id.* at 111-12; Ex. 13, March 7 Note.

59. Plaintiff attempted to deliver the March 7 Note to Ms. Livingston in person, but Plaintiff was told that Ms. Livingston was not present at Homecrest on that day. Ex.1, Pl. Tr. at 114.

60. In addition to attempting to deliver the March 7 Note to Ms. Livingston at Homecrest, Plaintiff went to three different stations that Plaintiff knew Ms. Livingston managed to try and deliver the letter to her directly, but Plaintiff was unable to locate Ms. Livingston. *Id.*

61. Because Ms. Livingston was unavailable, Plaintiff gave the March 7 Note to Mr. Smerling so he could provide it to Ms. Livingston. *Id.*

**E. USPS's Delayed Decision to Send Plaintiff's Request to DRAC While Plaintiff Remained off the Homecrest Work Schedule**

62. Ms. Livingston testified that she submitted Plaintiff's March 7 Note to David Rudy, USPS Manager of Human Resources. Ex. 4, Livingston Tr. at 77.

63. Livingston emailed Postmaster Anthony Impronto on March 17, 2016 that she had sent him medical documentation regarding Plaintiff's request "last week." Ex. 9, March 17 Emails.

64. There is no indication on the record that Mr. Rudy was contacted regarding Plaintiff's

March 7, 2016 note until Mr. Impronto forwards Ms. Livingston's March 17, 2016 email to Mr. Rudy and asks "Can we set this up for a DRAC??" *Id*.

65. Mr. Rudy then acknowledges that a DRAC must be held "ASAP" for Plaintiff because Ms. Livingston pointed out via email that Plaintiff was "presently @ 7 1/2 months pregnant and forwards the email to Ms. Bryant. *Id*. It is only after this email that, on March 24, 2016, Ms. Bryant sent Ms. Livingston the Essential Functions Worksheet required to process a DRAC claim. *See* Cela Decl. at Ex. 35, Email Chain Between Te'Nagh Bryant, Anthony Impronto, and Adela Livingston Regarding the Essential Functions Worksheet ("Essential Functions Worksheet Email"); Ex. 6, Bryant Tr. at 30-31.

66. Ms. Livingston never communicated with the Plaintiff about why she cut Plaintiff's hours entirely after February 29, 2016. Ex.1, Pl. Tr. at 109-10.

67. By her own admission, Ms. Livingston never engaged in any interactive process with the Plaintiff to try and determine whether USPS could accommodate her temporary, pregnancy-related condition. Ex. 10, Livingston Affidavit at USPS 0116.

68. Ms. Livingston instead indicates that she merely submitted Plaintiff's request to Human Resources and "did not have any input regarding the decision." *Id.*

69. Ms. Livingston also testified that she submitted Plaintiff's reasonable accommodation request to the DRAC because no one responded to the question in Ms. Livingston's February 23, 2016 email as to whether Ms. Livingston would be able to grant Plaintiff short-term leave until after her maternity leave. Ex. 4, Livingston Tr. at 87.

70. Even though Plaintiff was not given any work hours since February 22, 2016, USPS did not consider her on "off-duty" status until March 19, 2016. See Ex. 3, Pl. Affidavit at 0087; Ex. 14, Termination Letter.

## IV. PLAINTIFF'S MARCH 10 COMPLAINT TO THE USPS EEO AND USPS'S SUBSEQUENT RETALIATION FOR PLAINTIFF'S PROTECTED ACTIVITY

71. Due to USPS's treatment of Plaintiff between February 16, 2016 and March 7, 2016, Plaintiff filed a complaint with the USPS EEO office on March 10, 2016. Cela Decl. at Ex. 20, Information for Pre-Complaint Counseling Form ("March 10 Complaint").

72. In the March 10 Complaint, Plaintiff describes being told to stay home multiple times and that there was no work for her at Homecrest soon after presenting her note from Dr. Stromer to Ms. Livingston for the first time on February 22, 2016. *Id.* at 0036.

73. Plaintiff's requested resolution in the March 10 Complaint was to be given work hours again and for her temporary, pregnancy-related condition to be reasonably accommodated. *Id.* at USPS 0037.

74. In the March 10 Complaint, Plaintiff also requests that she be transferred "to another station or district that does not have any issues handling [her]." *Id.* at USPS 0037.

75. Shortly after Plaintiff submitted her March 10 Complaint, she received a call from Timothy Lawson, another USPS supervisor, stating that Ms. Livingston had requested that Plaintiff receive additional training at Bay Station. Ex.1, Pl. Tr. at 121.

76. Plaintiff went to re-training as instructed between March 17, 2016 and March 19, 2016. Ex. 3, Pl. Affidavit at 0087-0088; Ex. 16, Pl. Time Sheets at USPS 0372-0373.

77. Plaintiff clocked in and out at Bay Station on March 17, March 18, and March 19 without intervention. Ex. 16, Pl. Time Sheets at USPS 0372-0373.

78. Plaintiff was trained by a USPS employee named Toya. Ex. 3, Pl. Affidavit at USPS 0088.

79. During the second 3-day training, Plaintiff did not learn any new information and was merely re-taught what she had already learned in her initial training. *Id.*

61

80. Plaintiff testified that she did not know of any other USPS employees who were required to report for re-training. *Id*.

81. On June 6, 2016, Plaintiff received a letter through her attorney from USPS EEO ADR Specialist Darrell Ahmed indicating that he had concluded "processing" Plaintiff's claim of discrimination. Cela Decl. at Ex. 21, June 3, 2016 Letter from Darrell K. Ahmed, USPS EEO ADR Specialist ("EEOC ADR Letter").

82. In the EEO ADR Letter, Mr. Ahmed indicates that he conducted an inquiry into Plaintiff's claim. *Id*. He summarizes that both Mr. Smerling and Ms. Livingston indicated that they denied Plaintiff's allegations and he "would not grant [Plaintiff's] requested resolution." *Id.*

83. Mr. Ahmed then invites Plaintiff to file a formal complaint with the USPS EEO office. *Id*.

## V. DEFENDANT'S INADEQUATE DRAC INVESTIGATION AND INTERACTIVE MEETING

84. The USPS DRAC process is not ordinarily activated until management determines locally that it cannot provide an employee with a requested reasonable accommodation. *See* Ex. 6, Bryant Tr. at 52.

85. The USPS reasonable accommodation handbook indicates that "the RAC meets with an individual to: (1) Review medical information. (2) Discuss and evaluate limitations to major life activities. (3) Discuss essential functions of the position in question and explore whether and how the individual can perform those functions without posing a direct threat. (4) *Elicit input regarding potential accommodations*, including alternatives such as reassignment (where necessary and available and appropriate)." (emphasis added). Ex. 5, Reasonable Accommodation Handbook at USPS 0296.

86. At no point in the USPS reasonable accommodation handbook does it state that the

RAC is limited to analyzing only the reasonable accommodations specifically requested by the employee. *See* Ex.5, *Reasonable Accommodation Handbook*. Instead, the RAC is supposed to make a finding as to whether any accommodation would have the desired aims. *Id.* at USPS 0296.

87. Ms. Bryant stated that the DRAC is able to consider multiple reasonable accommodations that could mean "where we change cases, we change the way that employee does business, we change the way that the Postal Service or what the Postal Service can provide for that employee to help them do the core essential functions of that job." Ex.6, Bryant Tr. at 53. Ms. Bryant stated specifically that the reasonable accommodations considered by the DRAC can be more "in-depth" than light duty. *Id.* at 53-54.

88. Plaintiff's DRAC Interactive Meeting took place on March 28, 2016. Ex. 12, DRAC Decision.

89. Plaintiff was present at the DRAC Interactive Meeting and accompanied by her attorney. *Id.*

90. USPS employees Te'Nagh Bryant, who was Chairperson of the DRAC, Pamela Harris, Irene Fanelli, Matt Doxsey, Joy Zerna, Jeanette Brooks, Adela Livingston, Donald Spector, and Edwin Sanchez presided over the DRAC meeting. *Id.*

91. Postmaster Anthony Impronto assigned Ms. Livingston to attend Plaintiff's DRAC meeting as his representative because Ms. Livingston was "knowledgeable of the operations" at Homecrest and could advise DRAC on those conditions during the meeting. Ex. 6, Bryant Tr. at 185; Cela Decl. at Ex. 22, March 23, 2016 Email Chain Between Tenagh Bryant, Anthony Impronto, and Adela Livingston ("March 23 Emails")

92. During the DRAC Interactive Meeting process, Plaintiff requested potential accommodations including: 1) temporary (3 month) Light Duty position; 2) assignment to a

temporary light duty position such as an office job; 3) assignment to truck driving duty; 4) to have a lighter mail bag; or 5) short term leave. Ex. 3, Pl. Affidavit at USPS 0090.

93. Despite Plaintiff's multiple suggestions, the DRAC only considered whether USPS would be able to "move the relay boxes," "lighten the load that [Plaintiff] deliver[s] by splitting the mail into 2 parts," or provide Plaintiff with "quasi-sedentary work." Ex. 12, DRAC Decision. The DRAC Decision acknowledges that these are only "some" of the accommodations Plaintiff requested, but the decision does not discuss any of the other requested accommodations. *Id*.

94. The DRAC Decision then concludes that "everyone participating in the DRAC meeting" concurred that no reasonable accommodation could be made for Plaintiff and that Plaintiff should either apply for a different position within USPS, resign her CCA position and re-apply after her pregnancy, or submit revised restrictions if her medical restrictions change. *Id*.

95. Although Ms. Livingston was present at the DRAC meeting and participated as a representative of Postmaster Anthony Impronto due to her knowledge of Homecrest operations, she testified that she "did not participate" in the meeting, that she "did not have any input on the decision," and "had no opinion" as to whether Plaintiff could or could not perform her job duties and responsibilities with any proposed limitations. Ex. 4, Livingston Tr. at 77, 118-19; Ex. 6, Bryant Tr. at 184.

## VI. DEFENDANT'S DISCRIMINATORY TERMINATION OF PLAINTIFF

### A. Defendant's Termination Letter Outlining the Merely Pretextual Reasons for Plaintiff's Termination

96. Despite receiving her DRAC Decision outlining USPS's position that Plaintiff was incapable of performing her job as a CCA due to her temporary, pregnancy-related condition; would not be granted any reasonable accommodation for her temporary, pregnancy-related condition; and inviting her to resign her position and re-apply at a later date, Plaintiff was not sent

a termination letter from USPS until June 2, 2016. *See* Ex. 12, DRAC Decision; Ex. 14, Termination Letter.

97. The Termination Letter indicated that Plaintiff was terminated because she was "unable to work during [her] probationary period since March 19, 2016" because the DRAC concluded that Plaintiff would not be granted a reasonable accommodation for her temporary, pregnancy-related condition. The Termination Letter indicates that termination was necessary due to management being unable to evaluate Plaintiff beginning March 19, 2016. Ex. 14, Termination Letter.

98. The termination letter makes no mention of Plaintiff's on-the-job performance from February 16, 2016 to February 22, 2016. *Id*.

99. Likewise, the termination letter is silent on the period between February 23, 2019 to March 18, 2019, when Plaintiff was removed from the Homecrest work schedule but was not yet considered by USPS to be in "off-duty" status. *Id*.

100. Plaintiff gave birth to her second child the same day she received the Termination Letter. Ex.1, Pl. Tr. at 69.

101. During the time that Plaintiff was not working but still employed by USPS, Ms. Bryant acknowledged that Plaintiff was technically on unpaid leave. Ex. 6, Bryant Tr. at 161.

**B. Notably, No USPS Employee Has Taken Responsibility for the Decision to Terminate Plaintiff.**

102. Ms. Livingston states she did not make the decision to terminate Plaintiff's employment.  Ex. 4, Livingston Tr. at 128. She testified that she was unaware of who made the decision to terminate Plaintiff but that she knew the termination letter was drafted by labor relations. *Id.* at 129, 132.

103. Ms. Livingston also explained that station managers who had the opportunity to

supervise employees directly would typically make the decision to terminate, which she would then have an opportunity to "concur or not concur" with. Ex. 4, Livingston Tr. at 129-31. Ms. Livingston testified that the station managers responsible for Homecrest were Mr. Smerling and Mr. Middleton. *Id.* at 48.

104. Ms. Bryant, Chair of the DRAC, testified that it was Ms. Livingston's decision to terminate Plaintiff and that she assisted in drafting the termination letter. Ex. 6, Bryant Tr. at 205; Cela Decl. at Ex. 23, Te'Nagh Bryant EEO Investigative Affidavit ("Bryant Affidavit") at USPS 0173. Ms. Bryant also affirmed that she did not authorize Plaintiff's termination and was only involved in the process to "advise" management on its labor and contractual obligations. *Id.* at 204-05.

105. Ms. Bryant sent Ms. Livingston a draft of Plaintiff's termination letter with Ms. Bryant's edits and corrections on June 2, 2016. Cela Decl. at Ex. 24, Email from Te'Nagh Bryant to Adela Livingston Containing the Draft Termination Letter ("Draft Termination Letter Email"). The draft was marked for Ms. Livingston's signature, and Ms. Bryant's email indicates that it would have been appropriate for Ms. Livingston to sign the letter, but the final document was instead signed by Mr. Middleton. *Compare* Ex. 24, Draft Termination Letter Email *with* Ex. 14, Termination Letter.

106. Mr. Smerling, Plaintiff's direct supervisor, testified that he did not know who made the decision to terminate Plaintiff, that he did not know why Plaintiff was terminated, and that he did not know what factors and documentation were considered when the decision was made to terminate Plaintiff. Ex. 11, Smerling Affidavit at USPS 140. In an email to EEO ADR Specialist Darrell Ahmed dated June 21, 2016, Mr. Smerling indicates that he "was not involved with this employee in any way shape or form" and that Ms. Livingston would be the person to contact for

more information regarding Plaintiff's termination. Cela Decl. at Ex. 25, June 21, 2016 Email from Steven Smerling to Darrell K. Ahmed ("June 21 Email").

107. Mr. Middleton, a different supervisor at Homecrest Station who signed Plaintiff's termination letter, testified that he had no input into the decision to terminate Plaintiff and was merely instructed to sign the termination letter by Ms. Livingston. Ex. 17, Middleton Affidavit at USPS 0153-0154.

## VII.   DEFENDANT'S INADEQUATE EEO INVESTIGATION AND FINAL AGENCY DECISION

### A.   USPS's EEO Investigation

108. On June 6, 2016, Plaintiff received a letter from USPS ADR Specialist Darrell Ahmed concluding Plaintiff's March 10 Complaint process and indicating that she had the right to file a formal EEO complaint within 15 days of the date of receipt. Ex. 21, EEOC ADR Letter.

109. On June 17, 2016, Plaintiff, by and through her attorneys, filed a Formal Complaint with the USPS Equal Employment Opportunity Commission. Cela Decl. at Ex. 26, Plaintiff's Formal USPS EEO Complaint ("June 17 Complaint").

110. On June 30, 2016, USPS EEO issued an "Acceptance for Investigation" letter as acknowledgement of Plaintiff's June 17, 2016 complaint. Cela Decl. at Ex. 27, USPS EEO Acceptance for Investigation Letter.

111. The Acceptance for Investigation letter indicated that Plaintiff was alleging "discrimination based on Sex (Female – pregnant) and Retaliation (Protected activity)" and outlined the specific issues to be investigated as "(1) On February 23, 2016, and continuing dates, you were told that there was no work available within your restrictions and you were sent home; (2) On March 16, 2016, you were notified to report for "re-training from March 17-19, 2016; (3) In April 2016, you were notified that the District Reasonable Accommodation Committee (DRAC)

had denied your request for Light Duty work, and; (4) On or about June 2, 2016, you were notified

via letter that you had been terminated from your City Carrier Assistant (CCA) position." Ex. 27,

USPS EEO Acceptance for Investigation Letter at 1.

112. On August 31, 2016, USPS EEO Investigator Linda Ruggiero completed an

Investigation Report regarding Plaintiff's June 17 Complaint. Cela Decl. at Ex. 28, Linda Ruggiero

EEO Investigation Report ("Investigation Report").

113. The Investigation Report compiled documents including Plaintiff's multiple doctor's

notes requesting reasonable accommodation; USPS training documents, policy statements and

handbooks; USPS personnel records related to Plaintiff; information regarding comparator

employees; documents related to plaintiff's DRAC meeting; and Plaintiff's termination letter. *See*

Ex.28, Investigation Report. The Investigation Report also contained affidavits from Plaintiff, Ms.

Livingston, Mr. Smerling, Mr. Middleton, Ms. Bryant, and Mr. Lawson. *See Id.* at 2-3.

**B.   USPS's Final Agency Decision and Plaintiff's Response Thereto**

114. The USPS EEO issued a Final Agency Decision regarding Plaintiff's complaints of

discrimination and retaliation on August 14, 2018. Ex. 15, Final Agency Decision at 20.

**i.   Final Agency Decision Findings With Respect to Discrimination**

115. The Final Agency Decision asserts that "a plaintiff can establish a prima facie case of

pregnancy discrimination by showing that she is a member of that protected class, that she sought

consideration for her condition but was denied, and that others similar in their ability or inability

to work were treated more favorably." *Id.* at 3.

116. The Final Agency Decision indicates that Plaintiff has satisfied the first element of a

*prima facie* case of sex/pregnancy discrimination. *Id.* at 10.

117. The Final Agency Decision presumes that Plaintiff satisfies the second element of a

*prima facie* case of sex/pregnancy discrimination. *Id* at 11.

118. The Final Agency Decision concludes that Plaintiff did not provide evidence of a relevant similarly-situated comparator employee and thus did not prove the third element of her *prima facie* case of sex/pregnancy discrimination. *Id.*

119. Plaintiff has testified that there was a female, pregnant CCA in Staten Island ("SI CCA") whose light duty request was accommodated. Ex. 1, Pl. Tr. at 130; Ex. 3, Pl. Affidavit at USPS 0086.

120. Specifically, Plaintiff stated that SI CCA was given light duty in the form of driving a postal truck to deliver light packages. Ex.1, Pl. Tr. at 131.

121. USPS acknowledges that SI CCA was a CCA employed at the Mariners Harbor Carrier annex in Staten Island, New York who resigned from USPS on or about September 14, 2015. Cela Decl. at Ex. 29, SI CCA Employment History Report.

122. There is no EEO activity on record for the SI CCA while she was employed by USPS. Ex. 29, SI CCA Employment History Report at USPS 0220.

123. The USPS reasonable accommodation handbook indicates that a manager can grant reasonable accommodations without referring the request to DRAC. Ex. 5, Reasonable Accommodation Handbook at USPS 0289, 294. Ms. Bryant testified similarly that light duty requests can be processed locally by managers without DRAC involvement. Ex. 6, Bryant Tr. at 53.

124. Neither Ms. Livingston nor Ms. Bryant supervised SI CCA or participated in the decision to grant SI CCA her reasonable accommodation. Ex. 28, Investigation Report at 21.

125. USPS has provided no documentation that SI CCA was not granted the reasonable accommodation Plaintiff described.

126. Two other pregnant employees, one a Mail Handler Assistant and one a CCA, went before Ms. Bryant's DRAC requesting reasonable accommodations for their temporary, pregnancy-related conditions. See Cela Decl. at Ex. 30, Mail Handler Assistant Employment History Report Including DRAC Decision Letter ("Mail Handler Employment Records"); Cela Decl. at Ex. 31, CCA Employment History Report Including DRAC Decision Letter ("CCA Employment Records").

127. Ms. Bryant's DRAC also denied these two pregnant employees' requests for reasonable accommodation. *See* Ex. 30, Mail Handler Employment Records at USPS 0241-0243; Ex. 31, CCA Employment Records at USPS 0246-0248.

128. Both pregnant employees had completed their probationary periods, but neither was granted short-term leave as an accommodation. *See* Ex. 30, Mail Handler Report at USPS 0241-0243; Ex. 31, CCA Employment Report at USPS 0246-0248.

### ii. Final Agency Decision Conclusions and Plaintiff's Response

129. Notably, with respect to Plaintiff's claims that she experienced retaliation both when she was notified that the DRAC had denied her reasonable accommodation request and on June 2, 2016 when Plaintiff was terminated by USPS, the Final Agency Decision concludes that Plaintiff "has satisfied the essential requirements of a *prima facie* case." Ex. 15, Final Agency Decision at 10.

130. The Final Agency Decision incorrectly asserts that Plaintiff testified that her first protected activity took place on March 10, 2016. Plaintiff testified in the referenced affidavit that she first engaged in protected activity on February 22, 2016, when she first submitted her reasonable accommodation request. *Compare* Ex. 15, Final Agency Decision at 9-10 *with* Ex. 3, Pl. Affidavit at USPS 0087.

131. The Final Agency Decision also determined that USPS had provided non-discriminatory reasons for its actions that Plaintiff did not show were pretextual, so it closed Plaintiff's complaint with a finding of no discrimination. Ex. 15, Final Agency Decision at 16, 19.

132. The Final Agency Decision analyzes Plaintiff's first, third, and fourth claims together and does not indicate which specific evidence it has used to analyze each separate claim. *Id.* at 18.

133. As to Plaintiff's second claim, that Plaintiff was told by another manager to report for re-training between March 17, 2016 and March 19, 2016, the Agency refuses to acknowledge Plaintiff's testimony as accurate. *Id.* at 17.

134. The Final Agency Decision informed Plaintiff of her right to file a civil action within 90 calendar days of receipt of the final decision. *Id.* at 20.

135. Thereafter, on November 9, 2018, Plaintiff, through her attorney, filed a civil action in the United States District Court for the Eastern District of New York. *See* Pl. Compl.

Dated: New York, NY
      July 1, 2021

                        Respectfully submitted,

                          **/s/Dorina Cela**
                        Dorina Cela, Esq.
                        Phillips & Associates,
                        Attorneys at Law, PLLC
                        *Attorneys for Plaintiff*
                        45 Broadway, Suite 430
                        New York, New York 10006
                        (212) 248-7431
                        dcela@tpglaws.com

To:    Paulina Stamatelos, Esq. (*via Email and USAfx*)