**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SVETLANA SHKOLNIKOVA,

                           Plaintiff,                                    Civil Action No.
                                                                  18-CV-6400

      v.

                                                                  **(Brodie, J.)**

LOUIS DEJOY, POSTMASTER GENERAL,             **(Tiscione, M.J.)**

                           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

                                     Dorina Cela, Esq.
                                       Phillips & Associates, Attorneys at Law, PLLC
                                       *Attorneys for Plaintiff*
                                       45 Broadway, Suite 430
                                       New York, NY 10006
                                       (212) 248-7431
                                       dcela@tpglaws.com

Date of Service: July 1, 2021

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF MATERIAL FACTS ..................................................................................... 2

ARGUMENT ............................................................................................................................... 2

   I.   LEGAL STANDARD FOR SUMMARY JUDGMENT ................................................ 2

   II.  MS. SHKOLNIKOVA CAN ESTABLISH A *PRIMA FACIE* CASE OF
PREGNANCY DISCRIMINATION UNDER TITLE VII ...................................................... 4

      A.  Legal Standard for Title VII Pregnancy Discrimination Claims ............................. 4

      B.  Ms. Shkolnikova Can Assert Direct Evidence That Her Pregnancy Was a
Motivating Factor in Defendant's Decisions ................................................................... 7

      C.  Alternatively, Ms. Shkolnikova Can Satisfy Her *Prima Facie* Burden in the
*McDonnell Douglas* Analysis ....................................................................................... 14

   III.   MS. SHKOLNIKOVA CAN ESTABLISH A *PRIMA FACIE* CASE OF
RETALIATION UNDER TITLE VII ................................................................................... 17

      A.  Legal Standard for Title VII Retaliation Claims ................................................... 17

      B.  Ms. Shkolnikova Engaged in Protected Activity on Multiple Occasions
Throughout Her Employment with USPS and Defendant was Aware of Ms.
Shkolnikova's Protected Activity. .................................................................................. 19

      C.  Ms. Shkolnikova Suffered Adverse Employment Actions, and the Temporal
Proximity Between Ms. Shkolnikova's Protected Activity and These Adverse
Employment Actions is Sufficient to Show Causation. ................................................. 20

   IV.   MS. SHKOLNIKOVA CAN PROVE THAT USPS' STATED REASONS FOR
THE TERMINATION OF HER EMPLOYMENT WERE MERE PRETEXT ............... 23

      A.  Legal Standard for Proving an Employer's Stated Reason for an Adverse
Employment Action is Merely Pretextual ...................................................................... 23

      B.  USPS's Stated Reasons for Each of the Adverse Employment Actions Ms.
Shkolnikova Endured Were Mere Pretext for Defendant's Discriminatory and
Retaliatory Purposes ...................................................................................................... 23

CONCLUSION .......................................................................................................................... 25

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Alzawahra v. Albany Med. Ctr.*, 546 F. App'x 53, (2d Cir. 2013) ................................................ 3

*Alzawahra v. Albany Med. Ctr.*, 546 F. App'x 53, 2013 WL 6284286 (2d Cir. 2013) ................. 3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................... 3

*Asmo v. Keane, Inc.*, 471 F.3d 588 (6th Cir. 2006) ........................................................................ 6

*Barton v. Warren Cty., et al.*, 2020 U.S. Dist. LEXIS 141128, 2020 WL 4569465 (N.D.N.Y.

    Aug. 7, 2020) ............................................................................................................................ 21

*Bateman v. Project Hospitality, Inc.*, 2009 U.S. Dist. LEXIS 92411 (E.D.N.Y. 2009) .............. 12

*Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2003) ....................................... 19, 22

*Carter v. Syracuse City Sch. Dist.*, 2016 U.S. App. LEXIS 12870 (2d Cir. 2016) .......... 18, 21, 22

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ...................... 3

*Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29 (2d Cir. 1994) .................................................... 3

*Dancer v. Norden Sys., Inc.*, 151 F.3d 50 (2d Cir. 1998) ............................................................... 3

*Emmanuel v. Cushman & Wakefield, Inc.*, 2015 U.S. Dist. LEXIS 113280 (S.D.N.Y. 2015).. 5, 6,

    8, 13

*Espinal v. Goord*, 558 5.3d 119 (2d Cir. 2009) ........................................................................... 19

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219 (2d Cir. 1994) ........................ 3

*Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111 (2d Cir. 2000) .................................................. 18

*Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545 (2d Cir. 2001) .............................. 7, 19

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010) ................................................. 5

*Graham v. Macy's, Inc.*, 2016 U.S. Dist. LEXIS 10269 (N.D.N.Y. 2016) ............................. 19, 23

*Holcomb v. Iona Coll.*, 521 F.3d 130 (2d Cir. 2008) ..................................................................... 6

*Humphreys v. Cablevision Sys. Corp.*, 553 F. App'x 13 (2d Cir. 2014) ........................................ 3

*Lenzi v. Systemax, Inc.*, 944 F.3d 97 (2d Cir. 2019) .................................................... 6, 18

*Lovejoy-Wilson v. NOCO Motor Fuel*, 263 F.3d 208 (2d Cir. 2001) ...................................... 7, 16

*Manoharan v. Columbia University College of Physicians and Surgeons*, 842 F.2d 590 (2d Cir. 1988).................................................................................................... 18

*Mathirampuzha v. Potter*, 548 F.3d 70 (2d Cir. 2008) ............................................... 6, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348 (1986).......... 3

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ................................................. 5, 6, 23

*McGuinness v. Lincoln Hall*, 263 F.3d 49 (2d Cir. 2001) ............................................. 6

*McNamara v. Tourneau, Inc.*, 496 F.Supp.2d 366 (S.D.N.Y. 2007)........................................... 12

*Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372 (2d Cir. 1995)....................................................... 4

*Murtha v. New York State Gaming Comm'n.*, 2019 U.S. Dist. LEXIS 159783, 2019 WL 4450687 (S.D.N.Y. Sept. 17, 2019) .......................................................................... 21

*Orlando v. BNP Paribas N. Am., Inc.*, 2015 U.S. Dist. LEXIS 143822 (S.D.N.Y. October 22, 2015)……………………………………………………………………………………….. 3, 13

*Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171 (2d Cir. 1992) ........................................... 5, 7

*Pouncy v. Danka Office Imaging*, 2009 U.S. Dist. LEXIS 44752 (S.D.N.Y. 2009) ............... 7, 16

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).................................................... 5, 14

*Raskin v. Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997).................................................... 5

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133  (2000)................................................. 23, 24

*Ruiz v. Cty. of Rockland*, 609 F.3d 486 (2d Cir. 2010).................................................... 6

*Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749 (2d Cir. 2004) ................................ 6, 15

*Sista v. CSC Ixis N. Am., Inc.*, 445 F.3d 161 (2d Cir. 2006)........................................................ 5

*Sosa v. N.Y.C. Dep't. of Ed.*, 368 F. Supp.3d 489 (E.D.N.Y. 2019) .............................................. 21

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) ...................................................................... 6

*Stern v. Trs. Of Columbia Univ.*, 131 F.3d 30 (2d Cir. 1997) ......................................................... 4

*Stern v. Trs. Of Columbia Univ.*, 131 F.3d 305 (2d Cir. 1997) ....................................................... 4

*Summa v. Hofstra Univ.*, 708 F.3d 115 (2d Cir. 2013) ............................................................. 19, 23

*Tubo v. Orange Reg'l Med. Ctr.*, 2015 U.S. Dist. LEXIS 139254 (S.D.N.Y. 2015) .................... 6

*Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176 (2d Cir. 1992) ............................... 5, 14, 23, 25

*Univ. of Tex. Southwestern Med. Ctr v. Nassar*, 570 U.S. 338 (2013) .................................... 6, 19

*Young v. UPS*, 575 U.S. 206 (2015) .............................................................................................. 4

*Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834 (2d Cir. 2013) ................................................. 19

## **Statutes**

42 U.S.C. §§ 2000e-(k) ................................................................................................................. 4

42 U.S.C. §§ 2000e-2(a)(1) .......................................................................................................... 4

## **Rules**

Federal Rule of Civil Procedure 56 .............................................................................................. 2

Federal Rule of Civil Procedure Rule 56.1 .................................................................................. 2

## PRELIMINARY STATEMENT

Plaintiff Svetlana Shkolnikova ("Plaintiff" or "Ms. Shkolnikova") respectfully submits this Memorandum of Law in opposition to Defendant's Motion for Summary Judgment. The record presents multiple triable issues of fact that are more appropriate for jury consideration than resolution by summary judgment. Should this motion be resolved in Ms. Shkolnikova's favor, these facts would support and sustain her discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII") before a jury.

But for Ms. Shkolnikova's pregnancy and participation in protected activity, she would not have been subjected to the discriminatory and retaliatory treatment by Defendant USPS ("Defendant" or "USPS") described herein. After completing her training and beginning work as a City Carrier Assistant 2 ("CCA") at USPS's Homecrest Station ("Homecrest"), Ms. Shkolnikova attended a regularly scheduled appointment with her obstetrician-gynecologist ("OB-GYN") where she was instructed to ask for a work-related accommodation due to a pregnancy-related condition. Ms. Shkolnikova disclosed her pregnancy and provided her doctor's note describing her need for an accommodation to Adela Livingston, the Area Manager for Homecrest. In response, Ms. Livingston failed to engage in an efficient dialogue with Ms. Shkolnikova regarding her specific needs and instead attempted to relinquish all responsibility for the supervision and assessment of Ms. Shkolnikova as a pregnant employee in need of an accommodation. USPS's responses to Ms. Shkolnikova's subsequent attempts to engage in productive conversations regarding her needs ran contrary to USPS's own reasonable accommodation procedures and indicated underlying hostility from management toward Ms. Shkolnikova as a pregnant employee.

In the months that followed Ms. Shkolnikova's initial disclosure of her pregnancy and accommodation requests, USPS engaged in a string of discriminatory acts including: 1) removing

1

Ms. Shkolnikova from Homecrest's schedule, 2) ordering her to attend unnecessary re-training, 3) denying her request for reasonable accommodations of her pregnancy-related condition, and 4) terminating her employment. The evidence described herein makes clear that these decisions were made with discriminatory animus towards Ms. Shkolnikova as a pregnant employee.

USPS used each previous discriminatory act as justification for the next. The record brings to light overt contradictions in statements by USPS's agents, policy statements, and investigations, which show that USPS is attempting to gloss over the true motives for its actions. USPS cannot credibly explain why it disregarded some of the accommodations requested by Ms. Shkolnikova, why she was kept off the schedule for weeks before being placed in "off-duty" status, and why no USPS employee to date has taken responsibility for the decision to terminate her employment. Perhaps most critically, USPS has no *reasonable* answer for why short-term leave was unavailable to Ms. Shkolnikova as an accommodation, when it admits that she was placed on unpaid short-term leave during the time USPS expended to determine if it could accommodate her.

Accordingly, Ms. Shkolnikova respectfully asks the court to deny Defendant's motion.

## STATEMENT OF MATERIAL FACTS

Ms. Shkolnikova respectfully refers the Court to the factual background described in detail in Plaintiff's Opposition to Defendant's Rule 56.1 Statement ("Pl. 56.1 Opp.") and Plaintiff's Rule 56.1 Counterstatement of Facts ("Counterstatement"), the Declaration of Plaintiff's counsel ("Cela Decl."), and the exhibits annexed thereto.

## ARGUMENT

## I.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); *Humphreys v. Cablevision Sys. Corp.*, 553 F. App'x 13, 14 (2d Cir. 2014). The burden of showing that no genuine factual dispute exists rests on the moving party. *See Alzawahra v. Albany Med. Ctr.*, 546 F. App'x 53, 54 (2d Cir. 2013). To defeat a motion for summary judgment, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed." Fed. R. Civ. P. 56(c)(1); *Orlando v. BNP Paribas N. Am., Inc.*, 2015 U.S. Dist. LEXIS 143822, at *12 (S.D.N.Y. October 22, 2015) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

Further, if "a case turns on the intent of one party, as employment discrimination and retaliation claims often do, a trial court must be cautious about granting summary judgment." *Orlando*, 2015 U.S. Dist. LEXIS 143822, at *13 (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)) (internal citations omitted). The Court must carefully scrutinize the available evidence in search of circumstantial proof to undercut the employer's explanations for its actions. *See Id.* "[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial." *Id.* at *13-14 (quoting *Dancer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998)).

Summary judgment should only be granted if an employer provides convincing evidence to explain its conduct and the Plaintiff's argument consists of purely conclusory allegations of discrimination or retaliation. *See Stern v. Trs. Of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997); *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995).

## II.   MS. SHKOLNIKOVA CAN ESTABLISH A *PRIMA FACIE* CASE OF PREGNANCY DISCRIMINATION UNDER TITLE VII

As a preliminary matter, Ms. Shkolnikova is not arguing that Defendant's refusal to accommodate her was discriminatory in that the accommodations requested were provided to other, non-pregnant employees, as was the case in *Young v. UPS*, 575 U.S. 206 (2015). Instead, Ms. Shkolnikova argues that the treatment she endured from the outset of her time at Homecrest – well before her requests for an accommodation were officially denied – was motivated by discriminatory intent toward her as a pregnant employee.  Plaintiff's evidence far surpasses mere "conclusory allegations" and the record described fully herein supports a finding of discrimination. *See Stern v. Trs. Of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997); *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995).

### A.   <u>Legal Standard for Title VII Pregnancy Discrimination Claims</u>

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee "with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2(a)(1). The Pregnancy Discrimination Act confirmed that "the terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. §§ 2000e-(k).

When a plaintiff can present "direct evidence" that "a prohibited discriminatory factor played a 'motivating part' in a challenged employment decision, the burden shifts to the employer

to prove by a preponderance of the evidence that it would have made the same decision anyway." *Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir. 1997) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989)). "Direct evidence" is, however, "an unfortunate choice of terminology for the sort of proof needed to establish a 'mixed-motives' case" because it refers to "the manner in which the plaintiff proves [her] case" rather than "the quality of the evidence presented." *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 181 (2d Cir. 1992) Thus, "a plaintiff may prove that the forbidden animus 'was a motivating factor' through the presentation of either 'direct' or 'circumstantial' evidence." *Id.* at 181-82 (quoting *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 2132 (2d Cir. 1992)). The evidence presented need only be "sufficient to permit the factfinder to *infer*" that the discriminatory animus was "more likely than not a motivating factor in the employer's decision." *Id.* at 182 (emphasis added). Direct evidence can include "statements or actions by decisionmakers that may be viewed as *directly reflecting* the alleged discriminatory attitude" as well as similar statements or actions by other employees who heavily influenced the employer's decision-making. *Emmanuel v. Cushman & Wakefield, Inc.*, 2015 U.S. Dist. LEXIS 113280 at *14 (S.D.N.Y. 2015) (quoting *Sista v. CSC Ixis N. Am., Inc.*, 445 F.3d 161, 173-74 (2d Cir. 2006)) (internal quotation marks omitted) (emphasis in original).

In the absence of direct evidence, courts assess Title VII claims under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105-06 (2d Cir. 2010). Under this framework, plaintiff must first establish a *prima facie* case of discrimination by showing that: "(1) she belongs to a protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Tubo v. Orange Reg'l Med. Ctr.*, 2015 U.S. Dist.

5

139254, at *15 (S.D.N.Y. 2015) (Román, J.) (citing *McDonnell Douglas* 411 U.S.at 802); *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). Plaintiff's burden in establishing her *prima facie* case is "minimal." *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *Hicks*, 509 U.S. at 506).

To prove that she suffered an adverse employment action, the plaintiff must show that the action constituted a "materially adverse change in the terms and conditions of employment" that is more than a "mere inconvenience" or benign "alteration of job responsibilities." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (quoting *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).

As to the fourth prong of the plaintiff's *prima facie* analysis, the facts required will "necessarily vary in different employment discrimination cases." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001). However, "'it suffices … to show that the motive to discriminate was one of the employer's motives, even if the employer had other, lawful motives that were causative in the employer's decision.'" *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (quoting *Univ. of Tex. Southwestern Med. Ctr v. Nassar*, 570 U.S. 338, 343 (2013)). Plaintiff can show that the adverse employment action occurred under circumstances giving rise to an inference of discrimination by showing either "direct evidence of discriminatory intent" **_or_** through "circumstantial evidence demonstrating that the employer treated Plaintiff less favorably than a similarly situated employee outside of her protected group." *Emmanuel*, 2015 U.S. Dist. LEXIS 113280 at *14. Additionally, "'temporal proximity between the employer's learning of an employee's pregnancy and an adverse employment action taken with respect to that employee . . . may . . . support . . . an inference of pregnancy discrimination.'" *Lenzi*, 944 F.3d at 108 (2d Cir. 2019) (quoting *Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006)) (ellipses in *Lenzi*). The

Second Circuit "has not drawn a bright line defining the outer limits beyond which a temporal relationship is too attenuated to establish causation," but generally a period of two months suffices to demonstrate causation for the purposes of establishing a *prima facie* case. *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001); *see, e.g.*, *Pouncy v. Danka Office Imaging*, 2009 U.S. Dist. LEXIS 44752, at *37 (S.D.N.Y. 2009) (citing *Lovejoy-Wilson v. NOCO Motor Fuel*, 263 F.3d 208, 224 (2d Cir. 2001)).

### B. Ms. Shkolnikova Can Assert Direct Evidence That Her Pregnancy Was a Motivating Factor in Defendant's Decisions

Ms. Shkolnikova can point to a vast array of circumstantial evidence beginning at the outset of her employment at USPS that is tied *directly* to the discriminatory animus she experienced as a pregnant CCA. *See Ostrowski*, 968 F.2d at 181-182. Ms. Shkolnikova was approximately twenty-five weeks pregnant when she began working at Homecrest on February 16, 2016. Ex. 1, Excerpted Deposition Transcript of Svetlana Shkolnilova ("Pl. Tr.") at 75. Ms. Shkolnikova's pregnancy was undeniably visible, as Isaac Middleton, Manager at Homecrest, stated during the USPS EEO Investigation that he noticed she had a "big belly." Ex. 17, Isaac Middleton EEO Investigative Affidavit ("Middleton Affidavit") at USPS 0149. Ms. Shkolnikova also testified during her deposition that Ms. Livingston asked her directly if she was pregnant on her first day at Homecrest. Pl. Tr. at 75. Yet, during her deposition, Ms. Livingston denied knowing about Ms. Shkolnikova's pregnancy prior to her submitting her doctor's note requesting an accommodation in a counterproductive attempt to shield herself from any perception of discriminatory animus. Ex. 4, Excerpted Deposition Transcript of Adela Livingston ("Livingston Tr.") at 40. Six days later, on February 22, 2016, Ms. Shkolnikova discussed her pregnancy with Ms. Livingston when she presented her with her first doctor's note requesting a reasonable accommodation. Livingston Tr. at 42. The next day, on February 23, 2016, Ms. Livingston engaged in swift discriminatory conduct

against Ms. Shkolnikova when she instructed Homecrest Manager, Mr. Smerling, to send Ms. Shkolnikova home without working. Ex. 11, Steven Smerling EEO Investigative Affidavit ("Smerling Affidavit") at USPS 0134. On that day, Ms. Livingston also sent an email to management and human resources officials, including Postmaster, Anthony Impronto, and Labor Relations Manager, Te'Nagh Bryant, asking if she had any "recourse" regarding Ms. Shkolnikova requesting a reasonable accommodation, as she believed the doctor's note she had provided to be insufficient, but had previously been told that "the rules are different for pregnant employees." Ex. 7, February 23, 2016 Email from Adela Livingston to Anthony Impronto, Matthew Doxsey, Te'Nagh Bryant, and David Rudy ("February 23 Email")*.* Notably, she then asked if Ms. Shkolnikova's probationary period could be extended and if *she could be left at home until after her maternity leave*. *Id.* Ms. Livingston's desire to leave Plaintiff home materialized, as Ms. Shkolnikova was not allowed to work at Homecrest again. Ms. Livingston's actions *directly reflect* her discriminatory animus against Ms. Shkolnikova, as someone who, *at a minimum*, did not want to deal with a pregnant employee. *See Emmanuel*, 2015 U.S. Dist. LEXIS 113280 at *14.

Furthermore, Ms. Livingston's actions were in direct conflict with USPS's reasonable accommodation policies. USPS's Reasonable Accommodation Handbook indicates that a manager in receipt of a reasonable accommodation request "must process the request promptly" and engage the requestor in an "informal dialogue" regarding the details surrounding the accommodation. Ex. 5, Reasonable Accommodation Handbook. The manager is instructed to be an active participant in identifying potential accommodations for the requestor by researching and offering "alternative suggestions for reasonable accommodations." *Id.* In contrast, Ms. Livingston repeatedly testified that her only role in the reasonable accommodation process was to forward Ms. Shkolnikova's request to human resources "for them to do whatever it is that they do." Livingston Tr. at 43. By

her own admission, Ms. Livingston did not engage in an adequate interactive dialogue with Ms. Shkolnikova regarding her request and only provided her with a general overview of the physical requirements of the CCA job "so that she could do as she chose with it." Livingston Tr. at 43; Ex. 10, Adela Livingston EEO Investigative Affidavit ("Livingston Affidavit") at USPS 0116.

In failing to comply with USPS's procedure for addressing an accommodation request from an employee, Ms. Livingston did not provide Ms. Shkolnikova any direct guidance on what kind of doctor's note she would accept until February 29, 2016, when she typed out a list of physical tasks that she wanted Ms. Shkolnikova's doctor to consider. Pl. Tr. at 106-07; Ex. 8, Dr. Stromer February 29, 2016 Note ("February 29 Note"). There is no reasonable explanation for Ms. Livingston withholding this guidance from Ms. Shkolnikova until she had already provided two doctor's notes. Even when Ms. Shkolnikova's OB-GYN complied with Ms. Livingston's typed instructions in his February 29 Note, Ms. Livingston still refused to accept it. Livingston Tr. at 68. Although Ms. Livingston finally considered Ms. Shkolnikova's March 7, 2016 doctor's note sufficient to be submitted to Human Resources, the record shows that Ms. Livingston submitted the note to human resources on March 17, 2016. *See* Ex. 13, March 7, 2016 Dr. Fayngersh and Semyon Elyash Note ("March 7 Note"); Livingston Tr. at 77; Ex. 9, March 17, 2016 Email Chain between Adela Livingston, Anthony Impronto, David Rudy, and Te'Nagh Bryant ("March 17 Emails"). On March 17, Ms. Livingston emailed Postmaster Anthony Impronto regarding Ms. Shkolnikova's medical documentation. *See* Ex. 9. Mr. Impronto then forwarded the request to David Rudy, Human Resources Manager, and asked if Ms. Shkolnikova's request could be sent to the DRAC. *Id.* Ms. Livingston's discriminatory animus kept Ms. Shkolnikova from working for weeks, as she failed to provide her with precise instructions on what was needed for Ms. Livingston to accept her reasonable accommodation request. It is also worth noting that Ms. Bryant, the DRAC

Chair, received Ms. Livingston's February 23 Email regarding Ms. Shkolnikova's request for accommodation but did not respond beyond asking for confirmation of Ms. Shkolnikova's name. *See* Ex. 7. Ms. Bryant testified that she would send an "essential function worksheet" to any manager who reached out to her regarding an employee who requested reasonable accommodation, but she did not send this worksheet to Ms. Livingston until March 24, 2016 when the DRAC process had already begun. Ex. 6, Excerpted Deposition of Te'Nagh Bryant ("Bryant Deposition.") at 30-31; Ex. 35, Email chain between Te'Nagh Bryant, Anthony Impronto, and Adela Livingston regarding the Essential Functions Worksheet ("Essential Functions Worksheet Email").

During the USPS EEO investigation, Ms. Livingston stated that Ms. Shkolnikova was kept off the schedule because her medical documentation was not specific enough; however, this is demonstrably false. *See* Livingston Tr. at 43-44. Ms. Livingston testified at her deposition that, *after* receiving Ms. Shkolnikova's first doctor's note, she instructed Mr. Smerling to give Ms. Shkolnikova "minimum, a minimum of an hour" of work that day to assess how proficient she was at the tasks she learned in training. *Id.* Time records indicate that Ms. Shkolnikova was clocked in at Homecrest from 7:00 AM until after 6:00 PM on February 22, 2016, and Ms. Shkolnikova testified that she was allowed to complete a full route alone on that day. Pl. Tr. at 97; Ex. 16, Svetlana Shkolnikova Time Sheets ("Plaintiff Timesheets") at USPS 0369. Additionally, Ms. Shkolnikova completed a March 1, 2016 two-ton truck driving certification without issue. Ex. 32, Training Completion Documents. Ms. Shkolnikova also attended a duplicative and unnecessary re-training from March 17, 2016 until March 19, 2016. Ex. 3, Svetlana Shkolnikova EEO Investigative Affidavit ("Plaintiff Affidavit") at USPS 0087-0088. Ms. Shkolnikova testified that Timothy Lawson, Manager, called her and instructed her to report for re-training at the behest of Ms. Livingston. Pl. Tr. at 121. Although Ms. Livingston alleged in her investigative affidavit

completed pursuant to the USPS EEO investigation that no one ever told Ms. Shkolnikova to report for re-training, Ms. Shkolnikova was allowed to clock in at Bay Station to complete the training on March 17, March 18, and March 19 without intervention. Time Sheets at USPS 0372-0373. Ms. Livingston sent an email on March 21, 2016 asking "who authorized" Ms. Shkolnikova to work, seemingly to make it appear as though the training was not approved. Ex. 33, March 21, 2016 Email from Adela Livingston ("March 21 Livingston Email"). "Further, USPS did not officially place Ms. Shkolnikova in "off-duty" status until after she completed her re-training on March 19, 2016. *See* Exhibit 14, June 2, 2016 "Termination of City Carrier Assistant Appointment During Probation" Letter ("Termination Letter").

By the time Ms. Shkolnikova got to her DRAC meeting on March 28, 2016, over one month after the February 23 Email, it was clear that the decision not to accommodate her had already been made. Not surprisingly, Ms. Livingston was assigned to attend the DRAC meeting by Postmaster Impronto as an expert on Homecrest's operations, but she insists that she did not have any input into the final decision.  Livingston Tr. at 77, 118-19; Bryant Tr. at 184.

Despite making potential accommodation requests including "temporary (3 month) Light Duty position such as an office or administration job, or assignment to truck driving duty, to have a lighter mail bag to push, or granted short term leave," the DRAC decision letter to Ms. Shkolnikova only analyzes potential accommodations of a "quasi-sedentary position," relocating relay boxes on Ms. Shkolnikova's route, and splitting Ms. Shkolnikova's mail into two parts. *See* Ex. 3 at USPS 0090; Ex. 12, April 14, 2016 DRAC Decision Letter ("DRAC Decision"). Short-term leave was not mentioned at all in the DRAC Decision or the USPS EEO Final Agency Decision although Ms. Shkolnikova requested short-term leave, Ms. Livingston mentioned short-term leave as a potential accommodation in her February 23 Email, and Ms. Bryant conceded that

11

short-term leave was an accommodation request that DRAC had the ability to consider and grant. Ex. 3 at USPS 0090; Bryant Tr. at 159-160; Ex. 7; Ex. 15, USPS EEO Final Agency Decision ("EEO Final Agency Decision"); Ex. 14.

Courts in this Circuit have held that short-term leave can be considered a reasonable accommodation, so long as the leave is "finite and will be reasonably likely to enable the employee to return to work." *McNamara v. Tourneau, Inc.*, 496 F.Supp.2d 366, 376 (S.D.N.Y. 2007) (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 186 n.6) (2d Cir. 2006) (dicta)). *See also Bateman v. Project Hospitality, Inc.*, 2009 U.S. Dist. LEXIS 92411, at *42 (E.D.N.Y. 2009). Ms. Shkolnikova had requested a finite period of leave as an accommodation only until she gave birth, which would enable her to return to work. *See* Ex. 3 at USPS 0090. Over four years after USPS failed to consider this potential accommodation, Ms. Bryant and Ms. Livingston both claimed in their depositions that Ms. Shkolnikova could not be granted temporary leave because it would have interfered with her probationary period.  Bryant Tr. at 159; Livingston Tr. at 86. However, two other pregnant employees who went through the DRAC process, chaired by Ms. Bryant, to request accommodations for their temporary, pregnancy-related conditions, were not granted short-term leave, *even though they had completed their probationary periods*. *See* Ex. 30, Mail Handler Assistant Employment History Report Including DRAC Decision Letter ("Mail Handler Employment Records") at USPS 0241-USPS 0243; Ex. 31, CCA Employment History Report Including DRAC Decision Letter ("CCA Employment Records") at USPS 0246-USPS 0248.

Adding insult to injury, Ms. Shkolnikova's Termination Letter cited her inability to work and be evaluated during her probationary period as the reason for her termination. *See* Ex. 14. Defendant's assertion completely ignores the reason *why* Plaintiff was not able to work after February 23, 2016, namely that she was removed from the work schedule because of her pregnancy

12

and subsequently denied an adequate interactive process to determine the reasonable accommodations that were available to her. While Ms. Livingston denies being the decisionmaker with respect to Ms. Shkolnikova's termination, her discriminatory adverse employment actions ultimately provided Defendant with the basis for Ms. Shkolnikova's termination and can properly be considered direct evidence of discriminatory animus. *See Emmanuel,* 2015 U.S. Dist. LEXIS 113280 at *14; Livingston Tr. at 128.

Separately, Ms. Shkolnikova learned of a pregnant CCA who had previously worked at a USPS facility in Staten Island ("SI CCA") and received a reasonable accommodation for her temporary, pregnancy-related condition, in the form of being allowed to drive a postal truck and deliver light packages. Pl. Tr. at 130-31; Ex. 3 at USPS 0086. There is no record of the SI CCA initiating any EEO activity or a DRAC proceeding, but this might mean that her request was processed locally at her station by a manager or supervisor without any need for DRAC involvement. *See* Ex. 5; Bryant Tr. at 53.  In contrast, two pregnant, non-probationary employees, a Mail Handler Assistant and a CCA, requested reasonable accommodations while they were at Homecrest around the same time as Ms. Shkolnikova and, after interacting with DRAC, neither was accommodated. Ex. 30; Ex. 31. As such, although temporary accommodations for a pregnant employee were possible at a different USPS facility, there is a demonstrated pattern that such accommodations were not granted to pregnant women by Ms. Livingston and/or Ms. Bryant.

### i. Defendant Cannot Show by a Preponderance of the Evidence that it Would Have Made the Same Decision If Ms. Shkolnikova Was Not Pregnant

USPS alleges that it terminated Ms. Shkolnikova's employment because it was unable to evaluate Ms. Shkolnikova during her probationary period and that its reasonable accommodation denial occurred only after a "robust, interactive process" determined that Ms. Shkolnikova could not be accommodated. Def.'s MOL at 12. However, as explained above, Ms. Shkolnikova was

only unable to work due to Ms. Livingston's initial decisions based on her discriminatory animus toward Ms. Shkolnikova as a pregnant employee and the inadequacy of Defendant's reasonable accommodation process, which was inextricably tainted by the initial discrimination.

While there may not be one "smoking gun" document in this case, all of the aforementioned circumstances serve to create a "thick cloud of smoke" that would reasonably allow a factfinder to infer that Defendant's decisions would not have been made if not for Ms. Shkolnikova's pregnancy. *Tyler*, 958 F.2d at 1187 (quoting *Price Waterhouse,* 490 U.S. at 266 (O'Connor, J., concurring)). Further, the evidence directly calls into question Defendant's intent.  As such, this case is not suitable for summary judgment. *Orlando*, 2015 U.S. Dist. LEXIS 143822, at *13.

### C. Alternatively, Ms. Shkolnikova Can Satisfy Her *Prima Facie* Burden in the *McDonnell Douglas* Analysis

Even if, *arguendo*, Ms. Shkolnikova has not submitted enough "direct evidence" to warrant a mixed-motive analysis, her claim would succeed under the *McDonnell Douglas* analysis.

### i.  Ms. Shkolnikova Suffered Multiple Adverse Employment Actions

It is not disputed that Ms. Shkolnikova was a pregnant female at the time of her employment as a CCA with USPS and was qualified for her position.

Ms. Shkolnikova suffered multiple adverse employment actions during her employment with USPS. First, Ms. Shkolnikova was sent home without working on February 23, 2016 and February 29, 2016. Ex. 3 at USPS 0084; Livingston Tr. at 38, 128; Ex. 10 at USPS 0115. Ms. Shkolnikova was kept off the Homecrest work schedule thereafter until her termination on June 2, 2016 despite only being placed on "off-duty" status on March 19, 2016. Ex. 14.

Next, Defendant did not merely deny Ms. Shkolnikova's accommodation request; rather, Defendant did not give Ms. Shkolnikova a full and fair opportunity to participate in its accommodation process due to her pregnancy. As described *supra* in Section II(B), Ms. Livingston

failed to participate in a true interactive process with Ms. Shkolnikova regarding her multiple requests for reasonable accommodation. Livingston Tr. at 46; Ex. 10 at USPS 0116. Moreover, once Ms. Shkolnikova's request was officially forwarded to the DRAC, the process was brief, conclusory, and failed to analyze viable accommodations that Ms. Shkolnikova had requested. *See* Ex. 12. Denial of this process is at its very core a "materially adverse change in the terms and conditions" of Plaintiff's employment as it prevented Ms. Shkolnikova entirely from continuing to do her job and paved the way for her termination. *Mathirampuzha*, 548 F.3d at 78 (quoting *Sanders*, 361 F.3d at 755).

Finally, Ms. Shkolnikova suffered the ultimate adverse employment action when she was terminated on June 2, 2016, on the day she gave birth to her child. *See* Pl. Tr. at 69.

### ii. Ms. Shkolnikova can Establish that the Adverse Employment Actions Occurred Under Circumstances Giving Rise to an Inference of Discrimination

As described *supra* in Section II(B), there was a seven-day gap between when Ms. Shkolnikova's supervisors, Mr. Smerling and Ms. Livingston, became aware of her pregnancy and their initial removal of Ms. Shkolnikova from the Homecrest schedule. *See* Pl. Tr. at 75; Ex. 3 at USPS 0084. There was a one-day gap between Ms. Shkolnikova discussing her pregnancy-related accommodation request with Ms. Livingston and Mr. Smerling first telling Ms. Shkolnikova to go home without working, per Ms. Livingston's orders. *See* Livingston Tr. at 42; Ex. 3 at USPS 0084. Further, there was a seven-day gap between the aforementioned conversation between Ms. Shkolnikova and Ms. Livingston and Ms. Livingston removing Ms. Shkolnikova from the Homecrest schedule entirely. *See* Livingston Tr. at 42; Pl. Tr. at 109-10; Ex. 10 at USPS 0115. The temporal proximity between Livingston and Smerling learning that Ms. Shkolnikova was pregnant and their removing her from Homecrest altogether is sufficient to establish causation for

purposes of a *prima facie* pregnancy discrimination case. *See Pouncy*, 2009 U.S. Dist. LEXIS 44752, at *37 (citing *Lovejoy-Wilson*, 263 F.3d at 224).

Further, seven days after Ms. Livingston learned of Ms. Shkolnikova's pregnancy, she began to deny Ms. Shkolnikova access to the reasonable accommodation process outlined in Defendant's Reasonable Accommodation Handbook, as described *supra* in Section II(B), by dragging her through a weeks-long process between February 22 and March 7, 2016. *See* Ex. 5; Livingston Tr. at 46; Ex. 10 at USPS 0116. Then, once Ms. Shkolnikova's request was finally accepted by the DRAC, Defendant understated the reasonable accommodations Ms. Shkolnikova requested, seemingly to minimize the appearance that there were accommodations that could have been granted. *See* Ex. 12. Lastly, the DRAC Decision was sent on April 14, 2016, approximately two months after Ms. Livingston, Mr. Smerling, and Ms. Bryant learned of Ms. Shkolnikova's pregnancy. *Id.* The close temporal proximity between these events is sufficient to show causation for Plaintiff's *prima facie* case of discrimination.

The termination of Ms. Shkolnikova's employment also occurred under circumstances that give rise to an inference of discrimination. First, as described *supra* in section II(B), the decision to terminate Plaintiff was entirely due to Defendant's prior discriminatory acts. Furthermore, no USPS employee will claim responsibility for the termination of Ms. Shkolnikova. Mr. Smerling denied any involvement and said that Ms. Livingston would have knowledge of the matter; Ms. Livingston said she did not have any input in the decision and that she does not know who decided to terminate Ms. Shkolnikova; Ms. Bryant denied responsibility and said the decision was likely made at the station management level but admitted that she did help write the Termination Letter; and Mr. Middleton, the supervisor who signed the termination letter, said he never had anything to do with Ms. Shkolnikova's employment and that he only signed the letter at the direction of Ms.

16

Livingston.  Livingston Tr. at 128-32; Bryant Tr. at 205; Ex. 23 at USPS 0173; Ex. 11 at USPS 0140; Ex. 25, June 21, 2016 Email from Steven Smerling to Darrell K. Ahmed ("June 21 Email"); Ex. 17 at USPS 0153-0154. The connection between the termination and Defendant's other discriminatory activity, when coupled with the circumstances surrounding Ms. Shkolnikova's termination and the expressed lack of accountability by the managers involved in Ms. Shkolnikova's employment, would certainly give rise to an inference of discrimination.

## III.   MS. SHKOLNIKOVA CAN ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION UNDER TITLE VII

Plaintiff's retaliation claim is not, as Defendant states, "duplicative of her claim for gender and pregnancy discrimination." Def.'s MOL at 13. In addition to discriminating against Plaintiff due to her pregnancy, Defendant repeatedly retaliated against Plaintiff for requesting accommodations, making a claim of discrimination, and participating in an EEO investigation regarding her allegation of discrimination.

Importantly, in the Final Agency Decision, the USPS EEO found that Ms. Shkolnikova established a *prima facie* retaliation claim for being denied her request for reasonable accommodation by the DRAC and terminated on June 2, 2016. *See* Ex. 15. As for the other two claims of retaliation, the USPS EEO erroneously based its decision on the mistaken assertion that Ms. Shkolnikova testified that her first protected activity took place when she complained on March 10, 2016, when she had actually testified that her first protected activity was when she made her initial accommodation request on February 22, 2016. *Id.*

### A.  Legal Standard for Title VII Retaliation Claims

Title VII forbids employers from retaliating against an employee "because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 U.S.C. §§ 2000e-2000e-17]." 42 U.S.C. § 2000e-3.  Retaliation claims

17

brought under Title VII "are analyzed under the same *McDonnell Douglas* framework" as Title

VII discrimination claims. *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019). To establish a

*prima facie* case of retaliation, an employee must show (1) "that the employee was engaged in

protected activity;" (2) "that the employer was aware of that activity;" (3) "that the employee

suffered adverse employee decisions;" and (4) "that there was a causal connection between the

protected activity and the adverse employment action." *Manoharan v. Columbia University

College of Physicians and Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988).

Title VII's retaliation provision "casts a much wider net" than a Title VII discrimination

claim in that a retaliatory act need not affect the terms and conditions of employment to be

actionable. *Carter v. Syracuse City Sch. Dist.*, 2016 U.S. App. LEXIS 12870, at *8 (2d Cir. 2016)

(citing *White*, 548 U.S. at 64). Any actions that, when taking context into account, are "harmful to

the point that they could well dissuade a reasonable worker" from participating in protected

activity can suffice. *White*, 549 U.S. at 57, 68-69.

Proof of causation can be shown either: "(1) indirectly, by showing that the protected

activity was followed closely by discriminatory treatment, or through circumstantial evidence such

as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through

evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.

City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Crucially, this standard "does *not* require a

reviewing court or jury to consider the nature of the discrimination that led to the filing of the

charge." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 70 (2003) (*citing* Alito, J.,

concurring at 78) (emphasis in original) (quotation marks omitted).

The analysis of whether temporal proximity between Plaintiff's participation in protected

activity and an employer's adverse action can be used to show causation requires careful

consideration of the circumstances surrounding the adverse employment action. *See Espinal v. Goord*, 558 5.3d 119, 129 (2d Cir. 2009). A period of four or five months is not too attenuated "where other protected activities and retaliatory actions occur in the interval." *Graham v. Macy's, Inc.*, 2016 U.S. Dist. LEXIS 10269, at *24 (N.D.N.Y. 2016) (citing *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 555 (2d Cir. 2001)), *aff'd.*, 675 Fed. App'x 81 (2d Cir. 2017); *see also  Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (temporal distance of seven months was "not prohibitively remote" due to surrounding circumstances connecting the employee's protected activity and the adverse employment action).

Plaintiff must ultimately show that the unlawful retaliation "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 2533 (2013). This "but-for" causation, however, does not require proof that retaliation was the only cause of the employer's action; it only requires that the adverse action would not have occurred in the absence of the retaliatory motive. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845-846 (2d Cir. 2013).

### B. Ms. Shkolnikova Engaged in Protected Activity on Multiple Occasions Throughout Her Employment with USPS and Defendant was Aware of Ms. Shkolnikova's Protected Activity.

Ms. Shkolnikova first engaged in protected activity on February 22, 2016, when she attempted to initiate USPS's interactive accommodation process with her first doctor's note requesting an accommodation. Livingston Tr. at 41-42. Plaintiff again engaged in protected activity on March 10, 2016 when she made a complaint to the USPS EEO. Ex. 20, Information for Pre-Complaint Counseling Form ("March 10 Complaint").[1]

---

[1] Defendant does not dispute that either of these activities constitutes protected activity within the meaning of 42 U.S.C. § 2000e-3. See Def's MOL p. 15.

19

The actors responsible for the adverse employment actions were acutely aware of Ms. Shkolnikova's protected activity prior to taking said actions against her. First, Ms. Shkolnikova made her reasonable accommodation request directly to Ms. Livingston on February 22, 2016. Livingston Tr. at 41-42.  Ms. Livingston then spoke with Mr. Smerling about Ms. Shkolnikova's request that same day. *Id.* at 43. Ms. Livingston emailed Ms. Bryant as well as Anthony Impronto, Postmaster of Brooklyn and Matthew Doxsey, Manager of Health and Resource Management regarding Plaintiff's accommodation request on February 23, 2016. *See* Ex. 7.

Then, as to Ms. Shkolnikova's March 10 Complaint, Ms. Bryant admits that she learned of Ms. Shkolnikova's EEO activity on March 30, 2016, which was two days after Ms. Shkolnikova's DRAC meeting but seventeen days prior to DRAC sending its decision to Plaintiff. Ex. at USPS 0163. Ms. Bryant further testified that she learned of Ms. Shkolnikova's EEO activity because Postmaster Impronto told her about it, meaning that he learned of the protected activity prior to March 30, 2016. *Id.* Ms. Livingston's testimony to USPS's EEO investigator that she did not learn of Ms. Shkolnikova's EEO activity until July 25, 2016 is patently false, as she had a phone call with a different EEO investigator on April 6, 2016 regarding Ms. Shkolnikova's allegations of discrimination. *See* Ex. 28, Linda Ruggiero EEO Investigation Report ("Investigation Report") at USPS 0065; Ex. 34, Ahmed EEO Dispute Resolution Specialist's Inquiry Report at USPS 0035.

### C. Ms. Shkolnikova Suffered Adverse Employment Actions, and the Temporal Proximity Between Ms. Shkolnikova's Protected Activity and These Adverse Employment Actions is Sufficient to Show Causation.

Ms. Shkolnikova suffered a string of progressive adverse employment actions shortly after engaging in protected activity. On February 23, 2016, the day after Ms. Shkolnikova submitted her reasonable accommodation request, Ms. Livingston ordered Mr. Smerling to send Ms. Shkolnikova home without working. *See* Ex. 11 at USPS 0136. Ms. Livingston admits to taking

20

Ms. Shkolnikova off the work schedule only six days later. Livingston Tr. at 38, 48, 125-128; Ex. 10 at USPS 0115. It is indisputable that an employer taking away work hours is an adverse employment action, as it would certainly "dissuade a reasonable worker" from participating in protected activity. *White*, 549 U.S. at 57.

Approximately one month after Ms. Shkolnikova made her March 10 Complaint, she received the DRAC Decision denying her request for an accommodation. *See* Ex. 12. In trying to dismiss this clear retaliatory act, Defendant erroneously cites to two cases analyzing whether refusal to grant a particular accommodation constitutes an adverse employment action in a *discrimination* claim. *See* Def's MOL at 16; *Murtha v. New York State Gaming Comm'n.*, 2019 U.S. Dist. LEXIS 159783, 2019 WL 4450687 (S.D.N.Y. Sept. 17, 2019); *Barton v. Warren Cty., et al.*, 2020 U.S. Dist. LEXIS 141128, 2020 WL 4569465 (N.D.N.Y. Aug. 7, 2020). As noted above, the standard for what constitutes an adverse employment action in a retaliation claim is far broader in that the retaliatory act need not affect the terms and conditions of employment to be actionable. *See Carter,* 2016 U.S. App. LEXIS 12870, at *8. Moreover, the relevant portion of *Barton* (which is not cited by Defendant) grants that that a court may consider "the underlying conduct of an alleged failure to accommodate" in determining whether that failure to accommodate constituted an adverse employment action. *Barton*, 2020 WL 4569465 at *45 (quoting *Sosa v. N.Y.C. Dep't. of Ed.*, 368 F. Supp.3d 489, 496 (E.D.N.Y. 2019)). The circumstances by which Defendant came to deny Ms. Shkolnikova's reasonable accommodation request show clear discriminatory animus and are thus distinguishable from *Barton*. Not only did Defendant deny Ms. Shkolnikova's reasonable accommodation request, it did so through a deficient DRAC decision that did not consider all of Ms. Shkolnikova's requested accommodations after weeks of Ms. Livingston stringing Ms. Shkolnikova along. This refusal to accommodate, when viewed in

concert with the relevant "underlying conduct" and the fact that the denial happened approximately one month after Ms. Shkolnikova's March 10 Complaint to the USPS's EEO office, is more than sufficient to meet Ms. Shkolnikova's burden to prove *prima facie* retaliation. *Id.*

Additionally, six days after Ms. Shkolnikova made her March 10 Complaint and less than one month after Ms. Shkolnikova made her initial accommodation request, Midwood Station manager, Timothy Lawson, called Ms. Shkolnikova and informed her that she was to report to re-training at Bay Station from March 17, 2016 to March 19, 2016. *See* Pl. Tr. at 121. Although this action admittedly did not alter the terms and conditions of Plaintiff's employment, it need not have done so for the purposes of this analysis. *See Carter*, 2016 U.S. App. LEXIS 12870, at *8. Ms. Shkolnikova testified that no other employee was required to attend re-training. *See* Ex. 3 at USPS 0088. Further, Ms. Shkolnikova was told that Ms. Livingston, the person who had already taken discriminatory actions against Ms. Shkolnikova, had required her to do so. Pl. Tr. at 121. When taken within the context of the entire timeline of events Ms. Shkolnikova has described, a reasonable factfinder could find that this adverse employment action would dissuade a reasonable employee from participating in protected activity. *White*, 548 U.S. at 57. This, when coupled with the temporal proximity between Ms. Shkolnikova's protected activity and the re-training assignment satisfies Plaintiff's burden at the *prima facie* stage.

Finally, on June 2, 2016, less than four months after Ms. Shkolnikova's initial protected activity on February 22, 2016 and less than three months after Ms. Shkolnikova made her March 10 Complaint, Ms. Shkolnikova was terminated from her employment with USPS. *See* Ex. 14, Termination Letter. Defendant thus took this adverse employment action well within the confines of what the Court could consider "prohibitively remote," especially when considering the additional protected activity that took place between Ms. Shkolnikova's first reasonable

22

accommodation request and this final adverse employment action. *Summa*, 708 F.3d at 128; *see Graham*, 2016 U.S. Dist. LEXIS at *24, *aff'd.*, 675 Fed. App'x 81 (2d Cir. 2017).

## IV.   MS. SHKOLNIKOVA CAN PROVE THAT USPS' STATED REASONS FOR THE TERMINATION OF HER EMPLOYMENT WERE MERE PRETEXT

Ms. Shkolnikova can show that each of USPS' stated reasons for the termination of her employment were mere pretext for Defendant's true discriminatory and retaliatory aims.

### A. Legal Standard for Proving an Employer's Stated Reason for an Adverse Employment Action is Merely Pretextual

In both Title VII disparate impact discrimination cases and retaliation cases, once a Plaintiff proves her *prima facie* case, "the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action." *Holcomb,* 521 F.3d at 138 (internal quotation marks omitted). Once the employer presents a legitimate non-discriminatory reason, the burden reverts to the plaintiff to demonstrate that the proffered reason is a mere pretext for discrimination. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000). The plaintiff can prove pretext either by showing that "a discriminatory reason more likely than not motivated the employer," or by showing that "the employer's proffered explanation is unworthy of belief." *Tyler v. Bethlehem Steel Corp.* 958 F.2d 1176, 1181 (2d Cir. 1992) (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 805). Further, "in appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147.

### B. USPS's Stated Reasons for Each of the Adverse Employment Actions Ms. Shkolnikova Endured Were Mere Pretext for Defendant's Discriminatory and Retaliatory Purposes

The record contradicts Defendant's assertion that Ms. Shkolnikova was merely kept off the work schedule pursuant to her reasonable accommodation process. As explained *supra* in Section

II(B), Ms. Shkolnikova worked a full day after she first requested accommodation on February 22, 2016, at the behest of Ms. Livingston and attended additional training in March 2016 without intervention. *See* Ex. 3; Livingston Tr. at 43; Ex. 32. Likewise, Defendant cannot explain why Ms. Shkolnikova was only considered "off-duty" starting March 19, 2016 when she had been prevented from working at Homecrest for nearly a month before her final reasonable accommodation request would be used to initiate a DRAC process. *See* Ex. 14. Because Defendant's explanation is such an unambiguous falsehood, a trier of fact could reasonably infer that Defendant is attempting to cover up discriminatory intent. *Reeves*, 530 U.S. at 147.

Additionally, Defendant's claim that it determined Ms. Shkolnikova could not be reasonably accommodated through a "robust and interactive" process is demonstrably incorrect. Def.'s MOL at 12. As described *supra* in section II(B), Ms. Livingston's refusal to engage in an adequate interactive process with Ms. Shkolnikova unfairly prolonged Ms. Shkolnikova's accommodation request and directly contradicted Defendant's own Reasonable Accommodation Handbook. Once Ms. Shkolnikova's request was finally forwarded to the DRAC, the process again disregarded multiple potential accommodations that Ms. Shkolnikova requested. *See* Ex. 12; Ex. 14. Further, the Reasonable Accommodation Handbook instructs the committee to make a finding as to whether *any* accommodation would have the desired aims, not just as to those that an employee requests. *See* Ex. 5. Ms. Livingston brought up short-term leave as an option for Plaintiff in her February 23 Email, and Ms. Bryant admitted in testimony that short-term leave is an accommodation that the DRAC could consider and grant. *See* Ex. 7; Bryant Tr. at 159-161. In fact, Ms. Bryant admitted that Ms. Shkolnikova was technically on short-term leave from the start of the DRAC process through her termination, which was the exact amount of time that she would have needed for leave since her child was born on the same day that she was terminated. *See Id.*

Defendant's proffered reason for terminating Ms. Shkolnikova, that her supervisors were unable to evaluate her during her probationary period, is similarly "unworthy of belief." *Tyler*, 958 F.2d at1181. First, Ms. Shkolnikova did complete USPS training and work in Homecrest on multiple occasions, yet she was not provided with any formal evaluation. Ms. Livingston testified that Plaintiff was not evaluated because she "did not work," which is patently untrue. Pl. Tr. at 72-73, 95-97; Ex. 16. Furthermore, Defendant's own discriminatory and retaliatory conduct provided the entire basis for Ms. Shkolnikova's termination. Ms. Shkolnikova was prevented from working first by Ms. Livngston and Mr. Smerling's discriminatory actions and then by DRAC's unfounded conclusion that there were no accommodations possible for Plaintiff.

Defendant's initial acts of discrimination and retaliation made Ms. Shkolnikova's termination inevitable. Therefore, Ms. Shkolnikova's termination as well as Defendant's prior discriminatory and retaliatory acts would not have occurred if not for her pregnancy.

## CONCLUSION

For the foregoing reasons, Ms. Shkolnikova respectfully submits that genuine issues of material fact preclude the Court from granting Defendant's motion for summary judgment.

Dated: New York, NY
July 1, 2021

Respectfully submitted,

_____/s/Dorina Cela_____
Dorina Cela, Esq.
Phillips & Associates,
Attorneys at Law, PLLC
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
(212) 248-7431
dcela@tpglaws.com

To:     Paulina Stamatelos, Esq. (*via Email and USAfx*)